## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

CYNOSURE, LLC, a Delaware limited liability
company; and LOTUS PARENT, INC., a Delaware
corporation;

        *Plaintiffs*,

v.

REVEAL LASERS LLC, *et al.*

        *Defendants*.

Civil Action No. 22-CV-11176-PBS

## FAC DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AS TO INDIVIDUALS ADDED IN THE FIRST AMENDED COMPLAINT

Defendants Victoria Bailey, Anna Bergslien, Matt Calabrese, Cameron Colby, Nate Dahlstrom, Kalee Gibbons, Tara Kosofsky, Matt Malone, Jesse Morgan, Savannah Padron, Mary Kathleen Phillips, Mark Sargent, Robert Scarelli-Smith, Jason Steinhorn, Kristopher Stennick, and Chase Tolusic (collectively, the "FAC Defendants")[1] hereby oppose the motion for temporary and preliminary injunctive relief filed by Plaintiffs Cynosure, LLC, and Lotus Parent, Inc. (collectively, "Plaintiffs" or "Cynosure") (Dkt. No. 143) (hereinafter, the "Motion").

Plaintiffs' request for the extraordinary remedy of injunctive relief as to the FAC Defendants is wholly inappropriate, unnecessary, and should properly be denied. The FAC Defendants to do not have Plaintiffs' information, are not competing in their former territories, and are not soliciting their former customers.

---

[1] These individuals were made part of this case via Plaintiffs' First Amended Complaint (Dkt. No. 63) (hereinafter, "FAC"), and, accordingly are referred to as the "FAC Defendants" for that reason and to distinguish them from the original group of defendants ("the Original Defendants"). Plaintiffs incorrectly identified certain of the FAC Defendants' names in the case caption and FAC, but they are referred to correctly herein.

In addition to its failure to demonstrate a likelihood of success on the merits of its breach of contract claim (the only claim the Motion is based on) as to each individual FAC Defendant, Plaintiffs have come nowhere close to establishing the threat of irreparable harm necessary to meet the rigorous preliminary injunction standard. To establish its breach of contract claim, Plaintiffs simply point (1) to the fact that the FAC Defendants are all former Cynosure employees who now work at Reveal Lasers LLC ("Reveal") without any further analysis (something Plaintiffs have known for months, making their belated request for injunctive relief all the more misguided), and (2) to vague and vehemently disputed allegations of customer "solicitation" by a few FAC Defendants without demonstrating that the alleged misconduct violates the actual terms of their underlying restrictive covenants. There is also a complete lack of allegations of misappropriation by any of the FAC Defendants to support Plaintiffs' request for the extraordinary remedy of preliminary injunctive relief.

Injunctive relief is also unnecessary and unmerited because the FAC Defendants are *already operating in a manner entirely consistent with the protection of Cynosure's purported legitimate economic interests*. Since August 8, 2022, FAC Defendants have been abiding by the customer nonsolicitation terms of the Court's Temporary Restraining Order as to the Original Defendants. (Dkt. Nos. 33, 52.) Further, following the Court's November 9, 2022 Memorandum and Order (Dkt. No. 171) (hereinafter, the "November 9, 2022 Order"), the FAC Defendants have voluntarily taken steps to ensure that their territories at Reveal do not include any part of their former Cynosure territories. Finally, the FAC Defendants have not used or disclosed any of Cynosure's allegedly confidential information and/or trade secrets (to the extent that they even had any Cynosure information after their resignations)[1] – all of which, as Plaintiffs' counsel is well aware, has been returned to Cynosure and is no longer in their personal possession. An

injunction, were it ever warranted (which it would not have been), would do nothing, and is not a necessary or appropriate exercise of this Court's equity powers.

In short, Plaintiffs are not entitled to the extraordinary remedy of a temporary restraining order or preliminary injunction, as there is no merit to any of the claims in the FAC, and there is no risk of irreparable harm – confirmed by Plaintiffs' delay in seeking injunctive relief as to the FAC Defendants.[2]

## **FACTUAL BACKGROUND**

The Affidavits of the FAC Defendants ( "[Surname] Aff., ¶ _."), all of which are being filed herewith, provide a comprehensive description of the relevant facts regarding each of the individual FAC Defendants, including their roles and responsibilities at Cynosure, their restrictive covenants with Cynosure, their independent and compelling reasons for resigning from Cynosure, their roles and responsibilities at Reveal, and their responses to any specific accusations of misconduct by Plaintiffs. Those documents are incorporated by reference as if fully set forth herein.

While each FAC Defendant has their own unique story to tell, there are overarching, consistent themes that run through all of their stories.  As an initial matter, most of the FAC Defendants held relatively low-level, nonmanagement sales or post-sales positions at Cynosure within distinct geographic territories (4 Territory Managers, 4 Area Sales Managers, 1 Senior Area Sales Manager, and 2 Practice Development Consultants). Many had relatively short tenures with Cynosure – more than half of the FAC Defendants were employed by Cynosure for 18 months or less, including one person who was there for only ~ 11 weeks.  *See* Bailey Aff., ¶

---

[2] Plaintiffs, in a rare moment of self-awareness, seem to accept the frivolity of adding the FAC Defendants to this litigation in the Motion. *See* Dkt. No. 156 at 1 ("Cynosure originally had hoped it would not be necessary to add all former employees who conspired to launch Reveal Lasers to this lawsuit.").

21; Bergslien Aff., ¶ 31; Calabrese Aff., ¶ 32; Dahlstrom Aff., ¶ 34; Gibbons Aff., ¶ 30; Morgan Aff., ¶ 30; Padron Aff., ¶ 33; Phillips Aff., ¶ 29; Tolusic Aff., ¶ 31. There are four higher-level employees in this group – 3 former Cynosure District Sales Managers (Colby, Malone, and Steinhorn) and 1 Regional Sales Director (Kosofsky) – and they were all likewise confined to specific geographic territories for their sales activities. *See* Colby Aff., ¶¶ 12-15; Kosofsky Aff., ¶¶ 12, 14-15; Steinhorn Aff., ¶¶ 13-15.

Scarelli-Smith stands out from all of the other individual Defendants in that he was a Senior Event Specialist for Cynosure, part of a marketing team at Cynosure that is separate and distinct from the field sales and marketing teams. *See* Scarelli-Smith Aff., ¶ 15. Scarelli-Smith did not interact with customers in any meaningful way, did not have an assigned "sales territory," had no responsibilities for generating sales or creating customer goodwill, and *has no enforceable noncompete or customer nonsolicit restrictions*. *See id.*, ¶¶ 10-17, 28, Ex. B. Plaintiffs' reason for pulling him into this litigation is mystifying.

