UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYNOSURE, LLC, et al,<br><br>   Plaintiffs,<br><br>v.<br><br>REVEAL LASERS LLC et al,<br><br>   Defendants. | No. 22-cv-11176-PBS |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR PROTECTION AND TO COMPEL DISCOVERY RESPONSES**

CABELL, U.S.M.J.

**I.   INTRODUCTION**

In this action, Cynosure, LLC, ("Cynosure") and Lotus Parent, Inc., (collectively, "plaintiffs") allege that dozens of their former employees conspired with a competitor and the competitor's parent company (collectively, "defendants") to misappropriate the plaintiff's trade secrets and other confidential information in violation of multiple contract provisions.  The plaintiffs assert numerous causes of action including (but not limited to) violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836, and the Massachusetts Uniform Trade Secrets Act ("MUTSA"), M.G.L. c. 93, §§ 42 et seq.  The case has seen significant litigation up to this point, with discovery set to close on February 29, 2024.

1

Through the present motion, the defendants seek an order compelling the plaintiffs to provide additional information regarding the purportedly misappropriated trade secrets, and further seek protection from further discovery on those trade secrets until the additional information is provided. (D. 288). The defendants argue that the plaintiffs have not identified the trade secrets with sufficient particularity to enable them to prepare their defense, and should not be allowed to depose any of the defendants until they (the plaintiffs) supplement their identification. The plaintiffs oppose the motion, asserting *inter alia* that their trade secret identification is adequate and that a protective order would be inappropriate. After considering the parties' filings, the court denies the defendants' motion for the reasons that follow.[1]

## II.   LEGAL STANDARD

Unlike the federal Defend Trade Secrets Act, MUTSA explicitly requires a plaintiff asserting a theft of trade secrets claim to identify the trade secret(s) at issue before discovery begins. Specifically, the statute provides that, "[b]efore commencing discovery relating to an alleged trade secret, the party alleging misappropriation shall identify the trade secret with sufficient

---

[1] The court has reviewed and considered the defendants' reply brief in support of the motion (D. 315) notwithstanding the fact that the defendants failed to seek leave of court before filing it. *See* L.R. 7.1(b)(3) ("All other papers . . . , whether in the form of a reply brief or otherwise, may be submitted only with leave of court.").

2

particularity under the circumstances of the case to allow the court to determine the appropriate parameters of discovery and to enable reasonably other parties to prepare their defense." M.G.L. c. 93, § 42D(b).

## III. DISCUSSION

The parties appear to agree that the relevant description of the plaintiffs' trade secrets is Cynosure's response to the defendants' second set of interrogatories, specifically its response to interrogatories 21 and 22. (D. 289-5). Interrogatory 21 directed Cynosure to "[s]tate the Basis, in full and complete detail and including all factual and legal bases, for any claim that any Defendant possessed one or more trade secrets and/or items of Confidential Information that any Defendant misappropriated or otherwise misused." (*Id.* at p. 4). Similarly, Interrogatory 22 directed Cynosure to "[s]tate the Basis, in full and complete detail and including all factual and legal bases, for Cynosure's allegations that any Defendant wrongfully acquired, retained, used, disclosed, and/or otherwise misappropriated any Cynosure trade secrets and/or items of Confidential Information." (*Id.* at p. 23).

Cynosure responded by describing eight categories of information that it alleged comprised the relevant trade secrets in this case, along with assertions about the economic value of this information and the measures Cynosure took to keep the

3

information secure. (*Id.* at pp. 4-8). The response also included facts that, in Cynosure's view, supported the notion that each individual defendant misappropriated Cynosure's trade secrets and/or confidential information. (*Id.* at pp. 9-23). In most instances, this included a reference to documents that each defendant retained after leaving Cynosure and subsequently returned in compliance with the temporary restraining order ("TRO") entered earlier in this case.

MUTSA makes clear that the purpose of the pre-discovery identification requirement is "to allow the court to determine the appropriate parameters of discovery and to enable reasonably other parties to prepare their defense." M.G.L. c. 93, § 42D(b); *see also Adimab, LLC v. Linkedup Bioscience, Inc.*, No. 2084CV00843-BLS2, 2022 WL 16839215, at *1 (Mass. Super. Ct. June 8, 2022) ("The joint submission shows that these trade secrets are sufficient to permit the defendants to prepare their defense and to allow the parties and the court to determine the appropriate parameters of discovery. Nothing more is needed at this stage of the case.").

The court is persuaded that Cynosure's interrogatory responses are sufficient to permit the defendants to prepare their defense. Each of the eight categories of purported trade secrets is described at length, often with examples of the types of documents that would tend to contain those secrets. Moving beyond that, the response indicates the types of trade secrets that each

4

individual defendant (with a few exceptions) is alleged to have retained after leaving Cynosure. By way of example, Cynosure alleges that defendant Jason Kalso retained the following trade secrets, which were among the documents he returned in accordance with the TRO: "customer lead and pipeline information, product pricing lists, compensation plan information, return-on-investment sheets, customer purchase agreements, laser purchase sheets, customer financing documents, and non-public marketing materials." (D. 289-5, p. 15). This list alone is certainly sufficient to enable Kalso to prepare his defense as to, for instance, whether he indeed retained those materials and whether they are in fact trade secrets.

The defendants raise two arguments as to why the plaintiffs' identification, lengthy as it is, is insufficient. First, the defendants take issue with the plaintiffs' citation to the materials they returned in response to the TRO. The defendants contend that these materials constitute over 130,000 documents, including items that are obviously not trade secrets, such as shipping labels, blank emails, and social media posts. The plaintiffs respond by stating that they never asserted every document the defendants returned contained trade secrets, only that the defendants collectively retained a large volume of documents from Cynosure, some of which contained trade secrets. The plaintiffs have the better of this argument.

