**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CYNOSURE, LLC, et al.;<br>Plaintiffs,<br>v.<br>REVEAL LASERS LLC., et al.;<br>Defendants | Civil Action No. 1:22-CV-11176-PBS<br>**REDACTED PUBLIC VERSION**<br>**LEAVE TO FILE UNDER SEAL REQUESTED MAY 21, 2024** |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 4**

Defendants' Motion *in Limine* No. 4 asks the Court broadly to issue an order precluding Plaintiffs Cynosure, LLC and Lotus Parent, Inc. (collectively, "Plaintiffs" or "Cynosure") from evidence or testimony relating to the net worth or financial condition of any individual. Defendants, whether by design or happenstance, do not specify which "individuals" they are seeking to protect here but make a vague reference to the fact that the jury should not be allowed to perceive whether "Defendants or their investors" have the financial resources to pay any judgment rendered against them. This is a remarkable request given that Defendants have repeatedly made their financial condition entirely relevant by claiming that Defendants resigned from Cynosure because they were concerned about their compensation and financial condition. They doubled down on this concern by claiming that Cynosure's litigation—and their inability to compete with Cynosure—has caused them considerable financial hardship. Reveal Lasers' financial condition has also repeatedly been put at issue, as Defendants have claimed (only when it suits them) that Reveal Lasers has not made money. But discovery has revealed that Reveal Lasers is funded exclusively by two individuals—Eyal Buchbinder, its CEO, and Tsahi Merkur, its President, who have each have testified to having invested millions of dollars in the enterprise.

In fact, pursuant to recently produced documentation from Reveal, it is now known that Merkur, an Israeli "parking lot tycoon"[1] and "businessman who became a philanthropist"[2] invested over [redacted] million in Reveal and owns over [redacted] of the company personally, while Buchbinder owns over [redacted]. *See* Farris Decl. Ex. 1 ([redacted]); Farris Decl. Ex. 2 ([redacted]) Daley and Chambers each own [redacted] *See* Farris Decl. Ex. 3; Farris Decl. Ex. 4. Moreover, other witnesses have testified that Reveal Lasers LLC and Reveal Lasers, Ltd. have co-mingled funds with each other, and that when Reveal Lasers needs money, it relies on Mr. Buchbinder and Mr. Merkur. And finally, the financial condition of the Defendants at trial here—including the individuals, Robert Daley and Christopher Chambers—is directly relevant to punitive damages. As a result, Cynosure respectfully requests that the Court deny Defendants' motion *in limine* no. 4.

## I. <u>ARGUMENT</u>

### A. Evidence of Financial Circumstances Is Relevant to Motive

Throughout this litigation, Daley and Chambers have put forth the fictitious narrative that they did not solicit the other Former Employees to join Reveal; rather, the other employees asked to go with Daley and Chambers because of alleged financial hardships at Cynosure and company decisions that would allegedly impact employee compensation. *See, e.g.*, Dkt. 75 ¶¶ 18-19; Dkt. 77 ¶ 17; Dkt. 83 ¶¶ 15-16, 18; Dkt. 86 ¶ 8.

The evidence will show, however, that Defendants' compensation at Cynosure was significant, with year-over-year increases, debunking any claim that their compensation was going down. *See* Dkt. 105-19; Dkt. 159-2. As such, evidence about the Defendants' financial

[1] https://www.haaretz.com/israel-news/business/2010-11-02/ty-article/parking-lot-king-tsahi-merkur-lines-up-as-latest-azorim-suitor/0000017f-e209-d804-ad7f-f3fbf6e10000

[2] https://www.globes.co.il/news/sparticle.aspx?did=1001411324

circumstances is relevant to disproving the false narratives regarding why and how the Former Employees left for Reveal.

As discussed in more detail in Cynosure's Opposition to Defendants' Motion *in Limine* No. 2, Defendants have also suggested they may intend to offer evidence regarding the financial hardships they have allegedly suffered during this litigation. *See* Cynosure's Opposition to Defendants' Motion *in Limine* No. 2. For example, during his deposition, Chambers baselessly alleged that Cynosure wanted the Defendants to "lose everything" and hoped that Defendants' children "suffer" and starve. Farris Decl. Ex. 6 (Chambers Dep.) at 124:7-22. Evidence of Defendants' financial condition is therefore also relevant to disputing these inflammatory (and false) narratives. *Id*

### B. Evidence of Financial Circumstances Is Relevant To Show that the Reveal Entities Operated as One Organization.

It is undisputed that Reveal Lasers LTD and Reveal Lasers LLC are highly interconnected. For example, Reveal Lasers LTD is a managing member of Reveal Lasers LLC. Reveal LTD's founder and global CEO, Eyal Buchbinder, is also the President of Reveal LLC.

But even beyond corporate structure, discovery has shown that Reveal Lasers LLC and Reveal Lasers LTD are also interconnected from a financial perspective, with co-mingled funds—with Reveal Lasers LTD pulling all the financial strings. For example, Jim Palastra, Reveal LLC's "Global Chief Operating Offers" and highest-ranking financial employee, testified that Rotem Palash, Reveal LTD's head of treasury, has the authority to order that Reveal LLC send money to Reveal LTD's accounts. Farris Decl. Ex. 5 (Palastra Dep.) at 265:10-270:5. Reveal LTD also provides financing to Reveal LLC when needed, such as via "intercompany" loans. *Id.* (discussing "intercompany" loan from Reveal LTD to Reveal LLC). When asked about the repayment terms for such loans, Mr. Palastra disavowed knowledge—claiming to be just following orders from the

LTD as to the money. *Id.* ("[redacted]"). Mr. Palastra essentially conceded that Reveal LLC's money is Reveal LTD's money, and that if Ms. Palash asks him to send Reveal LTD up to all of the money in Reveal LLC's bank account, he would "have no choice" but to comply and said that "where they place the money is up to them." *Id.* Palastra further testified that Tsahi Merkur had also made "direct investment" in Reveal LLC via a "line" of "cash" worth [redacted] that Reveal LTD negotiated on Reveal LLC's behalf. *Id.* at 243:10-245:22.

