**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CYNOSURE, LLC, et al.; | Civil Action No. 1:22-CV-11176-PBS |
| Plaintiffs, | |
| v. | |
| REVEAL LASERS LLC., et al.; | |
| Defendants | |

## JOINT PRETRIAL MEMORANDUM

Pursuant to the Court's March 29, 2024 order (ECF No. 434) and Local Rule 16.5(d), the parties respectfully submit this Joint Pretrial Memorandum in connection with the trial in this action, scheduled to commence on June 10, 2024.

## I.  THE NAMES, ADDRESSES AND TELEPHONE NUMBERS OF TRIAL COUNSEL.

A.  Trial Counsel for Plaintiffs

**ARNOLD & PORTER KAYE SCHOLER LLP**
3 Embarcadero Center, 10th Floor
San Francisco, California 94111

Dipanwita Deb Amar (pro hac vice)
- dipanwita.amar@arnoldporter.com
- Telephone:  41.5.471.3141

Joseph Farris (pro hac vice)
- joseph.farris@arnoldporter.com
- Telephone: 415.471.3454

Matthew Diton (pro hac vice)
- matthew.diton@arnoldporter.com
- Telephone: 415.471.3374

**ARNOLD & PORTER KAYE SCHOLER LLP**
200 Clarendon Street, 53rd Floor
Boston, MA 02116

Joshua S. Barlow (SBN: 667472)
- Joshua.barlow@arnoldporter.com
- Telephone: 617.351.8052

Fred A. Kelly Jr. (SBN: 544046)
- Fred.kelly@arnoldporter.com Fd
- Telephone: 617.351.8051

B. <u>Trial Counsel For Defendants</u>

MICHELMAN & ROBINSON, LLP
- Madison Dini (admitted pro hac vice)
  717 Texas Avenue, Suite 3100
  Houston, Texas 77002
  Telephone: (713) 422-2121

- Ashley N. Moore (admitted pro hac vice)
  300 Crescent Court, Suite 1700
  Dallas, Texas 75201
  Telephone: (214) 273-4050

- Enrico S. Trevisani (admitted pro hac vice)
  605 Third Avenue, 30th Floor
  New York, New York 10158
  Telephone: (212) 730-7700

WOLF, GREENFIELD & SACKS, P.C.
- Gerald B. Hrycyszyn, BBO# 675201
  Michael A. Albert, BBO# 558566
  600 Atlantic Avenue
  Boston, MA 02210
  Telephone: (617) 646-8000

## II.   **<u>WHETHER THE CASE IS TO BE TRIED WITH OR WITHOUT A JURY.</u>**

**Plaintiffs' Statement**:

This is a jury trial.  However, while Plaintiffs submit that the Court will decide at least the following issues following the presentation of evidence (in addition to any other rulings on issues of law):

1. Any equitable claims and defenses, including Defendants' purported equitable defense of unclean hands.

2. The claims for violation of M.G.L. C. 93A (although the Court may seek an advisory verdict from the jury).

2

3.  The award of any attorneys' fees and costs under any claim, which would be decided in post-trial briefing, including whether the trade secret claims were brought in bad faith.

4.  The award of any prejudgment (or post judgment) interest, which would be decided in post-trial briefing.

**Defendants' Statement:**

Jury trial.

## III.   SUMMARY OF THE EVIDENCE

### A.   The Plaintiffs' Summary

In the interest of not duplicating efforts, Plaintiffs have summarized the evidence, their asserted positions with respect to the import of the evidence, and their claimed damages as part of **Plaintiffs' Trial Brief** submitted herewith (as required by this Court's Order requiring a trial brief to be filed concurrently with this Joint Pretrial Memo, Dkt. 434), which Plaintiffs incorporate by reference.

Plaintiffs oppose Defendants' request to file a future brief "rebutting" the Trial Brief, which was not required to be exchanged pre-filing.  To the extent that Defendants choose not to file a Trial Brief, that is their decision, and they should be precluded from doing so.

### B.   Defendants' Summary

Plaintiffs' insertion of a separate Trial Brief goes beyond the parameters of the pre-trial memorandum set forth in Court's Order for Pretrial Conference (Dkt. 434). Plaintiffs did not confer with Defendants as to the issues set forth in their trial brief nor did Plaintiffs provide Defendants with a copy of its Trial Brief prior to submission of this Joint PreTrial Memorandum.

3

Accordingly, Defendants reserve the right to rebut any issues set forth in Plaintiffs' Trial Brief prior to or at the Pre-Trial Hearing scheduled for May 28, 2024.

    A.  <u>Breach of Contract Claims</u>

       Bob Daley and Chris Chambers dispute the enforceability of non-compete and non-solicitation clauses at-issue in this case. There is no evidence that Cynosure had an enforceable contract with Chris Chambers at the time of his resignation. But even if the jury finds that enforceable contracts existed between Cynosure and Chris Chambers or Bob Daley, there are significant issues concerning the overbreadth of the geographic scope of the non-competes, including the non-solicitation agreements' failure to define "customer" and the immeasurable challenges associated with determining who is a "customer." The customer non-solicitation in the Equity Agreement is unenforceable as overbroad.

       Further, Defendants will show that the contracts were (1) unreasonable in scope; and (2) not necessary to guard against the release of confidential information or trade secrets (which Defendants contend do not exist).  Instead, the jury will see these claims for what they truly are – an attempt to avoid lawful competition. Cynosure is not entitled to enforce a non-compete agreement to keep former sales representatives from making use of general, publicly available knowledge that they happened to learn while they were employed by Cynosure.

       There was no corporate "raid" or mass conspiracy. Neither Bob Daley nor Chris Chambers solicited anyone to leave Cynosure. Many of the individual defendants were either soon to be involuntarily terminated or looking for other opportunities. Defendants and former Cynosure employees will testify to the slew of problems with Cynosure before, during, and after Defendants' departure that formed the basis for their individual decisions to leave the company. The evidence will show Cynosure's significant downward decline and lost profits were not the result of a mass conspiracy by Reveal but instead due to Cynosure's poor equipment quality,

lack of customer service, supply chain issues, back orders, *etc*. These same witnesses will testify that Cynosure's intent to cut sales employees' compensation, and the decision to fire key, influential organizational leaders like Andrea Scwab, Maureen Tarca, and Jim Palastra contributed to their individual decisions to leave the company. Cynosure's toxic workplace culture coupled with the multiple changes in ownership and executive leadership were driving forces behind Cynosure's downfall and high attrition rates. Moreover, the evidence will show that many Cynosure employees left between 2017-2024 for direct competitors (other than Reveal) due to the same issues and concerns.

   B.   Tort Claims

   Cynosure has not produced *any* evidence that Reveal Lasers organized, directed, or otherwise contributed to any breach of fiduciary duty. Notably, none of the Original or FAC Defendants were executives at Cynosure nor did they have any meaningful power or authority over company policymaking.

   Plaintiffs' tort claims (against *all* Defendants) will fail because Plaintiffs cannot prove a business relationship existed that Defendants tortiously interfered with. Moreover, Plaintiffs cannot prove damages stemming from any underlying contracts or establish the elements of the breach of fiduciary duty and duty of loyalty claims. Likewise, there is no evidence that any of the former employees used or disclosed any of Cynosure's confidential information to make a sale or divert business away from Cynosure, let alone conspired to do so. Simply put, there is no evidence that any Defendants acted together with the specific intent to harm Cynosure.

   C.   Trade Secrets

   Defendants worked for Cynosure for years, and sometimes decades, devoting substantial time and energy to the company's success. During their transitions from Cynosure, Defendants continued to provide assistance to make sure remaining Cynosure employees had a full set of any

relevant materials. And after Defendants' tenure at Cynosure ended, they still offered to connect former clients with their new Cynosure contacts to ensure existing business went uninterrupted. Cynosure nevertheless persists in its trade secret allegations without ever having identified what precisely constitutes its trade secrets, how they were allegedly misappropriated, or what harm it sustained. Instead, Cynosure presents an indiscriminate citation to over 130,000 pages of alleged trade secrets that fall into the following seven high-level categories: (1) "confidential" sales leads, (2) "confidential" customer profiles, (3) "confidential" pricing, (4) "confidential" marketing, (5) "confidential" strategic information related to Cynosure's production innovation pipeline, (6) "confidential" compilations of competitor information, and (7) "confidential" employee compensation.

Defendants will present evidence that their conduct was lawful. In particular, the information Cynosure alleges to be a trade secret was not a trade secret, was not maintained in secrecy, nor was it misappropriated. Even if Cynosure could prove it had trade secrets to which Defendants had improper access, Defendants did not use those materials in the development of, or incorporate them into, any Reveal materials. In fact, as one example, Defendants did the opposite by actively avoiding any known Cynosure customers identified through Cynosure's public-facing "Find a Provider" webpage. Finally, even if Cynosure could prove its misappropriation allegations, it sustained no injury or loss from Defendants' actions.

Testimony by Cynosure's own executives and former employees will expose the flaws in Cynosure's IT protections and protocols. For example, Cynosure did not maintain policies protecting its "trade secrets" and virtually everyone in the company had unfettered access to the types of information Cynosure claims are trade secrets in this case.

D. Damages

Defendants contend that even if Defendants are liable for any cause of action, which they are not, Plaintiffs cannot prove they suffered any harm or damages. Alternatively, Defendants contend that the entry of an injunction and the implications of such on Defendants' business and personal lives satisfied any liability a jury may reasonably assign.

Cynosure's entire theory of damages improperly assumes that 100% of Cynosure's decline in historical revenues is solely attributed to the departure of its former employees to Reveal, even including sales territories that were not impacted or affected at all.

Critically, Cynosure's damages model ignores that Cynosure's business has seen a significant decline since at least 2016, long before any employee left for Reveal. Evidence will show that Cynosure's revenue in the relevant geography declined by 45% over the 2016-2021 period, notably before the departure of any of the Individual Defendants in this case. For example, Cynosure's damages model ignores critical facts regarding Cynosure's historical business performance, including: (1) Cynosure's history of economic decline after being acquired by Hologic and CD&R; (2) Cynosure's lack of innovation and new products; (3) Cynosure's decision to terminate and furlough employees in 2020 due to the COVID-19 pandemic; (4) changes to Cynosure's product pricing and employee compensation structure; Cynosure's high attrition rate before and after the Individual Defendants' left the company; and (5) Cynosure's decision to terminate tenured and well-respected key management employees prior to the departure of Individual or FAC Defendants. From September 2021 to December 2022, 135 employees left or were terminated by Cynosure. Moreover, Cynosure cannot identify any lost sales to any specific customer due to direct competition from Reveal.

Cynosure's purported loss of goodwill is factually unsupported and unreliable. Cynosure's alleged loss of goodwill at an incredible $46,300,000 in damages is duplicative,

grossly overstated, and highly speculative. There is no evidence Cynosure sustained any loss or impairment to its goodwill on any of its audited financial statements produced in this case – which would have been computed during any one of the recent mergers or acquisitions Cynosure was involved in between 2019-2024.