Another theme common across all of the FAC Defendants' stories was their growing disillusionment and frustration with mismanagement by Cynosure following changes in senior leadership in 2020-2021. Cynosure's new executive leadership team ushered in a number of unwelcome changes and a general attitude of not valuing or supporting its employees. The FAC Defendants describe abysmal employee morale at Cynosure, particularly after a well-respected and admired sales executive was unceremoniously terminated in early 2022. This change, combined with Cynosure's lack of product innovation, lack of support and guidance, increased prices on existing outdated products, increased sales quotas, and frequently changing and decreased sales commissions led many of the FAC Defendants to seek other opportunities and ultimately resign. *See* Bailey Aff., ¶¶ 13-18; Bergslien Aff., ¶ 27-28; Calabrese Aff., ¶ 29; Colby

Aff., ¶ 27; Dahlstrom Aff., ¶¶ 27-31; Gibbons Aff., ¶ 27; Kosofsky Aff., ¶¶ 29-30; Malone Aff., ¶¶ 29-34; Morgan Aff., ¶ 27; Padron Aff., ¶¶ 27-30; Phillips Aff., ¶ 26; Sargent Aff., ¶¶ 27-30; Scarelli-Smith Aff., ¶ 29; Steinhorn Aff., ¶ 27; Stennick Aff., ¶¶ 24-26; Tolusic Aff., ¶¶ 26-28.

Finally, the FAC Defendants' stories demonstrate that the allegations against them lack any credible evidence of misconduct. The Affidavits explain that Plaintiffs' weak allegations of customer solicitation by certain FAC Defendants are either in dispute and/or occurred months ago. *See* Bailey Aff., ¶ 29; Calabrese Aff., ¶¶ 39-43; Dahlstrom Aff., ¶¶ 41-43; Gibbons Aff., ¶¶ 39-41; Kosofsky Aff., ¶ 38; Malone Aff., ¶¶ 43; Sargent Aff., ¶ 39; Steinhorn Aff., ¶¶ 35-36; Tolusic Aff., ¶ 38. Indeed, on several occasions when Cynosure customers have reached out to the FAC Defendants at Reveal, they have referred the customers back to Cynosure for assistance. *See* Bailey Aff., ¶ 28; Bergslien Aff., ¶ 39; Stennick Aff., ¶ 34. And to be clear, these are the *only* allegations of purported misconduct beyond the FAC Defendants' mere employment at Reveal. There are no allegations of misappropriation by the FAC Defendants. The FAC Defendants have clearly been brought into this litigation by Plaintiffs as leverage, and both the claims against them, and the request for injunctive relief, are meritless.

## **ARGUMENT**

### I. **Preliminary Injunction Standard**

The issuance of preliminary injunctive relief is "an extraordinary and drastic remedy that is never awarded as of right." *Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 8-9 (1st Cir. 2012) (quoting *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011)). *See also Viken Detection Corp. v. Videray Tech., Inc.*, 384 F. Supp. 3d 168, 175 (D. Mass. 2019) (quoting same language); *Allscripts Healthcare, LLC v. DR/Decision Res., LLC*, 386 F. Supp. 3d 89, 93 (D. Mass. 2019) (quoting same language). When deciding

whether to grant preliminary injunctive relief, a trial court must consider four factors: (1) the moving party's likelihood of success on the merits; (2) whether and to what extent the moving party will suffer irreparable harm in the absence of injunctive relief; (3) the balance of hardships, or the hardship to the non-moving party if enjoined as opposed to the hardship to the moving party if no injunction issues; and, (4) the effect, if any, that an injunction or the lack thereof may have on the public interest. *CVS Pharm., Inc. v. Lavin*, 951 F.3d 50, 55 (1st Cir. 2020) (internal quotation and citation omitted). In doing so, a court may accept as true the "well-pleaded allegations [in the complaint] and uncontroverted affidavits." *Viken Detection Corp.*, 384 F. Supp. 3d at 175 (internal citations omitted). Plaintiffs have not satisfied, and cannot satisfy, the rigorous requirements to obtain this type of extraordinary relief as to the FAC Defendants.

## II. Plantiffs are Unlikely to Succeed on the Merits of the Breach of Contract Claim that is the Basis for their Motion

In support of the instant Motion, Plaintiffs rely entirely on their breach of contract claim asserted against the FAC Defendants.[3] *See* Dkt. No. 156 at 5-6. To receive the extraordinary injunctive relief requested, Plaintiffs must show they are likely to succeed on their breach of contract claim as to each of the FAC Defendants, as part of a "clear showing" that they are entitled to injunctive relief as to that defendant. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ("injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."). But Plaintiffs cannot satisfy this requirement.

To prove a breach of contract, a plaintiff must demonstrate the existence of an agreement between the parties; that the agreement was supported by consideration; that the plaintiff was

---

[3] The breach of contract claim, together with the other ten claims against the FAC Defendants, is the subject of a Rule 12(b)(6) Motion to Dismiss pending before the Court. Dkt. No. 183.

ready, willing, and able to perform; that the defendant breached the agreement; and, the plaintiff suffered resulting harm. *See Squeri v. Mt. Ida College*, 954 F.3d 56, 71 (1st Cir. 2020); *Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 690 (2016); *Viken Detection Corp.*, 384 F.Supp.3d at 176. As set forth below, Plaintiffs cannot satisfy the elements of their breach of contract claim as to each FAC Defendant due to their pleading deficiencies and their weak, speculative allegations of actual breaches. Furthermore, as applied to certain FAC Defendants, the noncompete and nonsolicit restrictions are either unreasonable in scope and duration, or do not advance Cynosure's legitimate economic interests, rendering those restrictions unenforceable as to those particular individuals. These failures alone should doom the Motion. *See, e.g.*, *ANSYS, Inc. v. Computational Dynamics N. Ams, Ltd.,* 595 F.3d 75, 78 (1st Cir. 2010) ("The first factor [of the preliminary injunction test], likelihood of success, is usually given particularly heavy weight."); *Viken Detection Corp*, 384 F. Supp. 3d at 177 (motion for injunctive relief denied, in part, where plaintiff did not meet its burden of demonstrating reasonable likelihood of success on its breach of contract claim).

> **A.** **Plaintiffs' Claim Fails Because They Have Not Demonstrated A Likelihood of Success in Establishing The Necessary Elements As to Each FAC Defendant**

As set forth in full in the FAC Defendants' Motion to Dismiss, Plaintiffs have failed to state a claim for breach of contract. *See* Dkt. No. 183 at 10-11. Plaintiffs lumped together all of the FAC Defendants with the Original Defendants in the counts of the FAC and further failed to provide any individual allegations for 14 of the 16 FAC Defendants. The FAC wholly relies on speculative group pleading regarding the FAC Defendants' individual job duties and territories at Reveal; assuming, but not demonstrating, that all of them are engaged in prohibited competition,[4]

---

[4] The CEIP noncompetition prohibition provides: "Employee agrees that for a period of nine (9) months after the Termination Date, Employee shall not, for the benefit of a Competing Business, ***within the Territory***, acting individually or as an owner, shareholder, partner, employee, contractor, agent or

7

customer solicitation, employee solicitation, and disclosure of Cynosure's purportedly confidential information and trade secrets. *See* Dkt. No. 63, ¶ 157. While Plaintiffs' group pleading is obviously problematic because it fails to allege individual acts by individual defendants (*see, e.g.*, *Bagheri v. Galligan*, 160 Fed. App'x. 4, 5 (1st Cir. 2005)), what Plaintiffs have done by bringing the Motion is even less defensible because the FAC Defendants' sworn Affidavits reveal that the underlying allegations are demonstrably false.