5

To begin, it bears noting that neither of the interrogatories at issue explicitly asked the plaintiffs to identify their trade secrets. Instead, they asked the plaintiffs to provide "all factual and legal bases" for their allegations that the defendants improperly possessed, acquired, used, et cetera "one or more trade secrets and/or items of Confidential Information." (*Id.* at p. 4). A request for "all factual and legal bases" supporting a claim is a very broad request that necessarily calls for a broad response. *See* L.R. 26.5(c)(8) (setting out requirements for a party responding to a "state the basis" interrogatory); *United States ex rel. Long v. Jannsen Biotech, Inc.*, Civil Action No. 16-12182-FDS, 2022 WL 4124018, at *6 (D. Mass. Sept. 9, 2022) ("Local Rule 26.5(c)(8) provides for expansive interrogatory responses that 'identify each and every' document and communication relevant to a contention. . . ."). The defendants can hardly be surprised that the plaintiffs' response cites to a broad swath of documents.

Moreover, the plaintiffs do not claim that each of the 130,000+ documents identified in their responses constitute trade secrets. In responding to the interrogatories, Cynosure identified all the documents that each individual defendant returned in compliance with the TRO. To be sure, the response indicates that "[t]hese returned documents reflected Cynosure trade secrets and confidential information of the types identified above[.]" (D. 289-5, p. 9). However, for each individual

6

defendant, the response also denoted the types of information within the returned documents that Cynosure considered to be trade secrets or confidential information, e.g., "sales pitch recordings and scripts and customer lead and pipeline information." (*Id.* at p. 10). Reading the response as a whole, it is reasonably clear that the plaintiffs never intended to assert that obviously benign items among the returned documents such as shipping labels and blank emails constituted trade secrets, and the presence of those items within the cited document ranges does not render the plaintiffs' description of their trade secrets insufficient.

Turning to the defendants' second argument, they assert that the plaintiffs' description fails to "separate their trade secrets from '[m]atters of public knowledge or general knowledge in an industry.'" (D. 289, p. 2) (quoting *J.T. Healy & Son v. James A. Murphy & Son*, 260 N.E.2d 723, 729 (Mass. 1970)) (alteration in original). This argument is something of a red herring. Again, MUTSA requires only that the plaintiffs identify their purported trade secrets with sufficient particularity to enable the defendants to prepare their defense. M.G.L. c. 93, § 42D(b). "A plaintiff asserting a claim under [MUTSA] need not prove that its claimed secrets are in fact trade secrets before it may engage in discovery."[2] *Adimab*, 2022 WL 16839215, at *1; *see also Brescia v.*

---

[2] The defendants correctly point out that this case is not in the pre-discovery phase but is rather nearing the close of discovery. However, they do not articulate why a different identification standard should apply at the late-

7

*Angelin*, 90 Cal. Rptr. 842, 848 (Cal. Ct. App. 2009) (applying statutory disclosure requirement similar to MUTSA) ("Absent a showing that the details alone, without further explanation, are inadequate to permit the defendant to discern the boundaries of the trade secret so as to prepare available defenses, . . . the trade secret claimant need not particularize how the alleged secret differs from matters already known to skilled persons in the field."). As discussed above, the plaintiffs' identification of its alleged trade secrets is sufficient to enable the defendants to prepare their defense. At this stage, it is not for the court to decide whether the items described are indeed trade secrets.

The court notes in closing that although the issue is not ripe today, the plaintiffs will eventually have to prove that their alleged trade secrets are bona fide trade secrets. *Incase Inv. V. Timex Corp.*, 488 F.3d 46, 52 (1st Cir. 2007). That means, in essence, proving that each alleged trade secret is "a secret; '[m]atters of public knowledge or of general knowledge in an industry cannot be appropriated by one as his secret.'" *Iconics, Inc. v. Massaro*, 266 F. Supp. 3d 449, 452 (D. Mass. 2017) (quoting *J.T. Healy & Son*, 260 N.E.2d at 729) (alteration in original).

---

discovery, pre-dispositive motion stage or what that standard should be. The court thus does not consider the issue further. See *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 260 (1st Cir. 1999) ("The district court is free to disregard arguments that are not adequately developed."); *Nautilus Ins. Co. v. Moura*, Civil Action No. 21-11864-PBS, 2022 WL 20303184, at *5 (D. Mass. Dec. 21, 2022) (applying *Higgins* in a discovery order).

When that time comes, the plaintiffs will be "bound by [their] definitions of [their] claimed trade secrets[,]" *Adimab*, 2022 WL 16839215, at *1, meaning that, "[i]f any of those definitions proves to be too broad to constitute a trade secret, then [the plaintiffs] cannot prevail as to that definition." *Id.*; *see also Iconics*, 266 F. Supp. 3d at 456 ("[P]recise identification of the alleged trade secrets is a crucial component of trade secret litigation.") (internal quotation marks and citation omitted). While the plaintiffs are not obligated to supplement their trade secret identifications, they may wish to reflect on whether it makes sense to do so with an eye toward proving their case after discovery.[3] If they so choose, the plaintiffs may provide a supplemental trade secret identification no later than two weeks from the date of this ruling.

**IV. <u>CONCLUSION</u>**

For the foregoing reasons, the defendants' motion for protection and to compel discovery responses is DENIED.

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  December 22, 2023

---

[3] To be clear, the court takes no position on whether the plaintiffs' identifications are sufficient to sustain their trade secret claims.