Mr. Buchbinder similarly testified that Reveal LTD is the only formal investor in Reveal LLC, and that most of those investments have come in the form of loans. Farris Decl. Ex. 7 (Buchbinder Dep.) at 210:16-20, 211:17-212:3. Mr. Buchbinder also testified that Reveal LLC and Reveal LTD have combined financial statements from their accountants. *Id.* 212:10-15.

Such co-mingling of funds and finances shows that Reveal LTD and Reveal LLC are not a "parent" and "subsidiary" in the traditional sense; rather, Reveal LTD calls all of the financial shots for the organization. As such, the Court may "pierce the corporate veil" between the two entities. *See TechTarget, Inc. v. Spark Design, LLC*, 746 F. Supp. 2d 353, 356 (D. Mass. 2010) (court may "disregard corporate formalities 'when there is a confused intermingling of activity of two or more corporations engaged in common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting.'") (quoting *My Bread Baking*

*Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 619 (1968)).[3] This is important because Defendants have repeatedly suggested that they intend to argue at trial that Reveal LLC has limited funds and generated minimal revenue during the relevant period. However, Reveal should not be able to hide from liability by playing a shell game with its assets among its various corporate entities, executives, and/or officers. As such, given how Reveal is structured, evidence of the entire organization's financial condition (including that of its only two known investors—Messrs. Merkur and Buchbinder) is relevant to respond to Defendants' arguments.

**C. Defendants' Financial Circumstances are Relevant to Punitive Damages.**

In addition to compensatory damages for the harm Defendants have wrought, Cynosure also seeks punitive damages for Mr. Chambers' and Mr. Daley's willful and wanton breach of their employment agreements. *See Reiver v. Murdoch & Walsh, P.A.*, 625 F. Supp. 998, 1015 (D. Del. 1985) (Delaware law allows for punitive damages for a breach of contract where the breach is "malicious[] and without probable cause, for the purpose of injury [to the other party] by depriving him of the benefits of the [contract].").

The "financial position of the defendant [is] one factor that [may] be taken into account in assessing punitive damages." *TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 464 (1993); *see also Labonte v. Hutchins & Wheeler*, 678 N.E.2d 853, 862 (Mass. 1997) (same); *DaPrato v. Massachusetts Water Res. Auth.*, 123 N.E.3d 737, 753 (Mass. 2019) (same); *Weiner v. Markel*, 92 A.2d 706, 707 (Del. Super. 1952) ("And in jurisdictions where punitive damages may be recovered, evidence of defendant's financial worth is admissible.") (citation omitted). Plaintiffs

[3] Massachusetts courts use a 12-factor test to determine whether to pierce a corporate veil: "1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud." *TechTarget v. Spark Design, LLC*, 746 F. Supp. 2d 353, 356 (D. Mass. 2010) (citation omitted).

have every intention of presenting such evidence, along with evidence of the other factors juries may consider when weighing punitive damages. *See Labonte*, 678 N.E.2d at 862 (describing the various factors). Neither of the cases Defendants cite—*In re Homestore.com, Inc.*, No. CV 01-11115 RSWL CWX, 2011 WL 291176, at *1 (C.D. Cal. Jan. 25, 2011) and *Fed. Deposit Ins. Corp. v. Amos*, No. 3:12CV548-MCR/EMT, 2016 WL 4697930, at *2 (N.D. Fla. Jan. 21, 2016)—support the proposition that a defendant's financial position is irrelevant in an action that seeks punitive damages. These cases do not even purport to address punitive damages.

## II. CONCLUSION

For the foregoing reasons, Defendants' motion *in limine* no. 4 should be denied.

Dated: May 21, 2024

Respectfully submitted,

CYNOSURE, LLC
LOTUS PARENT, INC.

By their attorneys,

*/s/ Joseph Farris*
Dipanwita Deb Amar
Joseph Farris
Matthew Diton
ARNOLD & PORTER KAYE SCHOLER LLP
3 Embarcadero Center, 10th Floor
San Francisco, California 94111
dipanwita.amar@arnoldporter.com
joseph.farris@arnoldporter.com
matthew.diton@arnoldporter.com
T: +1 415.471.3100
F: +1 415.471.3400
*Admitted Pro Hac Vice*

Joshua S. Barlow (SBN: 667472)
Fred A. Kelly Jr. (SBN: 544046)
ARNOLD & PORTER KAYE SCHOLER LLP
200 Clarendon Street, 53rd Floor
Boston, MA 02116
Joshua.barlow@arnoldporter.com
Fred.kelly@arnoldporter.com

T: +1 617.351.8050
F: +1 627.226.9199

**CERTIFICATE OF SERVICE**

I, Joseph Farris, hereby certify that this document will be emailed to the registered participants as identified on the Notice of Electronic Filing on May 21, 2024.

*/s/ Joseph Farris*
Joseph Farris