Cynosure's expert conclusions and opinions regarding damages in this case are unfounded, methodologically flawed, overstated, and unreasonable. Defendants' damages expert, Stephen E. Dell, will refute the damages outlined by Cynosure concluding that they are speculative and unsupported by the evidence in this case.

## IV.    FACTS ESTABLISHED BY THE PLEADINGS, BY ADMISSIONS, OR BY STIPULATION JOINT STIPULATIONS

The following section includes agreed "Joint Stipulations" in Section IV.A, as well as proposed (but unagreed) stipulation from each side in Section IV.B and IV.C.

### A.  Joint Stipulations

1.      The following individuals are former Cynosure employees, who are not currently being tried on an individual basis, but who have held the following roles:

| Employee Name | Cynosure Resignation Dates | Final Job Title at Cynosure (including territories) | Initial Job Title at Reveal Lasers LLC (including territories) | Source |
|---|---|---|---|---|
| Robert Fiacco | May 3, 2022 | District Sales Manager – New York District (NY/CT) | Regional Sales Director (Northeastern US) | Dkt. 85 at ¶¶ 14, 18 (Robert Fiacco Affidavit) |
| Dean Fiacco | May 3, 2022 | District Sales Manager – New England District | Vice President of Business Operations | Dkt. 80 at ¶¶ 12, 16, 25 (Dean Fiacco Affidavit) |
| Joshua Smith | May 6, 2022 | National Field Marketing Manager | Vice President of Marketing | Dkt. 32-3 at ¶¶ 2, 15 (Smith Affidavit) |

| Mark Sargent | May 9, 2022 | Sr. Area Sales Manager – New York District (NY/CT) | Senior District Sales Manager (NY) | Dkt. 201 at ¶¶ 5, 15, 31 (Sargent Affidavit) |
| Brogan Bair Chambers | May 14, 2022 | Director of Sales Practice Development for North America | Area Vice President of Sales (Northeastern US) | Dkt. 75 at ¶¶ 2, 10, 26 (Bair Affidavit) |
| Tara (Bushman) Kosofsky | May 16, 2022 | Regional Director of Sales - Southeast Region | Area Vice President of Sales (Southeast US) | Dkt. 195 at ¶¶ 5, 15, 32 (Kosofsky Affidavit) |
| Robert Scarelli-Smith | May 16, 2022 | Senior Event Specialist | Events & Creative Manager | Dkt. 196 at ¶¶ 5, 32 (Scarelli-Smith Affidavit) |
| Cameron Colby | May 16, 2022 | District Sales Manager – DC District (DC/MD/VA/WV) | District Sales Manager (FL) | Dkt. 189 at ¶¶ 5, 15, 28 (Colby Affidavit) |
| Anna Bergslien | May 17, 2022 | Territory Manager - Pacific Northwest District (OR/WA/ID/AK) | Area Sales Manager (PNW/NorCal/WY/ MT) | Dkt. 187 at ¶¶ 5, 14, 29 (Bergslien Affidavit) |
| Kalee Gibbons | May 17, 2022 | Territory Manager - Pacific Northwest District (OR/WA/ID/AK) | Area Sales Manager (OR/WA/ID/AK/MT/ WY/N orCal) | Dkt. 191 at ¶ 5, 13, 28 (Gibbons Affidavit) |
| Kyle Shapero | May 18, 2022 | District Sales Manager – Florida District (FL/Puerto Rico/Caribbean) | Regional Sales Director (FL) | Dkt. 81 at ¶¶ 9, 20 (Shapero Affidavit) |
| Jason Steinhorn | May 18, 2022 | District Sales Manager - TN/KY/AL/MS District | Regional Sales Director (NC/TN/KY/OH/IN/ MI) | Dkt. 197 at ¶¶ 5, 15, 28 (Steinhorn Affidavit) |
| Matthew Calabrese | May 18, 2022 | Area Sales Manager – Florida District (FL/Puerto Rico/Caribbean) | District Sales Manager (FL) | Dkt. 188 at ¶¶ 5, 16, 30 (Calabrese Affidavit) |

| Chase Tolusic | May 18, 2022 | Area Sales Manager - TN/KY/AL/MS District | District Sales Manager (TN/KY/AL/MS) | Dkt. 202 at ¶¶ 5, 29 (Tolusic Affidavit) |
|---|---|---|---|---|
| Daniel DeMarco | May 20, 2022 | Sr. Area Sales Manager – New England District | Senior Area Sales Manager (New England and NY) | Dkt. 77 at ¶¶ 8, 21 (DeMarco Affidavit) |
| Michael Russo | May 20, 2022 | Senior Business Manager | Vice President of Business Development | Dkt. 79 at ¶¶ 3, 11; Dkt. 32-3 at 1 (Russo Affidavit) |
| Jason Kalso | May 20, 2022 | District Sales Manager – Pacific Northwest District (OR/WA/ID/AK) | Regional Sales Director (PNW/NorCal/Montana/Wyoming) | Dkt. 83 at ¶¶8, 18, 30 (Kalso Affidavit) |
| Nate Dahlstrom | May 20, 2022 | Area Sales Manager – Pacific Northwest District (OR/WA/ID/AK) | District Sales Manager (PNW/NorCal/WY/MT) | Dkt. 198 at ¶¶ 5, 12, 32 (Dahlstrom Affidavit) |
| Matthew Malone | May 20, 2022 | District Sales Manager – Carolinas & Georgia District | Regional Sales Director (NC/SC/GA/AL/MS) | Dkt. 192 at ¶¶ 5, 13, 35 (Malone Affidavit) |
| Savannah Padron | May 20, 2022 | Area Sales Manager – Carolinas & Georgia District (NC/SC/GA) | District Sales Manager (AL/SC/MS/GA) | Dkt. 193 at ¶¶ 5, 13, 31 (Padron Affidavit) |
| Kris Stennick | May 20, 2022 | Practice Development Manager - Texas District (TX/LA) | Practice Development Manager – Central & West (Central and Western Half of US) | Dkt. 194 at ¶¶ 5, 13, 28 (Stennick Affidavit) |
| Cory Murrell | May 27, 2022 | Area Vice President, West and Canada | Area Vice President of Sales (Canada) | Dkt. 74 at ¶¶ 11-12, 24 n.1 (Murrell Affidavit) |
| Kathleen Phillips | June 7, 2022 | Territory Manager - Carolinas & Georgia District | Area Sales Manager (GA/AL/MS/ SC) | Dkt. 199 at ¶¶ 5, 13, 27 (Phillips Affidavit) |

| David Krueger | June 10, 2022 | District Sales Manager – Midwest District (IL/IN/WI) | Regional Sales Director (Chicago, Greater Midwest) | Dkt. 78 at ¶¶ 9, 17; Krueger Dep. 102:10-12 |
| Jesse Morgan | June 15, 2022 | Territory Manager - Florida District (FL/Puerto Rico/Caribbean) | Area Sales Manager (FL) | Dkt. 190 at ¶¶ 5, 14, 28 (Morgan Affidavit) |
| Victoria Bailey | June 30, 2022 | Practice Development Manager - DC District (DC/MD/VA/WV) | Practice Development Manager – East (Eastern Half of US) | Dkt. 200 at ¶¶ 4, 5, 19 (Bailey Affidavit) |

3.     The following documents are categorized as those that were produced by the

Former Employees to Cynosure during the litigation in accordance with the remediation process:

| Custodian | BEGBATES | ENDBATES |
|-----------|----------|----------|
| Robert Daley | DALEY_0000001 | DALEY_0005157 |
| Daniel DeMarco | DEMARCO_0000001 | DEMARCO_0000433 |
| David Krueger | KRUEGER_0000001 | KRUEGER_0000201 |
| Cory Murrell | MURRELL_0000001 | MURRELL_0016422 |
| Dean Fiacco | DFIACCO_0000001 | DFIACCO_0008781 |
| Robert Fiacco | RFIACCO_0000001 | RFIACCO_0008110 |
| Michael Russo | RUSSO_0000001 | RUSSO_0028011 |
| Kyle Shapero | SHAPERO_0000001 | SHAPERO_0001531 |
| Josh Smith | SMITH_0000001 | SMITH_0001528 |
| Jason Kalso | KALSO_0000001 | KALSO_0036595 |

| | | |
|---|---|---|
| Victoria Bailey | BAILEYRETURN_0000001 | BAILEYRETURN_0000599 |
| Anna Bergslien | BERGSLIENRETURN_0000001 | BERGSLIENRETURN_0000069 |
| Bobby Smith | BSMITHRETURN_0000001 | BSMITHRETURN_0000051 |
| Matt Calabrese | CALABRESERETURN_0000001 | CALABRESERETURN_0003034 |
| Cameron Colby | COLBYRETURN_0000001 | COLBYRETURN_0001751 |
| Nate Dahlstrom | DAHLSTROMRETURN_0000001 | DAHLSTROMRETURN_0003124 |
| Kalee Gibbons | GIBBONSRETURN_0000001 | GIBBONSRETURN_0000057 |
| Tara Kosofsky | KOSOFSKYRETURN_0000001 | KOSOFSKYRETURN_0000129 |
| Matthew Malone | MALONERETURN_0000001 | MALONERETURN_0000102 |
| Jesse Morgan | MORGANRETURN_0000001 | MORGANRETURN_0001639 |
| Savannah Padron | PADRONRETURN_0000001 | PADRONRETURN_0000169 |
| Kathleen Phillips | PHILLIPSRETURN_0000001 | PHILLIPSRETURN_0000113 |
| Mark Sargent | SARGENTRETURN_0000001 | SARGENTRETURN_0002981 |
| Jason Steinhorn | STEINHORNRETURN_0000001 | STEINHORNRETURN_0002113 |
| Kristopher Stennick | STENNICKRETURN_0000001 | STENNICKRETURN_0000910 |
| Chase Tolusic | TOLUSICRETURN_0000001 | TOLUSICRETURN_0000009 |

4.     The Court issued temporary and/or preliminary orders restricting Former Employees from competing with Cynosure within the following geographic regions for the following time periods:

| Employee Name | Restricted Geographic Region | Restricted Time Period |
|---|---|---|
| Bob Daley | North America | November 9, 2022 - May 3, 2023 |
| Chris Chambers | North America | November 9, 2022 - May 3, 2023 |
| Cory Murrell | North America | November 9, 2022 - June 22, 2023 |
| Brogan Bair | North America | November 9, 2022 - May 20, 2023 |
| Josh Smith | North America | November 9, 2022 - May 20, 2023 |
| Kyle Shapero | South Florida, Puerto Rico, and the Caribbean | November 9, 2022 - May 31, 2023 |
| Michael Russo | Eastern Region of US | November 9, 2022 - May 31, 2023 |

| Robert Fiacco | New York | November 9, 2022 - May 3, 2023 |
|---|---|---|
| David Krueger | Illinois, Wisconsin, and Lake County, Indiana | November 9, 2022 - June 10, 2023 |
| Jason Kalso | Pacific Northwest | November 9, 2022 - May 31, 2023 |
| Tara (Bushman) Kosofsky | Tennessee, Kentucky, Alabama, Mississippi, North Carolina, South Carolina, Georgia, Washington, D.C., Virginia, and Maryland | November 2, 2022 -  July 2, 2023 |
| Kristopher Stennick | Texas and Louisiana | November 9, 2022 - July 9, 2023 |
| Nathan Dahlstrom | Oregon, Washington, Idaho, and Alaska | December 9, 2022 to August 9, 2023 |
| Mark Sargent | New York | December 3, 2022 to August 3, 2023 |
| Savannah Padron | North Carolina, South Carolina, and Georgia | November 10, 2022 - August 9, 2023 |
| Matthew Calabrese | Florida | December 1, 2022 - August 1, 2023 |

## B.  Plaintiffs' Proposed Stipulations

1.      The plaintiffs in this case are Cynosure LLC and Lotus Parent, Inc.  Cynosure LLC is a limited liability company formed under the laws of Delaware with its headquarters in Westford, Massachusetts.  Lotus Parent, Inc. is a corporation formed under the laws of Delaware that is the parent company and sole owner of Cynosure, LLC.  For purposes of this trial, Cynosure and Lotus

Parent can be considered a single party that the Court will refer to as Cynosure.  Cynosure is a Massachusetts-based manufacturer and distributor of medical aesthetic treatment devices with a market presence in the United States and abroad.