Perhaps most egregious in this regard is Plaintiffs' treatment of Scarelli-Smith. Plaintiffs neglected to attach as exhibits to either the FAC or the Motion the underlying agreements alleged to be the basis for the breach of contract claims against each of the FAC Defendants. If they had, the Court would see that Scarelli-Smith ***does not actually have a noncompete or customer nonsolicit in his CEIP***, contrary to what Plaintiffs allege. Scarelli-Smith Aff., ¶ 28, Ex. B. Plaintiffs cannot demonstrate the existence of an enforceable agreement between Cynosure and Scarelli-Smith, let alone the remaining elements of a breach of contract claim as to him.

As for the noncompete restrictions within the Equity Agreements and the CEIP, Plaintiffs have not adequately explained how each individual FAC Defendant has allegedly breached these restrictions beyond the mere fact of their employment at Reveal. Specifically, Plaintiffs have not demonstrated that each FAC Defendant is actually competing with Cynosure in their current role at Reveal within the meaning of the agreements. The FAC Defendants' Affidavits, in fact, demonstrate the opposite. For example, Kosofsky has a much different role at Reveal than she

---

otherwise: (i) provide or manage services to or for a Competing Business that are the same as or similar in function or purpose to the services Employee provided to or managed for the Company during the Look Back Period . . ." *See, e.g.*, Bailey Aff., Ex. A at § 8(a) (representative CEIP) (emphasis added). "Territory" is further defined as "the county that Employee resides in and the additional geographic area assigned to Employee as his or her defined Territory based upon Employee's job responsibilities and Confidential Information access." *Id.* at § 8(f)(7). By the CEIP's own terms, the noncompetition prohibition is not violated if the Employee in question is working outside her former Cynosure territory.

had at Cynosure as she is no longer in the field interacting directly with customers. *See* Kosofsky

Aff., ¶¶ 5, 35. Colby relocated to Tampa, Florida in connection with starting his employment at

Reveal, and for the entire time that he has worked for Reveal, his geographic territory has been

in a completely different territory from his most recent territory at Cynosure. *See* Colby Aff., ¶

31-32. Indeed, ***none*** of the FAC Defendants is currently working in their former Cynosure

territories, as set forth in their Affidavits.

Turning to the purported violations of the customer nonsolicitation provisions that are set

forth in the FAC and the Motion, Plaintiffs rely on second-level hearsay and speculation based

on thin circumstantial evidence for their solicitation allegations.[5] *See, e.g.,* Dkt. No. 156 at 6-7.[6]

As a threshold matter, the allegations as to Steinhorn are now irrelevant because the Court found

that the only customer nonsolicit he is subject to is unenforceable. And, Plaintiffs have not

established that the few remaining allegations against the other FAC Defendants involved a

"Covered Customer" within the meaning of the CEIP. At any rate, the FAC Defendants have

addressed and refuted each of these accusations in their sworn Affidavits. *See* Steinhorn Aff., ¶¶

¶¶ 35-36; Sargent Aff., ¶ 39; Bailey Aff., ¶¶ 29; Dahlstrom Aff., ¶¶ 41-42;Gibbons Aff., ¶¶ 39-

41. Moreover, the credibility of Jennifer Holsted and Yunior Caballero, who have lodged

allegations against Steinhorn and Sargent, is highly suspect. *See* Steinhorn Aff., ¶¶ 38; Sargent

Aff., ¶ 39.

---

[5] Plaintiffs also rely on a number of exhibits attached to Dkt. No. 105. Dkt. No. 156 at 6-7, *citing* Dkt. 105, Exs. 3, 6-8, 9, 10-12. Of the seven exhibits cited, four of them are under seal. *See* Dkt. No. 105, Exs. 3, 9, 11, 12 (all filed under seal).

[6] Specifically, Plaintiffs cite to Dkt. No. 104 ¶¶ 5-10 (relying on statements from an unidentified person as recounted by the declarant); Dkt. No. 105 ¶¶ 19-21 (relying on a customer's Instagram post announcing that they would offer a Reveal laser soon); Dkt. No. 105 ¶¶ 13-16 (relying on written communications from Original Defendant Kalso, where FAC Defendants Dahlstrom and Gibbons were merely in copy).

Plaintiffs also allege that Scarelli-Smith (together with the entire group of Former Employees) breached his (nonexistent) contractual obligations by, *inter alia*, "soliciting Cynosure's customers or potential customers to use Reveal Lasers' services instead of Cynosure's services." Dkt. No. 63, ¶ 157. But Scarelli-Smith was (and is) an event planner – he has never made any sales and has never had any customer-facing roles at Cynosure or Reveal. *See* Scarelli-Smith Aff., ¶ 10-17. It would be patently improper for Plaintiffs to obtain such extensive and punitive injunctive relief on demonstrably false allegations when the Supreme Court has unambiguously stated that a "clear showing" is needed on each factor to grant injunctive relief. *See Winter*, 555 U.S. at 22.

Significantly, there are no specific allegations whatsoever to demonstrate that any of the FAC Defendants have breached the nondisclosure restrictions within their respective agreements. (And, except for one contested allegation by Ms. Holsted, a disgruntled former colleague, about an offhand remark made by Steinhorn, there are no allegations of employee solicitation by the FAC Defendants. *See* Steinhorn Aff., ¶¶ 37-38.)

In sum, the breach of contract allegations lodged at the FAC Defendants are unlikely to succeed on the merits and, therefore, this factor strongly weighs against granting the Motion.

**B.     Plaintiffs' Claim Fails Because the Noncompete and Customer Nonsolicitation Restrictions Are Unenforceable to the Extent that They Are Unreasonable in Geographic Scope and Duration and Do Not Advance Legitimate Economic Interests[7]**

Absent an enforceable restrictive covenant as to each FAC Defendant, Plaintiffs cannot

---

[7] The Court has already concluded that the noncompete within the Equity Agreement is enforceable, and that the customer nonsolicit provision within the Equity Agreement is unenforceable, as to the 12 Original Defendants. *See* Dkt. No. 171, at 35-36. Consequently, the FAC Defendants address only the CEIP's customer nonsolicit. For purposes of this Motion, the FAC Defendants do not dispute the enforceability of the CEIP's 9-month post-employment noncompete restriction, except as to Gibbons, Tolusic, Bergslien, and Morgan. *See infra* at 16-18.