2.      Defendant Reveal Lasers Ltd. is a corporation based in Israel that is a managing Member of Reveal Lasers LLC.  Reveal Lasers LLC is a corporation formed under the laws of Nevada.  Eyal Buchbinder serves as the Founder and Global Chief Executive Officer of Reveal Lasers Ltd.  Eyal Buchbinder serves as the President of Reveal Lasers LLC, and Bob Daley serves as Chief Executive Officer of North America.  Reveal Lasers Ltd. and Reveal Lasers LLC (together "Reveal Lasers") is a manufacturer of medical aesthetic treatment devices with a market presence in the United States and abroad.  For purposes of this trial, Reveal Lasers LLC and Reveal Lasers Ltd. can be considered a single party that the Court will refer to as Reveal Lasers.

2.      Defendant **Chris Chambers** is a former Cynosure employee who resides in Maryland.  Mr. Chambers was employed at Cynosure from March 2, 2015 to May 2, 2022, most recently as Vice President of Sales for North America.  Mr. Chambers resigned from Cynosure on May 2, 2022 and now works at Reveal Lasers as its Chief Commercial Officer.

3.      The Cynosure Former Employees (including Robert Daley and Chris Chambers) signed the following documents on approximately these dates:

| Employee Name | Document | Date |
|---|---|---|
| Victoria Bailey | CEIP[1] | 2021-08-01 |
| Brogan Bair-Chambers | INNNA[2] | 2015-11-06 |

---

[1] The CEIP refers to the "Cynosure Employee Intellectual Property Rights, Confidentiality and Protective Covenants Agreement."  All references to CEIP refer to this form of agreement that each employee signed.

[2] The INNNA refers to the Cynosure "Invention, Non-Disclosure, Non-Solicitation and Non-Competition Agreement.  All references to INNNA refer to this form of agreement that each employee signed.

| | | |
|---|---|---|
| Brogan Bair-Chambers | INNNA | 2017-12-12 |
| Brogan Bair-Chambers | Hologic Agreement[3] | 2018-09-09 |
| Brogan Bair-Chambers | Equity Agreement[4] | 2020-06-18 |
| Brogan Bair-Chambers | Equity Agreement | 2021-12-20 |
| Anna Bergslien | CEIP | 2022-01-10 |
| Matthew Calabrese | CEIP | 2021-02-09 |
| Chris Chambers | INNNA | 2015-02-13 |
| Chris Chambers | INNNA | 2016-04-04 |
| Chris Chambers | Hologic Agreement | 2018-09-07 |
| Chris Chambers | Equity Agreement | 2020-06-17 |
| Chris Chambers | Equity Agreement | 2021-11-29 |
| Cameron Colby | Equity Agreement | 2021-11-22 |
| Cameron Colby | Hologic Agreement | 2019-10-09 |
| Cameron Colby | Hologic Agreement | 2018-02-21 |
| Cameron Colby | CEIP | 2020-12-21 |
| Nate Dahlstrom | CEIP | 2021-03-08 |
| Robert Daley | INNNA | 2006-01-18 |
| Robert Daley | INNNA | 2017-08-23 |
| Robert Daley | Equity Agreement | 2020-06-17 |
| Robert Daley | Equity Agreement | 2021-11-30 |
| Daniel DeMarco | CEIP | 2021-04-29 |
| Dean Fiacco | CEIP | 2021-04-01 |

---

[3] Hologic Agreement refers to the Hologic "Employee Intellectual Property Rights Confidentiality and Non-Competition Agreement." Hologic, Inc. assigned its contracts with all Cynosure employees to Cynosure in 2019.

[4] The Equity Agreement refers to the Equity an Related Arrangements between Lotus Parent, Inc." and the respective employee.

| Robert Fiacco | Hologic Agreement | 2019-10-30 |
| Robert Fiacco | CEIP | 2020-12-05 |
| Robert Fiacco | Equity Agreement | 2021-12-02 |
| Kalee Gibbons | CEIP | 2021-11-16 |
| Jason Kalso | CEIP | 2022-03-17 |
| Jason Kalso | Equity Agreement | 2021-11-23 |
| Jason Kalso | INNNA | 2013-04-18 |
| Tara (Bushman) Kosofsky | CEIP | 2022-01-26 |
| Tara (Bushman)  Kosofsky | Equity Agreement | 2022.11.22 |
| Tara (Bushman) Kosofsky | INNNA | 2017-12-11 |
| Tara (Bushman) Kosofsky | INNNA | 2017-07-14 |
| Tara (Bushman) Kosofsky | INNNA | 2015-04-10 |
| David Krueger | CEIP | 2020-09-14 |
| David Krueger | Equity Agreement | 2022-01-31 |
| Matthew Malone | Equity Agreement | 2021-11-23 |
| Matthew Malone | CEIP | 2020-12-30 |
| Matthew Malone | Hologic Agreement | 2018-12-21 |
| Jesse Morgan | CEIP | 2022-03-30 |
| Cory Murrell | Offer Letter[5] | 2013-08-02 |
| Cory Murrell | Offer Letter | 2020-09-29 |
| Cory Murrell | CEIP | 2021-12-16 |
| Cory Murrell | Equity Agreement | 2020-06-16 |
| Cory Murrell | Equity Agreement | 2022-01-04 |
| Savannah Padron | CEIP | 2020-11-18 |

---

[5] "Offer Letter" refers to the offer letters between Cynosure and Cory Murrell which contain restrictive covenants.

| | | |
|---|---|---|
| Kathleen Phillips | CEIP | 2021-07-08 |
| Michael Russo | INNNA | 2008-01-22 |
| Michael Russo | Equity Agreement | 2020-06-14 |
| Mark Sargent | CEIP | 2022-01-05 |
| Mark Sargent | Equity Agreement | 2022-01-02 |
| Mark Sargent | Hologic Agreement | 2019-11-29 |
| Kyle Shapero | Hologic Agreement | 2018-11-02 |
| Kyle Shapero | Equity Agreement | 2020-06-18 |
| Kyle Shapero | Equity Agreement | 2022-01-26 |
| Josh Smith | INNNA | 2015-05-11 |
| Josh Smith | Hologic Agreement | 2018-10-10 |
| Josh Smith | Equity Agreement | 2021-01-04 |
| Josh Smith | Equity Agreement | 2021-11-22 |
| Robert Scarelli-Smith | CEIP | 2021-05-10 |
| Robert Scarelli-Smith | Hologic Agreement | 2019-12-30 |
| Jason Steinhorn | Equity Agreement | 2021-11-29 |
| Jason Steinhorn | Equity Agreement | 2021-01-16 |
| Jason Steinhorn | Hologic Agreement | 2019-10-11 |
| Jason Steinhorn | INNNA | 2017-03-09 |
| Jason Steinhorn | INNNA | 2017-02-21 |
| Kris Stennick | CEIP | 2022-02-10 |
| Kris Stennick | Equity Agreement | 2021-11-22 |
| Kris Stennick | Hologic Agreement | 2019-07-17 |
| Kris Stennick | INNNA | 2016-09-22 |
| Chase Tolusic | CEIP | 2021-12-13 |

4.     The terms of the contract provisions restricting competition with Cynosure, solicitation of Cynosure customers, and solicitation of Cynosure employees set forth in each form of these documents are substantially similar.  In other words, the terms of the contract provisions restricting competition with Cynosure, solicitation of Cynosure customers and solicitation of Cynosure employees in the Equity Agreements, irrespective of employee, are substantially similar. The terms of the terms of the contract provisions restricting competition with Cynosure, solicitation of Cynosure customers and solicitation of Cynosure employees in the CEIPs, irrespective of employee, are substantially similar.  The terms of the contract provisions restricting competition with Cynosure, solicitation of Cynosure customers and solicitation of Cynosure employees in the INNNAs, irrespective of employee, are substantially similar.  The terms of the contract provisions restricting competition with Cynosure, solicitation of Cynosure customers and solicitation of Cynosure employees in the Hologic Agreement, irrespective of employee, are substantially similar, with the exception of the Hologic Agreement between Cynosure and Christopher Chambers and the Hologic Agreement between Cynosure and Brogan Bair.

5.     Defendants Bob Daley and Chris Chambers each owed a fiduciary duty of loyalty to Cynosure.

6.     The alleged trade secrets in this action related to interstate or foreign commerce.

7.     Starting on July 26, 2022, the Court issued a temporary restraining order enjoining Reveal Lasers and the Former Employees from disclosing any of Plaintiffs' documents and data concerning research; marketing plans and strategies; pricing and costing policies; products and equipment; customer, vendor and supplier lists; and accounts or nonpublic financial information. The Court also ordered Reveal Lasers and the Former Employees to preserve all of this information as well as all documents concerning their contacts and communications with Plaintiffs' customers

and prospective customers, and to identify all electronic devices containing Plaintiffs' electronic files for forensic examination.

**C. Defendants' Proposed Stipulations**

1.      **Reveal Lasers LTD.**   Reveal Lasers Ltd. ("Reveal Ltd.") is an Israeli based corporation founded by Eyal Buchbinder in 2018. Reveal Lasers LTD is a manufacturer of medical aesthetic treatment devices with a foreign market presence and no commercial presence in North America.