succeed on their breach of contract claim. *See Squeri*, 954 F.3d at 71; *Bulwer*, 473 Mass. at 690; *Viken Detection Corp.*, 384 F. Supp. 3d at 176. Both the Equity Agreements and the CEIP contain Delaware choice of law provisions.[8] "Delaware courts do not mechanically enforce noncompetition or nonsolicitation agreements." *Kodiak Bldg. Partners, LLC v. Adams*, C.A. No. 2022-0311-MTZ, 2022 WL 5240507, at * 4 (Del. Ch. Oct. 6, 2022). Rather, Delaware courts scrutinize noncompete and nonsolicit provisions to ensure that they "(1) [are] reasonable in geographic scope and temporal duration," (2) advance a legitimate economic interest of the party seeking its enforcement, and (3) survive a balancing of the equities." *Id.* (citing and quoting *FP UC Holdings, LLC v. Hamilton*, C.A. No. 2019-1029-JRS, 2020 WL 1492783, at *6 (Del. Ch. Mar. 27, 2020)). As for the restrictive covenants contained in the relevant contracts, under Delaware law, "[a] non-competition agreement will only be enforced to protect the legitimate economic interests of the employer. Interests which the law has recognized as legitimate include protection of employer goodwill and protection of employer confidential information from misuse." *Kodiak Bldg. Partners,*, 2022 WL 5240507, at *8 (Del. Ch. Oct. 6, 2022) (denying preliminary injunction for alleged breach of restrictive covenants) (quoting *Research & Trading Corp. v. Pfuhl*, No. CIV. A. No. 12527, 1992 WL 345465, at *12 (Del. Ch. Nov. 18, 1992)).

       i.  *Plaintiffs' Proposed Geographic Restrictions for the Noncompete Restrictions As to Certain FAC Defendants Are Unreasonable in Scope*

       Assuming for purposes of the Motion that the noncompete restrictions within the Equity

---

[8] Plaintiffs represent in their brief supporting the Motion that they rely on the Equity Agreement and the CEIP as the basis for their request for injunctive relief: "Because the Equity Agreements and CEIP Agreements post-date the other agreements [INNNAs and Hologic Agreements], the Court properly may limit its focus to the provisions in the Equity Agreements and CEIP." Dkt. No. 156 at 6 n.2. Thus, the FAC Defendants have limited their arguments in this Opposition to the Equity Agreements and the CEIP agreements. The FAC Defendants do not waive, and expressly reserve, the right to challenge the enforceability of any prior agreements as to any FAC Defendant in the event that the Plaintiffs reverse their stated position in any reply or at the January 23, 2023 hearing on the Motion.

Agreement and the CEIP are generally viable, Plaintiffs take the untenable and draconian position that Colby, Malone, Steinhorn, Scarelli-Smith, and Kosofsky should be banned from working for a competitor anywhere in North America. *See* Dkt. No. 143, at 5-6. Plaintiffs' insistence on a broad, continental ban ignores the November 9, 2022 Order, in which the Court rejected Plaintiffs' request for a North American ban on other former Cynosure District Sales Managers (Jason Kalso, Kyle Shapero, Robert Fiacco, and David Krueger) and instead prohibited them from competing only within their former Cynosure territories. *See* Dkt. No. 171, at 30-31, 42. The FAC Defendants submit that because Plaintiffs' proposed geographic restriction is overly broad and unreasonable, this provision of the noncompete is unenforceable as to Colby, Malone, Steinhorn, Scarelli-Smith, and Kosofsky. Any noncompete restrictions imposed by the Court should be properly limited to the territory in which the FAC Defendants actually engaged in sales activities for Cynosure as those are the locations where they developed any goodwill for Cynosure. *See Kodiak Bldg. Partners, LLC*, 2022 WL 5240507, at *12 (finding noncompete provision to be overly broad in geographic scope). Moreover, Colby, Malone, Steinhorn, Kosofsky, and Scarelli-Smith were not privy to the type of confidential information that the Court found, in part, to justify a North American noncompete restriction for certain of the Original Defendants (Cynosure's strategic information and information related to its innovation pipeline).[9] *See* Dkt. No. 171 at 27-28; Colby Aff., ¶ 21; Kosofsky Aff., ¶ 23; Malone Aff., ¶ 23; Steinhorn Aff., ¶ 24, Scarelli-Smith Aff., ¶ 20. And, the Original Defendants for whom a North American noncompete prohibition was ordered were the most senior field sales leaders at Cynosure, unlike these FAC Defendants. *See* Dkt. No. 171 at 4-6, 11. (Kosofsky

---

[9] Indeed, none of the FAC Defendants were privy to information on the strength of the Cynosure sales team, nor confidential information about how sales resources were allocated amongst different regions, either.

spent only a few months in her Regional Sales Director role before she resigned at the end of May 2022. Kosofsky Aff., ¶ 15.) Accordingly, consistent with the November 9, 2022 Order, any noncompete restriction imposed on these individuals should be properly narrowed in scope as follows: Colby (Washington DC district – Washington DC, MD, VA, WV),[10] Malone (Carolinas district – NC, SC, GA), Steinhorn (TN, KY, AL, and MS), and Kosofsky (Southeast Region – NC, SC, GA, Washington DC, MD, VA, WV, TN, KY, AL, and MS).[11]

Of course, Colby, Malone, Steinhorn, and Kosofky are *already* restricting themselves in that way. Accordingly, once again, there is no need for an extraordinary court order requiring them to do precisely what they are already doing.

As for the remaining FAC Defendants, in an effort to streamline issues and conserve judicial resources in this matter, they are already abiding by the Court's reasoning regarding appropriate noncompete restrictions as set forth within the November 9, 2022 Order. The FAC Defendants[12] – including Malone and Steinhorn – worked with Reveal following the issuance of the November 9, 2022 Order to re-designate their geographic territories so that they are no longer performing any services for Reveal in their former Cynosure territories.[13] Bailey Aff., ¶ 24;

---

[10] Colby relocated from the Washington DC area to Florida in connection with starting his employment with Reveal, and he has not performed services in the Washington DC district since he resigned from Cynosure on May 31, 2022. Colby Aff., ¶ 15, 31. Under these circumstances, no Court order is warranted as to him because he has never been in violation of the noncompete restriction of the Equity Agreement or the CEIP (as reasonably narrowed).

[11] Because Scarelli-Smith is not subject to any enforceable post-employment noncompete restrictions, had no customer-facing responsibilities at Cynosure, and was not privy to the type of information that the Court has determined to be worthy of protection, *see supra* at 8, Scarelli-Smith Aff., ¶¶ 10, 15 there is no basis to impose **any** geographic restriction (let alone a restriction covering an entire continent) on his post-employment competitive activities.

[12] The only exceptions are Kosofsky, who has been on parental leave since November 3, 2022 (Kosofsky Aff., ¶¶ 5-36), Colby, who has worked outside of his most recent former Cynosure territory for the entire time that he has been at Reveal (Colby Aff., ¶ 32), and Scarelli-Smith, who is not bound by a noncompete restriction (Scarelli-Smith Aff., ¶ 28, Ex. B).