2.      **Reveal Lasers LLC.** Reveal Lasers LLC ("Reveal LLC"), formed on May 25, 2022, and headquartered in Las Vegas, Nevada. Reveal Lasers LLC is a distributor of medical aesthetic treatment devices in North America.

3.      **Cynosure Corporate Ownership.**   Cynosure, Inc., the predecessor of Cynosure, LLC ("Cynosure"), was founded in 1991 by Dr. Horace Furumoto. Dr. Furumoto founded Candela, now a current competitor of Cynosure, in 1970 prior to his departure from Candela to start Cynosure.

4.      On December 15, 2005, Cynosure, Inc. announced the completion of its initial public offering under the symbol "CYNO". Cynosure, Inc. operated as a publicly traded company until February 2017 when it was acquired by Hologic, Inc ("Hologic").

5.      On February 14, 2017, Cynosure, Inc. entered into an Agreement and Plan of Merger with Hologic. The parties agreed that Hologic would acquire all outstanding Cynosure shares for $66.00 per share which corresponded to an equity value of approximately $1.65 billion and an enterprise value of $1.44 billion net of cash.

6.      On November 20, 2019, Hologic announced its plan to sell Cynosure and its medical aesthetics business to an affiliate of investment funds managed by Clayton, Dubilier and Rice ("CD&R") for a total purchase price of $205 million.

7.     On April 2, 2024 Hahn & Company, a private equity firm located in Korea, announced the completed acquisition of Cynosure and merger of Cynosure and Lutronic to create Cynosure Lutronic, Inc. Cynosure presently operates as "Cynosure Lutronic."

8.     **Robert "Bob" Daley**.  Bob Daley is a former Cynosure employee who resides in Boston, Massachusetts.  Mr. Daley was employed at Cynosure from January 1, 2006 to May 3, 2022, most recently as Senior Regional Director of Sales for the Northeast Region. Mr. Daley resigned from Cynosure on May 3, 2022 and now works at Reveal Lasers LLC as its Chief Executive Officer. Daley is also a Managing Member of Reveal Lasers, LLC.

9.     **Christopher "Chris" Chambers.**  Chris Chambers is a former Cynosure employee who resides in Maryland.  Mr. Chambers was employed at Cynosure from March 2, 2015 to May 2, 2022, most recently as Vice President of Sales for North America.  Mr. Chambers resigned from Cynosure on May 2, 2022 and now works at Reveal Lasers as its Chief Commercial Officer.

10.    The following are the only employment agreements at issue at trial:

    a.  Bob Daley:

        i.  INNNA: 1-18-2006; 8-23-2017

        ii.  Equity Agreement: 6-17-2020; 11-30-2021

    b.  Chris Chambers:

        i.  INNNA: 2-13-2015; 4-4-2016

        ii.  Equity Agreement: 6-17-2020; 11-29-2021

        iii.  Hologic Agreement: 9-7-2018

## V.   CONTESTED ISSUES OF FACT

### A.   The Plaintiffs' Contested Facts

Plaintiffs identify the following contested factual issues to be resolved at the trial commencing on June 10, 2024:

1.     Whether Defendants Mr. Daley and Mr. Chambers engaged in activities that were in breach of restrictive covenants contained in contractual agreements between them and Cynosure or breached their obligation to act in good faith and to deal fairly with Cynosure in their performance of the contracts between them and Cynosure.

2.     Whether the breaches of certain contracts was willful or wanton.

3.     Whether Defendant Reveal Lasers improperly interfered with Cynosure's contractual agreements with its former employees, including Mr. Daley and Mr. Chambers.

4.     Whether Defendants, individually or in concert, improperly interfered with Cynosure's then-existing contractual relationships.

5.     Whether Defendants, individually or in concert, improperly interfered with Cynosure's then-prospective customer relationships.

6.     Whether Defendants misappropriated Cynosure's trade secrets.

7.     Whether the Defendants misappropriated, or induced others to misappropriate, Cynosure's information in a willful and/or malicious manner.

8.     Whether Defendants Mr. Daley or Mr. Chambers breached a fiduciary duty of loyalty to Cynosure.

9.     Whether Defendant Reveal Lasers was aware of and participated in, directly or by seeking to aid, Mr. Daley or Mr. Chambers' conduct in breach of their duties to Cynosure.

10. Whether Defendants engaged in unfair competition and unfair or deceptive acts or trade practices, and whether any such acts or practices were willful and/or knowing.

11. The amount of any proper damage awards for Plaintiffs.

## B. Defendant's Contested Facts

Defendants submit that the factual disputes to be resolved at trial include the following:

A. General
- whether Cynosure instructed Defendants to destroy any Cynosure information in their possession;

B. Breach of Contract Claims Against Individuals
- whether there was a valid contract between Cynosure and Chris Chambers;
- whether there was a valid contract between Cynosure and Bob Daley;
- whether Cynosure substantially performed its obligations under the contracts;
- whether Bob Daley or Chris Chambers violated a part of any agreement dated before October 1, 2018 that was necessary to protect Cynosure's legitimate business interest;
- whether the non-competition agreements dated before October 1, 2018 are reasonably limited in time and scope and consistent with public interest;
- whether Bob Daley or Chris Chambers violated a part of any agreement dated on or after October 1, 2018;
- whether Bob Daley or Chris Chambers' violation of any agreement dated before October 1, 2018 caused harm to Cynosure.
- whether Bob Daley or Chris Chambers' violation of any agreement dated on or after October 1, 2018 caused harm to Cynosure.
- whether Cynosure's claims are barred by the doctrine of waiver/estoppel;
- whether the contracts are invalid or unenforceable because of Cynosure's fraudulent misrepresentations;
- whether Cynosure's restrictive covenants are so unfair that they violate the general covenant of good faith and fair dealing;

C. Tort Claims

- whether Chris Chambers owed Cynosure a fiduciary duty;
- whether Bob Daley owed Cynosure a fiduciary duty;
- whether Chris Chambers owed Cynosure a duty of loyalty;
- whether Bob Daley owed Cynosure a duty of loyalty;
- whether Cynosure suffered harm as a result of breach of fiduciary duty or duty of loyalty;
- whether Cynosure's tort claims are barred by waiver or estoppel;

- whether Cynosure committed misconduct directly related to the claims at issue;
- whether Reveal LLC knew of the breaches by Chris Chambers or Bob Daley;
- whether Reveal LTD knew of the breaches by Chris Chambers or Bob Daley;
- whether Reveal LLC actively participated or substantially assisted in or encouraged the breach to the degree that it could not reasonably be held to have acted in good faith;
- whether Reveal LTD actively participated or substantially assisted in or encouraged the breach to the degree that it could not reasonably be held to have acted in good faith;
- whether there was a common plan to commit a tortious act where the participants know of the plan and its purpose and take affirmative steps to encourage the achievement of the result;
- whether Defendants knew that the tortfeasor's conduct constituted a breach of duty, that the assistance was a substantial factor in causing the resulting tort, and that Defendants had unlawful intent;
- whether Defendants knew about contracts Cynosure had with every employee;
- whether Defendants intentionally persuaded or caused the former employees to break their contract(s);
- whether Defendants had an improper motive or used an improper method in interfering with the contract;
- whether Cynosure had a prospective business relationship with employees, customers, and consultants with the probability of future economic benefit for Cynosure;
- whether Defendants knew about the prospective business relationship and intentionally persuaded or caused the employees, customers, and consultants not to enter into that relationship using an improper method

D. Trade Secrets

- what information Cynosure alleges to constitute a trade secret;
- whether Cynosure's information constitutes a trade secret under the DTSA and MUTSA;
- whether Cynosure owns or is the licensee of the information they alleged to be a trade secret;
- whether Cynosure has taken reasonable steps to preserve the secrecy of its alleged trade secrets;
- whether Cynosure's alleged trade secrets had any independent economic value to Cynosure;
- whether Defendants' improperly acquired, used, or disclosed any alleged Cynosure trade secrets;
- whether Cynosure sustained actual losses from the misappropriation or that each Defendant was unjustly enriched by the misappropriation (if any);

23

- whether any of Cynosure's information alleged to be a trade secret is a matter of general skill and knowledge;
- whether Cynosure instructed its employees to keep the alleged trade secrets confidential or to take any measure to maintain their secrecy;
- whether Cynosure required customers or other third parties with access to the information to sign confidentiality or non-disclosure agreements, and whether it made efforts to ensure those agreements were followed;
- whether Cynosure has proven a demand for its alleged trade secrets;
- whether Cynosure has proven there are no acceptable, non-infringing alternatives to its alleged trade secrets;
- whether Cynosure has proven it has the manufacturing and marketing capability to exploit the demand for its alleged trade secrets;
- whether any of the lost profits alleged by Cynosure are attributable to anything other than Cynosure's use of its alleged trade secrets, such as the actions of other third parties, the pandemic, Cynosure's general decline in the industry, or its treatment of employees that caused them to resign;
- the amount of damages (if any) that Cynosure sustained as a result of Defendants' conduct;
- whether Defendants were willful and malicious in their misappropriation of Cynosures trade secrets (if any);
- whether Cynosure asserted its claims of trade secret misappropriation in bad faith.

## VI.  JURISDICTIONAL ISSUES

### A.  The Plaintiffs' Statement

Plaintiffs state that they are not aware of any jurisdictional issues.

### B.  Defendants' Statement

None.

## VII.  ISSUES OF LAW, INCLUDING EVIDENTIARY QUESTIONS, AND SUPPORTING AUTHORITY

The parties previously filed, motions *in limine* and *Daubert* motions. ECF Nos. 455-59, 460, 462-64, 466, 483-487.  Both parties also have raised objections to specific documents on their Exhibit List, as note in Section XI, *infra*.  Both parties reserve the right to raise additional issues of law, including evidentiary questions, that may arise before trial, including issues arising from or related to the parties' continuing discussions regarding exhibits, witnesses, deposition

designations, jury instructions, *voir dire*, and the verdict form. The parties anticipate that they will file such other motions related to issues of law and evidence up to and during trial, as they arise.

In addition, Plaintiffs have identified issues of law in dispute and ripe for adjudication as part of their Trial Brief submitted herewith, which they incorporate by reference and which are repeated here for the Court's convenience:

**A.     Plaintiff's Statement:  Plaintiffs Seek Pre-Trial Rulings On The Below:**

**1.      Issue No. 1:  Reveal Lasers Ltd. and Reveal Lasers LLC Are Both Liable for the Claims Alleged In The Complaint.**

Defendants have made clear that they intend to argue that Reveal Lasers LTD and Reveal Lasers LLC are separate entities that should be treated separately for purposes of trial and damage awards.  Defendants cannot escape, however, the fact that both entities are liable for the conduct giving rise to the claims alleged in the Complaint.   There are several indisputable pieces of evidence that demonstrate their independent liability.  Most notably, Reveal Lasers LLC was not formed until May 4, 2022—*after* Buchbinder recruited Daley and Chambers and *after* Daley and Chambers recruited most of the other Former Employees.  As such, this conduct was necessarily for the benefit of both Reveal Lasers LTD., and for Reveal Lasers LLC, which would not have been founded but for these activities and which immediately hired those employees.