[13] In a few instances, a Cynosure "district" as defined by Plaintiffs in their Proposed Order is broader than the actual area where an individual FAC Defendant worked. For example, Stennick was assigned by

Bergslien Aff., ¶ 35; Calabrese Aff., ¶ 35; Dahlstrom Aff., ¶ 37; Gibbons Aff., ¶ 34; Malone Aff., ¶ 39; Morgan Aff., ¶ 34; Padron Aff., ¶ 36; Phillips Aff., ¶ 32; Sargent Aff., ¶ 35; Steinhorn Aff., ¶ 32; Stennick Aff., ¶ 30; Tolusic Aff., ¶ 34.  The FAC Defendants have affirmed that, unless the Court rules otherwise, they will continue to adhere to these geographic restrictions for the balance of their noncompete periods, which should properly begin running from either their respective Cynosure effective resignation dates (Colby, Kosofsky, Malone, Sargent, Stennick, Steinhorn),[14] or certainly from the dates that they ceased working in their former Cynosure territories (Bailey, Bergslien, Calabrese, Dahlstrom, Gibbons, Morgan, Padron, Phillips, Tolusic).  Bailey Aff., ¶ 19, 24; Bergslien Aff., ¶ 36; Calabrese Aff., ¶ 30, 36; Colby Aff., ¶¶ 28, 32; Dahlstrom Aff., ¶ 37, 50; Gibbons Aff., ¶ 28, 35; Kosofsky Aff., ¶ 44; Malone Aff., ¶¶ 35, 50; Morgan Aff., ¶ 28, 34; Padron Aff., ¶ 37; Phillips Aff., ¶¶ 27, 33; Sargent Aff., ¶ 31, 46; Steinhorn Aff., ¶ 28; Stennick Aff., ¶ 28, 31; Tolusic Aff., ¶¶ 29, 35.

To be clear, even though these FAC Defendants have voluntarily changed territories in good faith and to conserve judicial resources, they are suffering significant harm in the process. *See infra* at 22-24; Bergslien Aff., ¶ 47; Calabrese Aff., ¶ 49; Colby Aff., ¶ 42; Dahlstrom Aff., ¶ 49; Gibbons Aff., ¶ 47; Malone Aff., ¶ 49; Morgan Aff., ¶ 43; Padron Aff., ¶ 45; Phillips Aff., ¶ 42; Sargent Aff., ¶ 45; Scarelli-Smith Aff., ¶ 43; Steinhorn Aff., ¶ 44; Tolusic Aff., ¶ 45.

 ii. *The CEIP's 18-Month Customer Nonsolicit Restriction As to Certain FAC Defendants (Gibbons, Tolusic, Bergslien, and Morgan) Is Unreasonable and Unenforceable*

Posing another hurdle that Plaintiffs cannot clear, the 18-month customer nonsolicitation

---

Cynosure to the "Texas district," but he only performed work in Texas and Louisiana.  *See* Stennick Aff., ¶ 13.

[14] These FAC Defendants signed both an Equity Agreement and a CEIP. Consistent with the Court's November 3, 2022 Order, they are, therefore, subject to the 12-month noncompete restriction in the Equity Agreement (without tolling) rather than the 9-month noncompete restriction in the CEIP (allowing for tolling).

restriction within the CEIP is temporally unreasonable and, therefore, unenforceable against the most junior FAC Defendants.[15] Gibbons, Tolusic, Bergslien, and Morgan were in the lowest tier of field sales representatives who worked for Cynosure *for a mere 6 months or less*,[16] yet Cynosure now seeks to enforce a customer nonsolicit that will extend multiple times beyond the length of their short tenures with the company. *See* Bergslien Aff., ¶ 31; Gibbons Aff., ¶ 30; Morgan Aff., ¶ 30; Tolusic Aff., ¶ 31. These individuals did not receive any specialized training during their employment with Cynosure, they were not privy to confidential information during their employment with Cynosure, and they generated a relatively small amount of sales to a (combined) handful of customers. *See* Bergslien Aff., ¶¶ 16-22, 32; Gibbons Aff., ¶¶ 16-22, 31; Morgan Aff., ¶¶ 16-22, 31; Tolusic Aff., ¶ 15-21. Indeed, ***Morgan made only one sale*** during his brief, less than three-month, stint at Cynosure. *See* Morgan Aff., ¶¶ 30-31. Such a lengthy customer nonsolicitation restriction is patently unreasonable in light of these FAC Defendants' relatively brief tenures with, and sales activities on behalf of, Cynosure.

Gibbons, Tolusic, Bergslien, and Morgan anticipate Plaintiffs will request that the Court reform the customer nonsolicitation provision to a more reasonable duration for them, but they urge the Court to decline this request given the disparate bargaining power between the parties. *See, e.g., Kodiak Bldg. Partners, LLC*, 2022 WL 5240507, at * 4 (Even in the more enforcement-friendly context of the sale of a business, "[w]here noncompete or nonsolicit covenants are

---

[15] The Court observed in the November 9, 2022 Order that Original Defendant Dean Fiacco had worked at Cynosure for "just eleven months" and that Original Defendants Daniel DeMarco had worked at Cynosure for "a mere thirteen months." Dkt. No. 171, at 11-12. This language seems to indicate the Court's willingness to find a customer nonsolicit unenforceable where the length of employment at Cynosure was minimal, as it was for Gibbons, Tolusic, Bergslien, and Morgan.

[16] Specifically, Gibbons worked as a Territory Manager for Cynosure for only 6 months, Tolusic worked as an Area Sales Manager for 5 months, Bergslien worked as a Territory Manager for 5 months, and Morgan worked as a Territory Manager for *less than 3 months*. Bergslien Aff., ¶ 31; Gibbons Aff., ¶ 30; Morgan Aff., ¶ 30; Tolusic Aff., ¶ 31.

unreasonable in part, Delaware courts are hesitant to 'blue-pencil' such agreements to make them reasonable."); *FP UC Holdings, LLC*, 2020 WL 1492783, at *8 (court held plaintiff to its burden of proving the reasonableness of restrictive covenants and declined to blue pencil the agreement when the plaintiffs fell short).

    iii.   *The CEIP's Noncompete and Customer Nonsolicit Restrictions Do Not Advance A Legitimate Economic Interest as Applied to Certain FAC Defendants (Gibbons, Tolusic, Bergslien, and Morgan) and are Unenforceable*

Plaintiffs cannot establish that the 9-month noncompete and the 18-month customer nonsolicitation restrictions within the CEIP are enforceable against Gibbons, Tolusic, Bergslien, and Morgan because, as applied to them, these restrictions simply do not advance any legitimate economic interests of Cynosure. Indeed, what could the legitimate economic interest of Cynosure possibly be in preventing (as an example) Morgan, employed by Cynosure for ***less than three months***, from earning a livelihood in his former Cynosure territory? *See* Morgan Aff., ¶ 31. The FAC Defendants, and the Court, are left to guess.