However, even if Reveal Lasers LTD. did not have independent liability (which it does), there is also substantial evidence  that Reveal Lasers LTD., is the alter ego of Reveal Lasers LLC.

To begin with, it is undisputed that Reveal Lasers LTD has always been the 100% owner of Reveal Lasers LLC, and was a Managing Member of the LLC upon its founding.    The Employment Agreements that Daley and Chambers initially signed were both with Reveal Lasers, LTD., after being recruited to join as CEO and CCO of Reveal Lasers LLC by Buchbinder, who was and remains Reveal Lasers Ltd.'s CEO.  (Daley and Chambers' later Employment Agreements

were with Reveal Lasers, LLC.)  Both Daley and Chambers own equity in Reveal Lasers LTD—not Reveal LLC (as do all the other Former Employees who got equity in Reveal Lasers).

There is also substantial evidence that Reveal LLC and Reveal LTD are entirely co-mingled from a financial perspective—with Reveal LTD pulling all the financial strings and the parties using combined financial statements.  For example, Jim Palastra, Reveal LLC's Global Chief Operating Officer and highest-ranking financial employee, testified that Rotem Palash, Reveal LTD's head of treasury, has the authority issue orders to Reveal LLC concerning all financial matters and provides multiple forms of financing to Reveal LLC, such as via loans and direct investments.  Farris Decl., Ex. 64 at 265:10-270:5.  Per Defendants' insistence, the details of these financings are not included here so as to avoid the need to file this this JTPS under seal.  Those details can be found in **Plaintiffs' Trial Brief** and in the cited exhibits.

Such co-mingling of finances shows that Reveal LTD and Reveal LLC are not a "parent" and "subsidiary" in the traditional sense; rather, Reveal LTD calls all of the financial shots for the organization.  As such, the Court may "pierce the corporate veil" between the two entities.  *See TechTarget, Inc. v. Spark Design, LLC*, 746 F. Supp. 2d 353, 356 (D. Mass. 2010) (court may "disregard corporate formalities 'when there is a  confused intermingling of activity of two or more corporations engaged in common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting.'") (quoting *My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 619 (1968)).  Massachusetts courts use a 12-factor test to determine whether to pierce a corporate veil: "1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the

time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud." *TechTarget*, 746 F. Supp. 2d at 356 (citation omitted).  Nearly every single factor is met here. Given the common ownership, the pervasive control, the intermingling of corporate funds and operations, the absence of corporate records, intermingling of funds (and combined financial statements), the siphoning of funds by Reveal LTD of Reveal LLC's assets, the lack of evidence of payment of dividends, there is no doubt that Reveal LTD is the alter ego of Reveal LLC.

## 2.    Issue No. 2:  Enforceability of Contracts

Defendants previously conceded that their contractual employee non-solicitation provisions are enforceable.  *See* Dkt. 171 at 19 ("Defendants do not dispute that a non-solicitation clause as to Cynosure <u>employees</u> is enforceable, for a reasonable time period.") (emphasis in original).  The Court also previously held that, with some modifications, the (i) non-competition provisions in the Equity Agreement and the CEIP were enforceable and (ii) customer non-solicitation provisions in the CEIP were enforceable.  Dkts. 171 and 241.  The restrictive covenants in the Hologic Agreement and the INNNA are similar.  *See* Dkt. 112 at Exs. 1A-2E (all restrictive covenant agreements for Trial Defendants Bob Daley and Chris Chambers).  The Court should therefore rule that, as a matter of law, that these restrictive covenant agreements are enforceable.

In their pretrial statements and submissions, Defendants have made clear that, notwithstanding their prior concessions and the Court's prior ruling, they now intend to argue that, as a matter of law, the restrictive covenant agreements signed by Mr. Daley and Mr. Chambers are not enforceable for a number of reasons, including (i) lack of acceptance, (ii) lack of consideration,

(iii) reasonableness of scope, and (iv) because they were superseded by the Defendants' annual compensation plans. These arguments are all legally meritless.

The Court has already rejected the first three arguments in its two Preliminary Injunction order, finding that both Daley and Chambers entered into enforceable Equity Agreements. (Dkt 171 at 14.) Moreover, the Court also found that the Equity Agreements were supported by adequate consideration and, with some modifications, were reasonable in scope. *Id.* at 21 ("Defendants raised several challenges during oral argument for why the Equity Agreement was unenforceable under the MNAA as to Mr. Daley (like lack of consideration or a garden leave clause) that were not meritorious."]). These orders establish both the enforceability of the relevant agreements between Cynosure and each of the Trial Defendants Daley and Chambers, as well as the relevant agreements between Cynosure and the other former employees (for purposes of Plaintiffs' tortious interference claim). These findings are already the "law of the case," and Defendants should not be permitted to relitigate them. *See Harlow v. Children's Hosp.*, 432 F.3d 50, 55 (1st Cir. 2005) ("As most commonly defined, the [law of the case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.") (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).[6]

---

[6] Nor does Defendants' new argument that their annual sales compensation plans superseded the restrictive covenant agreements fare any better. Those sales incentive agreements supersede only "all prior **compensation plans, arrangements and terms** previously in effect, whether oral or written" for Cynosure sales employees. Farris Decl. Ex. 66. They further provide on the signature page that they are "not a contract between any employee and Cynosure, LLC." *Id*. The restrictive covenant agreements also all contain limiting language that prevents them being modified. For example, the Equity Agreements provide that the restrictive covenants shall not be superseded by any subsequent agreement "unless such agreement expressly provides (by reference to [the Equity Agreement] by name) that the provisions thereof supersede this [Equity Agreement]." Dkt. 7-3 at 41. Put simply, the compensation plans are not restrictive covenant agreements and nothing in the compensation plans indicates that they were intended to supersede any of these restrictive covenant agreements. Moreover, this argument is also red herring as to the

There will already be enough moving pieces at this trial without the jury hearing confusing arguments about the enforceability of these contracts that have been disposed of or can be disposed of as a matter of law.  The Court should simplify the matter for the jury and uphold its prior ruling that Cynosure's restrictive covenant agreements are enforceable.

### 3.    Issue No. 3:    Late-Disclosed Evidence Related to Late-Disclosed Witnesses

In its Motion in Limine No. 3 ("MIL No. 3"), Cynosure sought exclusion of several witnesses who were unjustifiably disclosed under Rule 26 for the first time after discovery had closed and on the eve of trial by Defendants.  This included Andrea Schwab—who was Cynosure's Vice President of Sales before Chris Chambers—and was then hired at Reveal in June 2023 (i.e., a year *after* the corporate raid) and Julie Walsh, who has recently filed an unrelated lawsuit against Cynosure.  As set out, in MIL No. 3, during discovery, Defendants never disclosed either Ms. Schwab or Ms. Walsh as a possible witness until the last day of discovery (with respect to Ms. Schwab) and even later with respect to Ms. Walsh (only days before Defendants filed their list of Trial Witnesses).[7]  They also produced no documents from either witness until the day their Trial Exhibit lists were due.  As provided in MIL No. 3, both witnesses should be excluded.  But because Cynosure did not know until after the motions in limine were due that Defendants also intend to

---

Chambers and Daley because the last compensation plan they each signed were from before when they signed Equity Agreements with restrictive covenants in November 2021.  Therefore, there is not even theoretically logical argument that their compensation plans superseded Equity Agreements they signed *later* in time.

[7] Defendants identified several other witnesses who fall in this category also that are the subject of a MIL No. 3 but Defendants have identified only Ms. Schwab and Ms. Walsh on their "will call" list, as opposed to a "may call" list.

introduce documents from and regarding the testimony of these witnesses, the documents should also be excluded.

***Ms. Schwab.***  Defendants should not be allowed to sandbag Cynosure with such late disclosed information.  Cynosure served written discovery seeking "all communications with Andrea Schwab concerning Reveal Lasers" to test whether she was involved in the corporate raid.  Defendants each objected to the request—asserting that it sought "irrelevant." Information.  *See,* Farris Decl., Ex. 29 (submitted with the Declaration of Joe Farris, filed herewith).  Ms. Schwab never appeared on Defendants' Initial Disclosure as a witness who had knowledge about any matters in this case ***until the last day of discovery***, when the Court made abundantly clear that parties could not conduct any further discovery.  Moreover, in tandem with Reveal's post-discovery identification of Ms. Schwab, Defendants' Exhibit List now confirms that it is ***also*** attempting to take advantage of late selective production of documents concerning Ms. Schwab.  Such information was plainly hidden during discovery to avoid Ms. Schwab's participation in discovery.  For example, although Reveal's records show that she was hired in June 2023, Reveal never produced her June 2023 employment contract, offer letter, or any other documents related to her employment during discovery, and never produced payroll records for her despite discovery requests for payroll records for all former Cynosure employees.  However, after the close of discovery, Defendants produced and added to its exhibit list numerous documents related to Schwab -- including at least a 2024 Reveal contract with her, emails related to her Cynosure separation agreement from 2022 (REVEAL_015970), and even screenshots of text messages from 2022 purportedly collected from her phone (REVEAL_0152976-REVEAL_0152981) (save the Reveal contract which was produced a few weeks ago after the

close of discovery, the rest of these documents were produced **last week contemporaneously with Defendants' Exhibit List**).

Clearly, Reveal intended to sandbag not only its intent to call Ms. Schwab as a witness, but also to reserve itself the right to produce cherry-picked documents from her and concerning her without giving Cynosure the benefit of its own discovery into Ms. Schwab's role. To the extent that Ms. Schwab was relevant to this case as witness, Defendants **knew that since 2022** and have had control of her since 2023—so their discovery positions on her relevance as a witness and document discovery from her should be binding on them. Alternatively, to the extent that this is part of 11th hour plan to turn this case into a gender discrimination / hostile work environment case with Ms. Schwab playing starring roles—the evidence should be excluded for that reason as well. The Court should therefore exclude not only Ms. Schwab and these other witnesses (per MIL No. 3), but also any late-disclosed documents pertaining to them.

*Ms. Walsh.* Defendants identified Ms. Walsh as a witness for the first time on May 9, 2024, only days before all pre-trial disclosures (including witness lists) were due. As specified in MIL No. 3, the stated bases of her testimony appear to be about gender discrimination and harassment at Cynosure, a direct reference to a separate lawsuit she has filed about Cynosure. Once Cynosure received Defendants' exhibit list, it was clear exactly Defendants' intent, as there are several exhibits including news articles about the lawsuit (REVEAL_0153361 and REVEAL_0153363), Ms. Walsh's Complaint against Cynosure (REVEAL_0153391) and communications with Ms. Walsh (REVEAL_0055171). All of these documents should be excluded.