While the Court found the CEIP to be generally enforceable on the grounds that it promotes Cynosure's legitimate business interest in its goodwill, *see* Dkt. No. 171, at 33, Gibbons, Tolusic, Bergslien, and Morgan submit that this interest does not apply to them. As explained above, they worked at Cynosure only briefly – the proverbial ink had barely dried on their CEIPs before they resigned. They simply did not work at Cynosure long enough to develop any ongoing goodwill among customers for Cynosure, and they only made sales to a few customers. *See, e.g.,* Bergslien Aff., ¶¶ 31-32 (5 months); Gibbons Aff., ¶¶ 30-31 (6 months), Morgan Aff., ¶ 30 (less than 3 months); Tolusic Aff., ¶ 31 (5 months).

Plaintiffs, themselves, have asserted in their Initial Disclosures that "*it will typically take 12 to 18 months for [new] sales people to ramp up* to full capacity" (*see* Exhibit A, attached

hereto, at 8 (emphasis added)), a concession that employees like Gibbons, Tolusic, Bergslien, and Morgan were never even in a position to have developed meaningful customer relationships on behalf of Cynosure.

To the extent that Plaintiffs attempt to argue that the CEIP's customer nonsolicit provision advances a legitimate economic interest in protecting its confidential information and/or trade secrets, this argument has no merit as applied to Gibbons, Tolusic, Bergslien, and Morgan.[17] Because of their relatively low-level sales positions, they were not given access or otherwise privy to the type of information that the Court previously determined to be worthy of protection at this stage – Cynosure's strategic information and information about its innovation pipeline. *See* Bergslien Aff., ¶ 22; Gibbons Aff., ¶¶ 21; Morgan Aff., ¶ 22; Tolusic Aff., ¶ 21. Cynosure cannot prevent the FAC Defendants from carrying away and using general skill or knowledge acquired throughout their careers, which for Tolusic included working for a Cynosure competitor *before* Cynosure hired him. *See* Tolusic Aff., ¶ 11. Also, because the names and contact information of Cynosure's providers are publicly available, they are not protectible.[18] Much of the other information referenced by Cynosure is similarly either public knowledge, or well-known in the industry and does not rise to the level of being truly "confidential" information worthy of protection, let alone a trade secret. *See, e.g., Ruckleshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) ("Information that is public knowledge or that is generally known in an industry cannot be a trade secret."); *TLS Mgmt. and Mktg. Servs., LLC v. Rodriguez-Toledo*, 966 F.3d 46, 54-56 (1st Cir. 2020) (strategy did not qualify as a trade secret where

---

[17] This lack of access to Cynosure's confidential information applies equally to **all** of the FAC Defendants, even those with longer tenures than Gibbons, Tolusic, Bergslien, and Tolusic had. Thus, the protection of confidential information does not constitute a legitimate economic interest to support a customer nonsolicit against **any** of the FAC Defendants.

[18] The providers themselves publicly advertise their names and contact information to obtain business.

documents, templates, and individual steps used in implementing that strategy were well-known, commonly used in the industry, and/or readily ascertainable from public sources).

Consequently, the Court should find the noncompete and customer nonsolicit restrictions within the CEIP to be unenforceable as to Gibbons, Tolusic, Bergslien, and Morgan because they do not advance any legitimate economic interest in Cynosure's customer goodwill or confidential information.

## III.     <u>Plaintiffs Cannot Show Any Irreparable Harm</u>

Injunctive relief is appropriate only where there is a likelihood of irreparable harm beyond monetary and calculable damages. *See Allscripts Healthcare, LLC*, 386 F. Supp. 3d at 95. In attempting to satisfy that standard, irreparable harm cannot be "remote or speculative" or based on "conjecture" – it must be based in the facts of the actual case.[19] *See, e.g.*, *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004) (a finding of irreparable harm must be "grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store."); *Hearst Stations Inc. v. Aereo, Inc.*, 977 F. Supp. 2d 32, 40 (D. Mass. 2013) (irreparable harm must be shown by more than a "tenuous or overly speculative forecast of anticipated harm") (internal citation omitted).

Here, Plaintiffs' assertions of irreparable harm caused by the FAC Defendants amount to

---

[19] Boilerplate language in the CEIP, which most of the FAC Defendants signed during their onboarding process and without being advised of a reasonable opportunity to consult with counsel, states that any breach will cause irreparable harm. *See, e.g.*, Bailey Aff., ¶ 10, Ex. A (representative CEIP, ¶ 9). But an unnegotiated standard contract provision is insufficient for a finding of irreparable harm, and "it is clear that the parties to a contract cannot, by including certain language in that contract, create a right to injunctive relief where it would otherwise be inappropriate." *Firemen's Ins. Co. of Newark, N.J. v. Keating*, 753 F. Supp. 1146, 1154 (S.D.N.Y. 1990); *see also Packaging Corp. of Am., Inc. v. Croner*, 419 F. Supp. 3d 1059, 1074 n.14 (N.D. Ill. 2020) (noting that courts around the country have minimized the importance of such clauses); *Dragon Jade Int'l, Ltd. v. Ultroid, LLC*, No. 8:17-cv-2422-T-27TBM, 2018 WL 1833160, *4 (M.D. Fla. Jan. 30, 2018) (finding consensus among reported decisions that contractual provisions regarding entitlement to injunctive relief are accorded little to no weight).

little more than speculation and unsubstantiated fear.  None of the FAC Defendant face allegations of misappropriation of confidential information or trade secrets, so Plaintiffs do not receive any presumption of irreparable harm.  *See, e.g., Viken Detection Corp.*, 384 F. Supp. 3d at 178-79 (observing that where there is evidence of misappropriation, irreparable harm can be presumed).  Plaintiffs seem to speculate that the FAC Defendants will use its confidential information, but the FAC Defendants unreservedly deny that they have disclosed or used (or that they will disclose or use) any confidential information belonging to Cynosure, if they ever even had any. Bailey Aff., ¶ 8, 30; Bergslien Aff., ¶ 23, 41; Calabrese Aff., ¶ 25, 44; Colby Aff., ¶ 22, 36; Dahlstrom Aff., ¶ 22, 44; Gibbons Aff., ¶ 23, 42; Kosofsky Aff., ¶¶ 24, 39; Malone Aff., ¶ 23, 44; Morgan Aff., ¶¶23, 38; Padron Aff., ¶ 23, 41; Phillips Aff., ¶ 21, 37; Sargent Aff., ¶ 21, 40; Steinhorn Aff., ¶ 24, 39; Stennick Aff., ¶ 16, 35; Tolusic Aff., ¶ 22, 40.  Plaintiffs likewise assume goodwill as to every FAC Defendant, although it has not laid out any facts, and the FAC Defendants' affidavits establish the opposite in several instances.  *See, e.g.,* Bergslien Aff., ¶ 31 (employed for 5 months); Calabrese Aff., ¶¶ 32 (previously worked for Cynosure competitors Eclipse and Candela); Gibbons Aff., ¶¶ 30, 47 (employed for 6 months and had prior contacts in the industry); Morgan Aff., ¶ 30 (employed for less than 3 months); Scarelli-Smith Aff., ¶¶ 10, 15 (no customer-facing responsibilities); Tolusic Aff., ¶¶ 11, 31 (employed for 5 months and previously worked for Lumenis, a Cynosure competitor).  Plaintiffs' imagined customer solicitation and disclosure of confidential information is exactly the kind of leap that courts deem insufficient to show irreparable harm.  In short, Plaintiffs have not alleged a single fact to demonstrate the threat of irreparable harm (or any harm at all for that matter) attributable to the FAC Defendants, and Plaintiffs' unsubstantiated generalities cannot be the basis for injunctive

relief.[20]

Furthermore, the specious allegations of misconduct contained in declarations supporting Plaintiffs' Motion are not only contradicted by the FAC Defendants' Affidavits, but also fail to establish any irreparable harm. There is no alleged harm – monetary or otherwise – based on the purported misconduct of the FAC Defendants.