4.      **Issue No. 4:  Defendants Breached Their Fiduciary Duty of Loyalty to Cynosure.**

Cynosure alleges that both Daley and Chambers owed Cynosure a fiduciary duty of loyalty. Under Massachusetts law, an employer can establish that employees have a fiduciary duty of loyalty if: (i) they are "[e]xecutives, directors, other senior officers, and partners," **_or_** (ii) if they occupy a position of "trust and confidence." *Advanced Micro Devices, Inc. v. Feldstein*, 951 F. Supp. 2d 212, 220 (D. Mass. 2013); *see also Chelsea Indus., Inc. v. Gaffney*, 389 Mass. 1, 11 (1983).  An employee owing a duty of loyalty "is bound to act solely for his employer's benefit in all matters within the scope of his employment, [and] an executive employee is barred from actively competing with his employer during the tenure of his employment, even in the absence of an express covenant so providing." *Chelsea Indus.*, 389 Mass. at 11.  A "top managerial employee may not solicit the departure of employees to work for a competitor." *Augat, Inc. v. Aegis, Inc*.. 409 Mass. 165, 173-174 (1991) ("The rule is most clearly applicable if the supervisor-manager, as a corporate pied piper, leads all his employer's employees away, thus destroying the employer's entire business.").

The Court should find as a matter of law that both Daley and Chambers satisfy this standard by virtue of their senior leadership roles in the Cynosure sales organization.  For example, Daley admits that he was a Senior Regional Director of Sales for the Northeast Region, who supervised all of Cynosure's sales teams "from Maine down to Virginia."  Farris Decl., Ex. 30 at 25:21-27:4. In this role, regional sales directors, district sales managers, area sales managers, and territory managers all reported to Daley.  *Id.* 27:6-14.  Chambers held an even more senior position as Vice President of Sales, North America (Dkt. 86 ¶ 4), overseeing "every district" in the company.  Farris Decl., Ex. 70 at 249:6-11.  Moreover, both men were on Cynosure's Sales Leadership Team that set policy for the entire salesforce.  Farris Decl., Ex. 30 at 28:12-30:1; Ex. 70 at 163:7-10.

Given their roles as senior leaders and managers, both men, as a matter of law, owed Cynosure a duty of loyalty.  *See Inner-Tite Corp. v. Brozowski,* No. 20100156, 2010 WL 30338330, at *19-20 (Mass. Super. Apr. 14, 2010) (regional sales manager for tire company who "worked independently, was entrusted with sensitive and confidential information, and [was] the public face of [employer]" owed a fidicuary duty to prior employer); *TH Glennon Co. v. Monday*, No. 18-30120-WGY, 2020 WL 1270970, at *18 (D. Mass. Mar. 17, 2020) (holding that a mulch product salesman with access to "proprietary client information" had a duty of loyalty).

5.    **Issue No. 5:  Defendants' Misappropriated Cynosure's Trade Secrets Related to Interstate or Foreign Commerce.**

There are three elements to a trade secret misappropriation claim under both the DTSA and the MUTSA: (i) the existence of a trade secret; (ii) the plaintiff took reasonable steps to secure the confidentiality of that trade secret; and (iii) the defendant used improper means to acquire the trade secret.  *Parexel Int'l LLC v. Signant Health Holding Corp*., No. 1:22-CV-11896-AK, 2023 WL 2938073, at *8 (D. Mass. Apr. 13, 2023) (citation omitted).  The only difference between them as relevant here is whether the trade secret claim relates to interstate or foreign commerce (a requirement under the DTSA and not the MUTSA).  As that issue cannot possibly be in reasonable dispute here with a nationwide salesforce and foreign corporate defendant, the Court should find that requirement satisfied as a matter of law to simplify matters for the jury.

6.    **Issue No. 6:  The Trial Defendants' Conduct Occurred Primarily and Substantially Within Massachusetts for Purposes of M.G.L. c. 93A.**

The Trial Defendants' conduct occurred primarily and substantially within Massachusetts for purposes of M.G.L. c. 93A.  "Siphoning off customers using proprietary customer information is exactly the type of eyebrow-raising rascality that 93A makes actionable."  *Lounge 22, LLC v.*

*Scales*, 680 F. Supp. 2d 343, 347 (D. Mass. 2010); *see also Governo Law Firm LLC v. Bergeron*, 487 Mass. 188, 195-96 (2021). Moreover, if a plaintiff can prove the elements of tortious interference with contract, "then it may also prevail in proving that these same acts constituted an unfair or deceptive act or practice in trade or commerce in violation of [c. 93A]." *Guest-Tek Interactive Entertainment Inc.*, 731 F. Supp. 2d at 91-92 (citation omitted). Similarly, a competitor who aids and abets a breach of fiduciary duty is also liable under Chapter 93A. *See Augat*, 409 Mass. at 171-172. And while Chapter 93A only applies to acts that occurred "primarily and substantially" within Massachusetts, case law holds that Defendants' conduct—causing harm to and siphoning off employees and customers from a Massachusetts-based company (all led by a disloyal insider, Daley, who is a Massachusetts resident)—falls within the geographic ambit of the statute, even though not all of the Defendants were located within Massachusetts. *See KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC*, --- F.Supp.3d ---, 2024 WL 1558167, at *19-20 (D. Mass. Apr. 10, 2024) (Chapter 93A applied where plaintiff, a Massachusetts-based corporation, "maintain[ed] the core of its operations, including databases, email servers, and customer lists and data in Massachusetts," amongst other factors). Therefore, Cynosure requests a ruling that the acts of unfair competition giving rise to the claim under M.G.L. chapter 93A occurred primarily and substantially in Massachusetts.

**B.    Defendants' Statement - Defendants Seek Pre-Trial Rulings On The Below:**

**1.  The Court's rulings in its preliminary injunction memorandum and order (Doc. No. 171) are not dispositive on any issue at trial.**

Cynosure takes a baseless position that it has already prevailed on certain claims pursuant to the Court's entry of a preliminary injunction (entered approximately 3.5 months into the case before discovery). (Doc. No. 171). However, as a matter of law, the Court's rulings at the preliminary injunction phase do not serve as a final adjudication on any issue at trial. "In general,

a court's decisions at the preliminary injunction phase do not constitute law of the case in further proceedings and do not limit or preclude the parties from litigating the merits." *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 948 F. Supp. 2d 538, 551 (D. Md. 2013) (collecting cases). "This is true for the reason that a preliminary injunction decision is just that: preliminary." *Ctr. for Biological Diversity v. Salazar*, 706 F.3d 1085, 1090 (9th Cir. 2013). "Findings made in the course of deciding whether to issue a preliminary injunction, however, generally do not establish the law of the case, because preliminary injunctions require plaintiffs to satisfy a lesser burden of proof than is required for a decision on the merits." *Heath v. College of Charleston*, 2018 WL 3353063, at 6 (D.S.C., 2018).

The Court's previous findings and rulings in evaluating Plaintiffs' motion for preliminary injunction are not binding on the Court's or jury's evaluation of the merits of Plaintiffs' underlying claims. *Id*. To be clear, the Court in its prior ruling did not reach the merits; rather the Court ruled on the likelihood of success, which is a different standard of review than the standards at trial. "Because of the lesser burden of proof required to support a motion for preliminary injunction as contrasted with a motion for summary judgment, a trial court's disposition of the substantive issues joined on a motion for extraordinary relief is not dispositive of those substantive issues on the merits." *Id*. Importantly, a party losing a battle on any issue based on the Court's view of the likelihood of success at the early preliminary injunction stage may still nonetheless win the war at a succeeding trial on the merits. *See Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 6 (C.A.1 (R.I.),1991).

### 2. A jury must assign liability and damages separately against Reveal LLC and Reveal LTD on the jury verdict form.

Plaintiffs sued two separate corporate entities: Reveal Lasers LTD and Reveal Lasers LLC. It is undisputed that Reveal Lasers LTD was formed as an Israeli-based company in 2018, four

years before the formation of Reveal Lasers LLC, a Nevada-based limited liability company. These entities compete in different foreign markets and employ different groups of employees.

Reveal Lasers LLC did not exist before the former employees' resignations. The evidence at trial, even from Cynosure's witnesses, will show that Cynosure did not consider Reveal Lasers LTD a competitor of Cynosure's nor did Reveal Lasers LLC or LTD hold any market share in North America at the time of the former employees' resignations.

Simply put, there are various factual and legal disputes at issue that require Plaintiffs' to establish separate proof of acts by Reveal Lasers LLC and Reveal Lasers LTD (or its respective employees). The jury will have to weigh such acts and proof separately before assigning liability or damages to each defendant. Accordingly, there should be separate lines on the jury charge for all four Defendants so that the jury can assign liability and damages, if any, to each respective defendant. Such a ruling will not prejudice Cynosure but allowing otherwise could result in error.

### 3. Evidence related to Cynosure's completed merger with Lutronic should not be (nor has been) excluded pre-trial.

Plaintiffs object to certain exhibits contained in Defendants' proposed exhibit list in reliance on a discovery order issued before the public merger that was finalized between Cynosure and Lutronic (e.g. Plaintiffs object to Defendants' Proposed Exhibits 116 and 172 as "Dkt 392-1: Discovery Order excluding Lutronic Merger Terms").  Cynosure is now publicly operating as "Cynosure Lutronic" following their merger with industry competitor Lutronic (as seen on Cynosure's main webpage: https://www.cynosure.com/ ):



However, Judge Cabell's discovery order did not issue a ruling excluding such broad sweeping evidence at trial nor was the exclusion of such a broad category of information the subject of the discovery dispute or before the court through any briefing whatsoever. Notably, Plaintiffs chose not to seek exclusion of such evidence through a motion *in limine* and cannot now circumvent standard pretrial procedures solely by relying on such a narrow discovery ruling.

On February 21, 2024, before Cynosure publicly announced that the merger was final, Judge Cabell issued a narrow discovery ruling denying Defendants' motion to compel "discovery from Cynosure about its *pending merger* with Lutronic." (Dkt. 392). There has been no pre-trial exclusion of all evidence related to Cynosure's merger with Lutronic nor has the court had an opportunity to consider the weight of such evidence and its relevancy at trial. Such information is relied on by both sides' damages experts, is now highly relevant to Plaintiffs' claims and Defendants' defenses and at a minimum should be available to use for impeachment purposes. Accordingly, there is no basis to support Plaintiffs' objections to evidence based on a prior order excluding such evidence, which does not exist and shouldn't.

### 4.   There is no basis (pre-trial or otherwise) to order a broad exclusion of evidence or testimony related to Andrea Schwab, a known, key witness in this case.

Plaintiffs filed their Motion in Limine No. 3 to, among other things, exclude Ms. Schwab as a trial witness. Defendants' opposed the Motion on several grounds and incorporate those arguments herein. In addition, Plaintiffs have now lodged objections to certain exhibits that contain information or communications between or related to Andrea Schwab (which were not the subject of a motion *in limine*). This is an inappropriate effort to eliminate Andrea Schwab from this case altogether and hinder Defendants' ability to defend themselves at trial.