Plaintiffs have failed to demonstrate yet another aspect of the irreparable harm standard: that the requested injunction would avoid its alleged irreparable harm. *See, e.g.*, *CVS Pharm.,* 951 F.3d at 55 (court must consider whether and to what extent the moving party will suffer irreparable harm in the absence of injunctive relief); *Allscripts Healthcare, LLC,* 386 F. Supp. 3d at 95 (plaintiff failed to establish that it would be irreparably harmed in the absence of injunctive relief). ***Plaintiffs' Proposed Order merely identifies conduct they wish the Court to proscribe – but that is nearly all already being followed by the FAC Defendants***. As requested in the Proposed Order, the FAC Defendants are: (1) already avoiding contacts with Cynosure customers (as defined even more broadly than in the CEIP); (2) are not soliciting Cynosure employees; (3) are not using or disclosing Cynosure's confidential information; (4) are not competing in their former Cynosure territories; and, (5) are not otherwise interfering with Cynosure's business.[21] To the extent that the FAC Defendants ever possessed Cynosure's

---

[20] Plaintiffs have also failed to demonstrate *imminence* of harm, an independent basis to deny its Motion. *See, e.g.*, *Biogen Idec MA Inc. v. Trustees of Columbia Univ. in City of New York*, 332 F. Supp. 2d 286, 296 (D. Mass. 2004) (the threat of irreparable harm must be real and immediate). None of the harm Plaintiffs speculate about in the FAC or Motion even pretends to be imminent.

[21] Provisions of the Proposed Order not already being carried out by the FAC Defendants relate to overreaching by Plaintiffs – such as their request that Colby, Malone, Steinhorn, and Kosofsky be barred from working anywhere in North America for a competitor, even though the territories where they worked for Cynosure were not continental or even national but were instead limited to discrete geographic territories in the Southeastern part of the United States. In addition, because Scarelli-Smith does not have a noncompete or a customer nonsolicit in his CEIP, any such restrictions are inapplicable as to him.

confidential information, it was collected from them by their counsel, who returned it to Plaintiffs' counsel on November 21, 2022. For all of these reasons, there is no risk that denying Plaintiff's requested injunctive relief would lead to irreparable harm, since an injunction would accomplish no purpose.

Plaintiffs' delay in bringing the Motion further underscores the lack of any irreparable harm. Most of the FAC Defendants resigned from Cynosure in late May 2022 and began working at Reveal shortly thereafter. Yet, Plaintiffs waited until August 2022 to bring them into this litigation and delayed for another two months before filing the instant Motion on October 21, 2022 – a total delay of approximately five months. Massachusetts courts have long held that "[u]nexplained delay in seeking relief for allegedly wrongful conduct may indicate an absence of irreparable harm and may make an injunction based upon that conduct inappropriate." *Alexander & Alexander, Inc. v. Danahy*, 21 Mass. App. Ct. 488, 494–95 (1986). *See also Charlesbank Equity Fund II*, 370 F.3d at 163 ("delay between the institution of an action and the filing of a motion for preliminary injunction, not attributable to intervening events, detracts from the movant's claim of irreparable harm.") Such is the case here, where Plaintiffs took their time in bringing suit against the FAC Defendants – nearly three months after most of the FAC Defendants resigned – and waited about five months before seeking preliminary injunctive relief as to them. *See, e.g.*, *Fuchs v. Steel-Fab, Inc.*, 356 F. Supp. 385, 388 (D. Mass. 1973) (four-month delay in seeking injunction undermined petitioner's allegation of irreparable harm and precluded entry of injunction).

Any perceived threat of irreparable harm that ever existed has not yet materialized and is not likely to at this point. After all, Cynosure's purportedly confidential information is growing stale, and Cynosure has had over six months since most of the FAC Defendants resigned within

which to shore up its customer relationships. The sparse allegations of customer solicitation set forth in the Motion (filed October 21, 2022) are all alleged to have occurred months ago, in July and August 2022, and there is no allegation that any harm – let alone irreparable harm – has resulted in the intervening months. In short, Plaintiffs' delay and lack of urgency further undermine their weak, speculative arguments of irreparable harm.

## IV. The Balance of Harms and Public Interest Weigh Heavily in the FAC Defendants' Favor

Finally, any potential harm caused to Plaintiffs by a denial of their Motion must be balanced against any reciprocal harm caused to the FAC Defendants by the imposition of an injunction. As explained above, the FAC Defendants have provided assurances that Cynosure's legitimate economic interests are not threatened by the FAC Defendants' employment with Reveal, and that no actual or threatened irreparable harm exists.

However, enforcing Plaintiffs' Proposed Order would be disproportionately harmful to the FAC Defendants beyond the obvious financial consequences of having to establish themselves in a new territory. Nearly all of the FAC Defendants reside in their former Cynosure territories, so the proposed geographic restrictions will necessarily require additional and frequent travel and create strains on their personal relationships. For those FAC Defendants who are caregivers to elderly parents or young children, these restrictions are especially burdensome. Indeed, Kosofsky has a newborn in addition to a three-year-old, and any travel throughout the workweek (outside of North America, no less) will be particularly onerous for her. Kosofsky Aff., ¶ 43.

Enforcing Plaintiffs' Proposed Order would be disproportionately harmful to the FAC Defendants in another significant way as well. In the November 9, 2022 Order, the Court acknowledged that with respect to the Equity Agreement, there are "immeasurable challenges

associated with determining who is a customer," and that the former employees "do not have a verifiable method to identify every client that has ever purchased a Cynosure product." Dkt. No. 171 at 35-36. Accordingly, the Court concluded that the customer nonsolicitation in the Equity Agreement is overly broad. With respect to the customer nonsolicitation in the CEIP, as applied to the FAC Defendants, the customer nonsolicitation is not only overbroad with respect to territory, but the definition of "Covered Customer" also creates challenges for Reveal and the FAC Defendants if ordered to comply with an injunctive relief enforcing that language.[22] *See* Bailey Aff., ¶ 30; Bergslien Aff., ¶ 42; Calabrese Aff., ¶ 45; Colby Aff., ¶ 38; Dahlstrom Aff., ¶ 45; Gibbons Aff., ¶ 43; Malone Aff., ¶ 45; Morgan Aff., ¶ 39; Padron Aff., ¶ 41; Phillips Aff., ¶ 38; Sargent Aff., ¶ 41; Steinhorn Aff., ¶ 40; Stennick Aff., ¶ 36; Tolusic Aff., ¶ 41. These challenges will prevent them earning a living in any territory, as well as stifle fair competition.