Andrea Schwab has served as an obvious person with relevant knowledge since before this case was filed. Ms. Schwab dedicated 18 years to working for Cynosure before Lowinn Kibbey fired her in February 2022. Her story and testimony are critical to the jury's understanding and appreciation for what transpired at Cynosure just prior to Defendants' departures. Both sides and their witnesses have explored Ms. Schwab's leadership, relationship to Cynosure, and the Defendants at almost every deposition in this case. Ms. Schwab has been discussed in at least ***28 of the 36 total depositions taken in this case*** — including the various depositions of Cynosure's Chief Commercial Officer and Corporate Representative Lowin Kibbey as well as Cynosure's former board member Sandra Peterson, who each testified at length about Ms. Schwab. *See* Kibbey 30(b)(6) Dep. Tr. at 252:15-21; Peterson Dep. Tr. at 210:8-214:19; 219:13-221:23; 235:3-236:9; 245:2-247:3; 283:22-284:7. Additionally, several defendants testified regarding their extreme dismay following Ms. Schwab's abrupt termination from Cynosure and the role this played in their own decisions to leave the company. *See e.g.,* Padron Dep. Tr. at 185:24-186:18; DeMarco Dep. Tr. at 61:7-62:6; C. Chambers Dep. Tr. at 54:12-19; 59:13-21. Indeed, a search for "Andrea Schwab" through all documents produced by both parties yields ***4,068 results***. Ms. Tarca's name has similarly been mentioned in 10 depositions and 220 documents exchanged by the parties.

Accordingly, Cynosure cannot in good faith feign a lack of awareness of these witnesses' relevance to Defendants' defenses.

Plaintiffs' position that Defendants "did not produce documents" from Ms. Schwab is patently false. There have been thousands of documents produced by both sides related to Ms. Schwab. More concerning is the fact that Cynosure, to this day, has failed to produce discoverable evidence that only Cynosure has access to that is directly related to Defendants' known defenses (including Cynosure emails between Ms. Schwab and other Cynosure executives where she predicts and warns the company that the leadership's changes and Lowinn Kibbey's decisions were going to result in a loss of a significant portion of the sales force). Evidence will show that Ms. Schwab's decision to advocate on behalf of the sales force is what led to Cynosure (Lowinn Kibbey) terminating her in February 2022. At the time of the Defendants' departures, she was one of only a few former executives who possessed first-hand knowledge of Cynosure's leadership failures and her testimony is vital to combatting Plaintiffs' claims that Defendants' "corporate raid" was out-of-the-blue and intentionally orchestrated to harm Cynosure. Excluding Ms. Schwab is a drastic remedy that would only lead to prejudice against Defendants.

### 5. Breach of Contract Claims Against Individual Defendants

- whether Massachusetts or Delaware law governs the claims at issue at trial

### 6. Trade Secret Claims

- whether Cynosure can seek, or sustain, lost profits damages by alleging demand of its products rather than demand of its alleged trade secrets;[8]

---

[8] *See* 18 U.S.C. § 1836(b)(3)(B)(i); *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (Fed. Cir. 1978); *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1174 n.48, 1177 (1st Cir. 1994) (holding that court committed reversible error by failing to instruct jury on need for apportionment of defendant's profits in copyright infringement and misappropriation of trade secret case where defendant established predicate for apportionment); *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1287 (Fed. Cir. 2017) ("We agree with

- whether Cynosure can refuse to apportion its lost profits damages in a trade secret allegation;[9]

- whether Cynosure is allowed to recover on more than one of its trade secret damages theories;[10]

- whether Cynosure is entitled to a spoliation instruction when Defendants followed Cynosure's instructions to delete the information in question.[11]

---

Synopsys that apportionment is an important component of damages law generally, and we believe it is necessary in both reasonable royalty and lost profits analysis.") (patent case); *SUNOCO Partners Mktg. v. Powder Springs Logistics, LLC,* No. CV 17-1390-LPS-CJB, 2020 WL 7330715, at *3 (D. Del. Jan. 13, 2020) (same); *Jet Spray Cooler, Inc. v. Crampton*, 377 Mass. 159, 181, 385 N.E.2d 1349, 1362 (1979) ("[T]he plaintiffs have not proved their lost profits "due to" the defendants' sales to the plaintiffs' customers with sufficient certainty to allow the plaintiffs to recover damages based on lost profits."); *BASF Corp. v. Nu-Vision, LLC*, No. 6:09-CV-894-MSS-DAB, 2010 WL 11626579, at *5 (M.D. Fla. Sept. 27, 2010) ("Although BASF raises legitimate concerns regarding proprietary information and trade secrets . . . controlling precedent . . . requires an award of lost profits to be reasonably certain and not based on speculative or conjectural estimates.").

[9] *See State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573 (Fed. Cir. 1989), cert. denied, 493 U.S. 1022 (1990); *Atlantic Thermoplastics Co. v. Faytex Corp.*, 970 F.2d 834, 847, 23 U.S.P.Q.2d (BNA) 1481, 1492 (Fed. Cir. 1992) (remanding for district court to consider market-share approach, where infringer sold, along with infringing merchandise, a noninfringing product that may have been an adequate substitute for some consumers); *King Instruments Corp. v. Perego*, 65 F.3d 941, 953 (Fed. Cir. 1995) (finding no error in district court's damages apportionment to account for plaintiff only controlling 70% of the market and therefore being entitled to only 70% of lost sales).

[10] *See Calimlim v. Foreign Car Ctr., Inc.*, 392 Mass. 228, 236, 467 N.E.2d 443, 448 (1984) ("[W]here the same acts cause the same injury under more than one theory . . . duplicative damage recoveries will not be permitted."); *Garshman Co. v. G.E.*, 176 F.3d 1, 5 (1st Cir. 1999) ("A plaintiff is not entitled to duplicative damages; it may recover only the amount of damages it actually suffered."); *Bogan v. City of Boston*, 489 F.3d 417, 425 (1st Cir. 2007) ("The law abhors duplicative recoveries; thus double awards for the same injury are impermissible.") (internal quotations omitted); *TLS Mgmt. & Mktg. Servs. LLC v. Rodriguez-Toledo* (D.P.R. Sept. 28, 2018) (holding that the law does not permit duplicative damage awards for the same conduct under two different statutory schemes), *rev'd on other grounds*, 966 F.3d 46 (1st Cir. 2020).

[11] *See* Fed. R. Civ. P. 37(e); *Citizens for Consume v. Abbott Laboratories*, 2007 WL 7293758, *5 (D. Mass. Mar. 26, 2007) (citing *Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)); *Aramark Mgmt., LLC v. Borgquist*, Case No. 8:18-CV-01888-JLS-KESX, 2021 WL 864067, at *15 (C.D. Cal. Jan. 27, 2021), *report and recommendation adopted*, Case No. 8:18-CV-01888-JLS-KES, 2021 WL 863746 (C.D. Cal. Mar. 8, 2021); *Hunters Cap., LLC v. City of Seattle*, Case No. C20-0983 TSZ, 2023 WL 184208, at *13 (W.D. Wash. Jan. 13, 2023) (When a defendant has a "habit of deleting text messages" frequently, this alone is not enough to constitute intent to deprive.); *McLaughlin v. Lenovo Glob. Tech. (U.S.) Inc.*, 682 F.Supp.3d 149, 166 (D. Mass. 2023) (citing *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1329 (Fed. Cir. 2011)).

To the extent the issues of fact above include additional contested issues of law, Defendants hereby incorporate those by reference. Defendants also incorporate by reference the legal issues pending in all currently pending motions to the extent not specified above. Defendants reserve the right to rebut issues that Plaintiffs raise for the first time in their dedicated sections to this Pre-Trial Memorandum or that the parties did not confer on prior to the filing of this joint submission, including dispositive rulings Plaintiffs' are seeking prior to trial that are not contained in motions *in limine* or *Daubert* motions and instead contained under separate trial briefs.

*Evidentiary Issues*

Defendants' Five Motions *in Limine* & *Daubert* Motions

1. Defendants' MIL (Doc. No 460) precluding Plaintiffs Cynosure, LLC and Lotus Parent, Inc. ("Plaintiffs"), their attorneys, witnesses, or others from making statements about the non-trial Defendants' ultimate liability or culpability with respect to claims that have been asserted against them individually (*e.g.,* statements by Plaintiffs during opening arguments that the jury will hear evidence that each of the individual Defendants violated their contracts, misappropriated trade secrets, etc.)
2. Defendants' MIL (Doc. No. 462) to exclude evidence or testimony relating to indemnification.
3. Defendants' MIL (Doc. No. 463) to preclude new or modified trade secrets claims.
4. Defendants' MIL (Doc. No. 464) to exclude evidence or testimony relating to net worth or financial condition of any individual.
5. Defendants' MIL (Doc. No. 466) to preclude misrepresentations related to the remediation process.
6. Defendants' Motion to Exclude the Expert Testimony of Sean McDermott (Doc No. 484).
7. Defendants' Motion to Exclude the Expert Testimony of Bruce McFarlane (Doc. Nos. 485, 486, 487).

## VIII.   REQUESTED AMENDMENTS TO THE PLEADINGS

### A.      The Plaintiffs' Statement

Plaintiffs reserve the right to amend their complaint to conform to evidence at trial or as otherwise appropriate, but otherwise do not believe express amendments to the pleadings are necessary at this time.

### B.      Defendants' Statement

None at this time. However, Defendants reserve the right to amend pleadings to conform to evidence or rulings at trial.

## IX.    TYPE AND PROBABLE LENGTH OF TRIAL

### Plaintiffs' Statement:

Plaintiffs understand that the Court has reserved three weeks for this jury trial, commencing on June 10, 2024 (with June 19 dark for the federal holiday).  Plaintiffs request that the Court allow the maximum number of full trial days (as opposed to half days running from 9am-1pm) within this window to allow sufficient time for the presentation of evidence.  To the extent that Defendants intend to examine or cross-examine witnesses during Plaintiff's case, all such time be attributed towards Defendant's case.

### Defendants' Statement:  Defendants estimate that the trial, inclusive of jury selection, will take two-three weeks (10-12 trial days (9am-1pm)) and that the parties should have an equal amount of hours to present their cases.

## X.     WITNESSES

### A.      The Plaintiffs' Witnesses

Plaintiffs have separately filed a list of witnesses whom they intend to call or may call to testify at trial that included Plaintiffs' best estimate of the length of each witnesses' direct

examination.  *See* Dkt. 504.  This list is not a commitment that Plaintiffs will call any particular witness at trial, but the Plaintiffs have worked to provisionally specify which fact witnesses they intend to call live as well as whom they intend to call by deposition.