If the Proposed Order is imposed as Cynosure has drafted it, its overbroad and overreaching provisions would bar the FAC Defendants from legitimately engaging in their employment and strangle competition. This anticompetitive request would be harmful for the FAC Defendants and inconsistent with the public policy favoring fair and ordinary competition. *See Automile Holdings, LLC v. McGovern*, 483 Mass. 797, 808 (2020) ("We have long recognized a public interest in the ability of individuals to be able to carry on their trade

---

[22] Consequently, if the Court decides to enforce the CEIP's customer nonsolicitation provision against any FAC Defendant, the definition of "Material Interaction" should be blue-penciled to mean any customer for whom the former employee was paid a commission or received a bonus as a result of a sale to that customer in the 1-year period prior to the former employee's resignation. The definition of a "Covered Customer" should <u>not</u> include providers with whom the employee "participated in or supervised a communication," or providers about whom a former employee was allegedly provided "confidential information" as such a restriction would be impossible for the FAC Defendants to comply with, given that (a) Plaintiffs have failed to demonstrate that any of the FAC Defendants have any documents identifying any actual or prospective customers with whom they may have communicated via email blast or otherwise; and (b) Plaintiffs have failed to demonstrate that any of the FAC Defendants were privy to any allegedly confidential information, let alone that such information is in jeopardy; and (c) the FAC Defendants have already agreed that they are prohibited from using or disclosing Cynosure's confidential information.

freely."); *Woolley's Laundry v. Silva*, 304 Mass. 383, 387 (1939) ("…the public and the individual have an interest in every person carrying on his trade or occupation freely. Interference with individual liberty of trade, if there is nothing more is contrary to public policy ..."); *Dynamics Research Corp. v. Analytic Sci. Corp.*, 9 Mass. App. Ct. 254, 267 (1980) (the right to use one's general knowledge, experience, memory and skill promotes the public interest in labor mobility, the employee's freedom to practice his profession, and in mitigating monopoly). It is clear that the balance of harms, consistent with public policy, favors the FAC Defendants in this circumstance.

## V. The Court Should Not Toll the Restrictive Covenant Periods in the CEIP <u>From the Time of Any Future Order for Injunctive Relief as Proposed by Plaintiffs</u>

As for Plaintiffs' argument that the restrictive covenants in the CEIP should be tolled according to its terms (*see* Dkt. No. 156 at 19-20), the Court should decline to toll the restrictive covenant periods "beginning on the date of the injunction," as Plaintiffs request.[23] *Id.* at 20.

First, as discussed above, Plaintiffs have failed to show a likelihood of success on the merits of its breach of contract claims against the FAC Defendants. *See supra* at 7. Plaintiffs have, therefore, failed to satisfy the tolling provision of the CEIP, which is triggered only "if Employee fails to comply with a timed restriction in this Agreement.. . ." *See* Bailey Aff<u>., Ex. A, § 8</u>. Unless the Plaintiffs have established the predicate for tolling via credible, uncontroverted evidence of a specific violation, the Court should not entertain their request.[24]

---

[23] There is no tolling provision within the Equity Agreement; therefore, Steinhorn's 12-month noncompete restriction indisputably began to run from his May 27, 2022 separation date (Steinhorn Aff., ¶ 28), Stennick's 12-month noncompete restriction began to run from his May 27, 2022 resignation date (Stennick Aff., ¶ 28), Malone's 12-month noncompete restriction began to run from his June 3, 2022 resignation date (Malone Aff., ¶ 35), Sargent's 12-month noncompete restriction began to run from his May 23, 2022 resignation date (Sargent Aff., ¶ 31), and Kosofsky's 12-month noncompete restriction began to run from her May 31, 2022 resignation date (Kosofsky Aff., ¶ 32).

[24] If the Court is inclined to accept Plaintiffs' argument and allow for tolling, the FAC Defendants urge the Court to begin running the time periods from the date of the last purported violation, as supported by

Second, Plaintiffs' request for tolling from the date of any injunction is yet another example of their overreach, highlighted by the Plaintiffs' own delay in seeking injunctive relief against the FAC Defendants. Plaintiffs commenced this litigation against the Original Defendants on July 20, 2022. The FAC Defendants were added on August 19, 2022, through the FAC. Plaintiffs then waited another ***two full months***, until October 21, 2022, to file the instant Motion. The FAC Defendants should not suffer additional and unmerited constraints on their livelihood when they were clearly no more than an afterthought for Plaintiffs. To be clear, the time difference is significant. If the restrictive covenants run from the date of the FAC Defendants' resignations, as contemplated by the CEIP, that would mean the restrictive covenants run from the end of May 2022 for nearly all the FAC Defendants. *See* Bailey Aff.*, Ex. A, § 5* (running from the "Termination Date"). By contrast, the hearing on the instant motion will not even take place until January 23, 2023. *See* Dkt. No. 172. That alone is a difference of 8 months, which is significant *per se*, but even more so when one considers that it constitutes almost the entire 9-month noncompete period in the CEIP and nearly half of the 18-month customer nonsolicitation period in the CEIP. To allow Plaintiffs to increase the length of the noncompete and customer nonsolicitation restrictions by nearly 100% and 50%, respectively – because of their own delay – would be patently unfair and cause the FAC Defendants substantial hardship. Moreover, allowing such a result would provide Plaintiffs with an unmerited windfall and create a perverse incentive for employers to delay and manipulate their pursuit of claims for breaches of restrictive covenants whenever there is a tolling provision.

---

credible evidence. Accordingly, any violations of the noncompete provision of the CEIP that the Court finds should be tolled to the date when the FAC Defendants ceased working in their former Cynosure territories, and any violations of the customer nonsolicit provision of the CEIP that this Court finds should be tolled to the date when the FAC Defendants last solicited a "covered customer" as defined by the terms of that agreement. These dates vary for each FAC Defendant, but they are set forth within their respective Affidavits.

## CONCLUSION

For all off the reasons set forth above, this Court should deny Plaintiffs' Motion for Entry of Temporary Restraining Order and Preliminary Injunction as to Individuals Added in the First Amended Complaint in its entirety.

Respectfully submitted,

FAC DEFENDANTS,

By their attorneys,

/s/*Russell Beck*
Russell Beck, BBO No. 561031
*rbeck@beckreed.com*
Nicole Corvini, BBO No. 670587
*ndaly@beckreed.com*
BECK REED RIDEN LLP
155 Federal Street, Suite 1302
Boston, Massachusetts 02110
Telephone: (617) 500-8660
Facsimile: (617) 500-8665

Dated: December 9, 2022

## CERTIFICATE OF SERVICE

I, Russell Beck, hereby certify that the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on December 9, 2022.

/s/*Russell Beck*
Russell Beck