Plaintiffs reserve the right to amend and supplement this list; to call all persons identified as witnesses by Defendants; to call additional witnesses to authenticate or otherwise lay the foundation for admission of evidence, or for purposes of impeachment or rebuttal; to call any person whose deposition testimony has been designated by any party; and to supplement this list based upon the Court's rulings, including any *in limine* motions, and any issues, exhibits, or witnesses presented by any party and to object to or move to strike the witnesses listed by Defendants on their proposed witness list.

Plaintiffs' Objections to Defendants' Witness List have been separately filed as Dkt. 497.

## B.       Defendants' Witnesses

Defendants' Objections to Plaintiff's Witness List are as follows:

Defendants assert a general objection to Plaintiffs' Trial Witness List in that it exceeds the Court's intended scope of this trial and lists numerous witnesses for allotted times that far exceed the trial schedule. Moreover, Plaintiffs have yet to provide Defendants with an anticipated order of witnesses and have not indicated which witnesses it will call in their case-in-chief. This prevents Defendants from preparing its trial schedule and coordinating witness appearances.

## XI.    EXHIBITS

The parties agreed, and did, exchange Exhibit Lists and will separately file their Exhibit Lists and Objections.

**Plaintiffs' Statement:**

Plaintiffs served objections to Defendants' exhibits on May 20, 2024.   However, Defendants did not provide any objections to Plaintiff's exhibit list until 15 minutes before the filing deadline for this Joint PreTrial Memorandum—in which they objected to nearly every Exhibit identified by Plaintiffs.   Accordingly, the parties were not able to make progress establishing a joint exhibit list by today's filing date and have submitted separate exhibit lists. Plaintiffs are willing to continue to meet and confer to establish a joint list that would resolve disputes and reduce the volume of exhibits, such as by combining individual exhibits into compilation exhibits. Plaintiffs have proposed numerous stipulations concerning the exhibit list that Defendants have rejected so far.   For example, Plaintiffs offered to stipulate that all emails from each corporate email server are authentic.  *These are documents that Defendants themselves produced.*  However, Defendants have responded that they will only agree that all email produced from *Cynosure's* email server and produced by Cynosure are authentic but will not do so for all emails from Reveal's email server.  Plaintiffs also offered to stipulate that all text and WhatsApp messages that Defendants produced were authentic, and or to go through them one by one to assess objections, and Defendants have refused. Again, *these are documents that Defendants themselves produced, and all of them relate to Reveal Lasers or the formation of the company, and the solicitation of employees and customers of Cynosure.*

Plaintiffs have also proposed that numerous Former Employee contracts and HR documents could be dropped from the exhibit list, if Defendants would agree to stipulations concerning their existence, such as those proposed about in Section III.A.  Defendants have refused to engaged in this discussion on the claimed basis that all of its employees except Robert Daley and Chris Chambers are irrelevant to the case.

Indeed, a short glace at Defendants objections make clear that Defendants have objected to nearly every document on Plaintiff's list, including the all of communications that they themselves produced.

Additionally, Cynosure has submitted certain compilations of voluminous evidence that could be reduced to stipulation, but Defendants have claimed the compilations are unacceptable.

Accordingly, Plaintiffs will file its Exhibit List on May 21, 2024.

**Defendants' Statement**

Plaintiffs' Trial Exhibit List is comprised of more than 1,100 "exhibits," created from more than 1700 discrete documents, totaling over 13,000 pages. Additionally, more than 1/3 of Plaintiffs' proposed list improperly combines numerous documents into separate exhibits. Many of the combined exhibits come from different sources, contain multiple elements from different custodians, discuss different topics, or combine different file types. Numerous combined exhibits contain portions with custodians who do not appear on either side's proposed witness list. Combining exhibits in this way before authentication and admission makes it difficult to broadly stipulate to admissibility/authenticity. It also naturally increases the nature, scope, and frequency of Defendants' objections across the board. In stark contrast, Defendants proposed a list of 331 exhibits that was reasonable in scope and construction. Each exhibit on Defendants' list was presented individually, for Plaintiffs to assess on a document-by-document basis. Under both the rules of evidence and commonly accepted standards of trial advocacy, Plaintiffs should afford Defendants that same courtesy but chose not to.

The state of Plaintiffs' proposed exhibit list prevented the parties from participating in meaningful meet and confers prior to the May 21 deadline. Moreover, Plaintiffs' Exhibit List contradicts Judge Saris' stated desire for the parties to streamline the issues.

45

Nonetheless, Defendants have timely served objections to Plaintiffs' Exhibit List and have offered to enter the following stipulations:

- Emails produced with the Reveal Lasers Bates label from Reveal Lasers' email server between Reveal Lasers employees using their Reveal Lasers email addresses are stipulated as authentic.

- Reveal payroll and financial statements produced with a Reveal Bates range are authentic. However, Defendants maintain objections to exhibits that are "compilations" which would prevent the authenticity of documents as compiled rather than individual exhibits.

- Agree to stipulate to documents where the parties do not raise authenticity objections (i.e. absent a Rule 901 objection).

- Emails sent and received on the Cynosure email server and produced in this litigation are authentic.

- In the event a party does not include an objection to an exhibit, the parties agree to the exhibit's pre-admission.

In addition, Defendants are willing to continue attempting to confer on stipulations ahead of the Pre-Trial hearing.

## XII.    ADDITIONAL MATTERS TO AID IN THE DISPOSITION OF THE ACTION

### A.    Treatment of Confidential Information at Trial

Both sides expect to present confidential information at trial, which may include both testimony and exhibits.  The parties believe it would be beneficial to discuss the Court's expectations for how to present confidential information at trial with minimal disruption.

46

**B.      Defense Witnesses in Case In Chief**

The parties have agreed that in the event Plaintiffs call Defense witnesses in their case in chief, Defendants are not limited to the scope of Plaintiffs' examination to avoid having to duplicate witness appearances and streamline the trial.

**Plaintiffs' Further Statement:**  Defendants should not be permitted to call the same witness twice for rebuttal.

**Defendants' Further Statement:** Alternatively, Defendants reserve the right to re-call witnesses in their case in chief without prejudice.

**C.      Note-Taking by Jurors**

The parties expect that the Court will adhere to its usual practice with respect to juror note-taking.

**D.      Juror Questions**

The parties expect that the Court will adhere to its usual practice with respect to juror questions.

**E.      Juror *Voir Dire***

The parties expect that the Court will engage in juror *voir dire*. The parties request that the Court provide guidance to counsel at the pretrial conference regarding its process for jury empanelment, including the number of jurors in the venire, including whether the parties may receive juror forms in advance of the day that jury empanelment proceeds, the number of preemptory strikes that the Court intends to permit per party, and whether the Court will permit any manner of attorney *voir dire* in addition to the Court's *voir dire*.

**F.      Proposed Jury Instructions and Verdict Form**

**Plaintiffs' Statement:**

The parties' proposed jury instructions and Plaintiff's proposed verdict forms have been previously filed with the Court at ECF Nos. 467-68, 470-72.  Plaintiffs have asked Defendants to file a proposed verdict form, but Defendants' have taken the position that they do not need to do so.

**Defendants' Statement:**  Defendants have not filed a proposed verdict form and anticipate that the Court will provide a deadline to do so at the pre-trial hearing since a date has not yet been ordered.

## G.   Documents Not Previously Disclosed

The parties reserve their right to supplement their exhibit lists up to and during trial for good cause shown under the circumstances.  A document not identified on an exhibit list may nonetheless be used at trial for purposes of impeachment.  Any deposition or portion thereof not specifically designated may still be used at trial for purposes of impeachment.

## H.   Electronic Equipment

Each party will be permitted to use electronic equipment for the presentation of evidence and will be permitted to have one technician in the courtroom to operate such equipment. No later than five days before trial, the parties will present to the Court a list of all audio and video equipment that will be used to present evidence during the trial and the names of the persons who will be responsible for delivering and setting up the equipment on the equipment set-up date. The parties request that the Court grant access to the courtroom on the business day before trial begins for the purposes of setting up electronic equipment.

**XIII. PARTIES' RESPECTIVE POSITIONS ON ANY REMAINING OBJECTIONS TO THE EVIDENCE IDENTIFIED IN THE PRETRIAL DISCLOSURE REQUIRED BY FED. R. CIV. P. 26(A)(3)**

The parties are not aware of any additional objections to the evidence identified in the Rule 26(a)(3) disclosures beyond those outlined in, incorporated by reference (including in the motions in *limine*), or attached to this submission.

Dated: May 21, 2024                              Respectfully submitted,


*/s/ Dipanwita Amar*                             */s/ Madison Dini*
Dipanwita Deb Amar (pro hac vice)                Gerald B. Hrycyszyn, BBO# 675201
Joseph Farris (pro hac vice)                     Michael A. Albert, BBO# 558566
Matthew Diton (pro hac vice)                     Wolf, Greenfield & Sacks, P.C.
ARNOLD & PORTER KAYE SCHOLER LLP                 Boston, MA 02210
3 Embarcadero Center, 10th Floor                 Telephone: (617) 646-8000
San Francisco, California 94111                  Facsimile: (617) 646-8646
dipanwita.amar@arnoldporter.com                  ghrycyszyn@wolfgreenfield.com
joseph.farris@arnoldporter.com                   michael.albert@wolfgreenfield.com
matthew.diton@arnoldporter.com
T: +1 415.471.3100                               A. Madison Dini (pro hac vice)
F: +1 415.471.3400                               MICHELMAN & ROBINSON, LLP
                                                 717 Texas Avenue, Suites 3100
                                                 Houston, TX 77002
Joshua S. Barlow (SBN: 667472)                   Telephone: (713) 422-2121
Fred A. Kelly Jr. (SBN: 544046)                  Facsimile: (713) 383-6151
ARNOLD & PORTER KAYE SCHOLER LLP                 mdini@mrllp.com
200 Clarendon Street, 53rd Floor
Boston, MA 02116                                 Ashley N. Moore (pro hac vice)
Joshua.barlow@arnoldporter.com                   MICHELMAN & ROBINSON, LLP
Fred.kelly@arnoldporter.com                      300 Crescent Court, Suite 1700
T: +1 617.351.8050                               Dallas, TX 75201
F: +1 627.226.9199                               Telephone: (214) 273-4050
                                                 Facsimile: (214) 853-4113
                                                 amoore@mrllp.com
*Counsel for Plaintiffs Cynosure, LLC and Lotus*
*Parent, Inc.*
                                                 Enrico S. Trevisani (pro hac vice)
                                                 MICHELMAN & ROBINSON, LLP
                                                 605 Third Ave., 30th Floor
                                                 New York, NY 10158
                                                 Telephone: (212) 730-7700
                                                 Facsimile: (212) 730-7725
                                                 etrevisani@mrllp.com


*Counsel for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 21, 2024, the foregoing document was filed through the

ECF system and will be sent electronically to the registered participants as identified on the

NEF.

<u>*/s/ Dipanwita Deb Amar*</u>
DIPANWITA DEB AMAR (admitted *pro hac vice*)