## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CYNOSURE, LLC, a Delaware limited liability company; and LOTUS PARENT, INC., a Delaware corporation,<br><br>              Plaintiffs,<br><br>v.<br><br>REVEAL LASERS LLC; a Nevada limited liability company, *et al.*,<br><br>              Defendants. | Civil Action No. 1:22-cv-11176-PBS |

## DEFENDANTS'[1] OPPOSITION TO PLAINTIFFS' MOTION FOR ENTRY OF JUDGMENT ON PLAINTIFFS' CHAPTER 93A CLAIM

The Court should deny Plaintiffs' Motion for Entry of Judgment in Favor of Plaintiffs on

Their Chapter 93A Claim, For Prejudgment Interest, and for Attorneys' Fees and Costs (Dkt. 673)

("Plaintiffs' Motion") because it fails as a matter of law for the following reasons:

1.   **The alleged conduct did not occur "primarily and substantially" in Massachusetts**: The purported acts spanned multiple states and countries, with minimal connection to Massachusetts, as required under Chapter 93A.

2.   **The claims arise from employment disputes**: The allegations and relevant conduct in question primarily concerns acts within the employer-employee relationship, which is not actionable under Chapter 93A.

3.   **The requested damages are duplicative and disproportionate**: Plaintiffs seek cumulative damages for the same alleged injuries already addressed by the jury, and the excessive punitive damages requested are unsupported by evidence of willful or knowing misconduct.

---

[1] Reveal Lasers Ltd., Reveal Lasers LLC (collectively "Reveal"), Robert Daley, and Christopher Chambers (together with Reveal, the "Defendants"). Plaintiffs' Motion seeks entry of judgment under Chapter 93A as it relates only to these defendants. However, at least seventeen named defendants in this case have not had any of the claims against them adjudicated. As such, Plaintiffs' Motion is premature and Defendants maintain their objection to the Court's consideration of Plaintiffs' Motion until the claims against the remaining defendants, which involve distinct and particularized factual scenarios, are heard by a jury and resolved.

# I.    INTRODUCTION

Cynosure's state specific Chapter 93A claim does not apply to this case. In fact, based on Cynosure's own case theory and allegations, it fails as a matter of law. For over two years, Cynosure[2] positioned their entire case around allegations that its employees orchestrated an elaborate and far-reaching corporate raid in which they "stole a pre-packaged, fully-functioning nationwide sales organization" and then targeted their "thousands of customers throughout the United States and Canada" in an effort "to destroy Cynosure."[3] According to Cynosure, the employees' efforts "culminated in an audacious national recruiting tour on Reveal's behalf — where Daley and Chambers flew around the country meeting with Cynosure's best sales and marketing leaders to get them 'signed up' to Reveal Lasers while expensing the trips to Cynosure."[4]

Cynosure maintained these allegations at trial when it opened and closed its case by illustrating to the jury the alleged scope of Defendants' purportedly tortious conduct by having a stylized aircraft 'fly' around the country to states like Washington, Texas, Tennessee, Florida, Georgia, Illinois, and New York. Cynosure also attempted to illicit witness testimony to support its theory that Defendants' alleged conspiracy to destroy Cynosure was executed through clandestine activities that were carried out from coast to coast and around the world in places like Turks and Caicos, the Bahamas, Israel, and Korea.

Now, emboldened by a runaway jury's erroneous $15,000,000 verdict,[5] Cynosure

---

[2] Plaintiffs Cynosure LLC and Lotus Parent, Inc. are collectively referred to herein as "Cynosure" or "Plaintiffs".

[3] Plaintiffs' Complaint for Injunctive Relief and Damages (the "Complaint") filed July 20, 2022, (Dkt. 1) at ¶¶ 2, 26

[4] Plaintiffs' Motion at pp. 1-2

[5] As set forth in greater detail in Defendants' Motion for Clarification of Jury Verdict (Dkt. 667), Cynosure's position that the jury awarded $25,000,000 in compensatory damages is, like the award itself, unsupported by the record and controlling law. By referencing the amount of the jury's verdict herein, Defendants do not waive any argument that the amount was erroneously reached and reserve all rights to challenge the verdict in post-judgment briefing and on appeal.

abandons its worldwide theme and tries to shoehorn its case into the Commonwealth by asking this Court to analyze "***precisely*** the same underlying evidence"[6] the jury considered and then utilize Massachusetts General Laws Chapter 93A — a state specific statute that by its express language is only applicable to tortious activity occurring in Massachusetts — to impermissibly increase the jury's already excessive judgment through an unprecedented additional award of cumulative, duplicative, and punitive damages.

As explained in this opposition, Plaintiffs' Motion fails to establish, and applicable law and common sense dispense of the proposition, that Cynosure is entitled to such an award or that it can obtain it by invoking a state statute designed to regulate conduct occurring primarily in Massachusetts. Plaintiffs' Motion is another transparent and legally unsupported step in Cynosure's relentless quest to financially ruin Defendants and stifle its competitors in the courtroom to avoid fair competition in the streets.

## II.    ARGUMENT

### A.    The Conduct Plaintiffs' Rely on in Support of Their Chapter 93A Claim Did Not Occur Primarily and Substantially Within Massachusetts.

Plaintiffs have moved for entry of judgment against Defendants for violations of Massachusetts General Laws Chapter 93A ("Chapter 93A") § 11 on the basis that Defendants engaged in unfair and deceptive business practices.[7] However, to even bring their Chapter 93A claim, Plaintiffs must demonstrate that any allegedly deceptive conduct "occurred primarily and substantially within the commonwealth." *See* Mass. Gen. L. c. 93A, § 11 (requiring that "no action shall be brought or maintained under this section unless the actions and transactions constituting…the unfair or deceptive act or practice occurred primarily and substantially within

---

[6] Plaintiffs' Motion at p. 2 (emphasis in original).
[7] *See generally* Plaintiffs' Motion.

the commonwealth."). "Whether the actions and transactions [constituting the § 11 claim] occurred primarily and substantially within the commonwealth is not a determination that can be reduced to any precise formula" and "[a]ny determination necessarily will be fact intensive and unique to each case." *Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*, 438 Mass. 459, 472 (2003). In making this determination, only the defendants' unfair and deceptive acts are relevant; other contacts with Massachusetts, such as a defendant like Mr. Daley residing there, "do not play a part in this assessment." *Armstrong v. White Winston Select Asset Funds, LLC*, No. 16-10666-JGD, 2022 WL 17981392, at *24 (D. Mass. Dec. 27, 2022) (quoting *AECOM Tech. Servs. Inc. v. Mallinckrodt LLC*, 117 F.Supp.3d 98, 106 (D. Mass. 2015)).

The First Circuit has also cautioned "that, if the significant contacts of competing jurisdictions are approximately in the balance, the conduct in question cannot be said to have occurred primarily and substantially in Massachusetts." *Uncle Henry's, Inc. v. Plaut Consulting Co.*, 399 F.3d 33, 45 (1st Cir. 2005) (citing cases). In other words, the appropriate inquiry looks at "whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth." *Kuwaiti*, 438 Mass. At 473. "**Where alleged wrongdoing is not focused on Massachusetts, but has relevant and substantial impact across the country, the 'primarily' requirement is not satisfied**." *Neural Magic, Inc. v. Meta Platforms, Inc.*, 659 F.Supp.3d 138, 183 (D. Mass. 2023) (citing *Uncle Henry's*, 399 F.3d at 45) (emphasis added).

Here, Plaintiffs have no credible argument or evidence through which they could establish that Defendants' purportedly deceptive and unfair conduct occurred primarily and substantially within Massachusetts. From the outset of this litigation, and over the two years it has persisted, Cynosure has made clear that its entire case theory, including its Chapter 93A claim, is that

Defendants orchestrated a global and nationwide scheme on behalf of Reveal "to break into the U.S. market by raiding Cynosure's sales force, attempting to divert its customers, stealing its trade secrets, and misappropriating its marketing channels" resulting in lost profits from reduced sales in every corner of the United States.[8] For example, as to the alleged raid on Cynosure's sales force, Plaintiffs asserted that Defendants targeted "key Cynosure managers strategically plucked from geographic regions around the country…who in turn recruited at least [a] dozen others…to follow them."[9] Plaintiffs included visual aids in both their Complaint and Amended Complaint to highlight in red the areas of the country[10] where the relevant senior members of Cynosure's sales organization operated and were allegedly raided by Defendants:

### EXCERPT FROM COMPLAINTS[11]



At trial, Plaintiffs opened and closed their case by making sure the jury understood that Plaintiffs' position was not that Defendants' alleged raid of these nationwide sales leaders was

---

[8] Complaint at ¶ 1; *see also* Plaintiffs' First Amended Complaint for Injunctive Relief and Damages ("Amended Complaint") (Dkt. 63) at ¶ 1 (same).

[9] Amended Complaint at ¶ 3.

[10] While not reflected on Plaintiffs' visual aid, another individual who was allegedly targeted during Defendants supposed raid was Cory Murrell. Mr. Murrell was one of the three most senior leaders at Cynosure and acted as the company's Area Vice President of Sales for all of Canada. *See* Amended Complaint at ¶ 14.

[11] *See* Complaint at ¶ 35; *see also* Amended Complaint at ¶ 51.

carried out remotely from Massachusetts, but that Defendants Chambers and Daley traveled across the country, on Cynosure's time and Cynosure's dime, committing their purportedly tortious acts in a variety of states.[12] Plaintiffs again utilized visual aids to reinforce their theory to the jury:

**EXCERPT OF PLAINTIFFS' TRIAL DEMONSTRATIVES[13]**



Plaintiffs continue to advance this theory in Plaintiffs' Motion, where they focus a majority of their allegations of unfair and deceptive practices on the raid of Cynosure's sale force, claiming that Defendants' entire deceitful plan "culminated in an audacious national recruiting tour on Reveal's behalf — where Daley and Chambers flew around the country meeting with Cynosure's best sales and marketing leaders to get them 'signed up' to Reveal Lasers while expensing the trips to Cynosure."[14]

But Plaintiffs' focus on the geographical scope of Defendants' alleged conduct didn't stop with the foregoing illustrations. They also called current Cynosure employee Kyle Robertson, who

---

[12] *See* Trial Transcript ("Tr. Tran.") Day 1 at 49:6-52:14 (in part, "Mr. Daley and Mr. Chambers flew around the country for Reveal Lasers on recruiting trips while they were working at Cynosure, remarkably on Cynosure's time and Cynosure's dime."); *see also* Tr. Tran. Day 17 at 176:8-180:5.
[13] *See* PDX5.
[14] Plaintiffs' Motion at pp. 1-2.

at the time of Defendants' allegedly tortious acts was a district sales manager for Cynosure in Canada, to the stand to tell the jury about Defendants' purported deceptive recruiting efforts *overseas* at Cynosure's President's Club in Turks and Caicos.[15] Plaintiffs then questioned several of Cynosure's current and former employees to elicit further testimony about Defendants' alleged tortious conduct in Turks and Caicos for the jury's consideration.[16] Similar testimony was elicited from the purportedly raided Cynosure employees that was intended to show that Defendants' alleged deceptive and unfair recruiting activities were also taking place at Cynosure's National Sales Meeting in the Bahamas immediately before the President's Club.[17] In short, assuming *arguendo* that there was an unfair and deceptive raid of Cynosure's sales force by Defendants, that raid was effectuated through alleged recruiting efforts in at least eight states and four countries.[18]

Yet, the only mention in Plaintiffs' Motion of any allegedly deceptive and unfair recruiting practices by Defendants *within Massachusetts* is the inclusion of Burlington in a list of seven other cities that Defendants purportedly traveled to during their alleged 'audacious national recruiting tour.'[19] However, a review of the Amended Complaint and the testimony at trial shows that the only alleged recruiting by Defendants to have occurred in Burlington was a meeting with a single then-Cynosure employee, Daniel DeMarco.[20] This lone meeting with 1 of the 28 allegedly raided employees, in 1 of the 8 states where meetings are claimed to have occurred, cannot support a

---

[15] Tr. Tran. Day 12 at 130:33-131:21; *see also* Plaintiffs' Motion at p. 8.

[16] *See e.g.* Tr. Tran. Day 8 at 47:10-48:13 (Cory Murrell); Tr. Tran. Day 12 at 130:15-131:5 (Kyle Robertson); Tr. Tran. Day 13 at 132:4-133:11 (Jason Kalso).

[17] *See e.g.* Tr. Tran. Day 6 at 178:11-180:6 (Yunior Caballero); Tr. Tran. Day 8 at 42:23-43:5, 51:12-24 (Cory Murrell); Tr. Tran. Day 9 at 10:18-11:12 (Bob Daley).

[18] Notably, Plaintiffs refer to Defendants' 'aggressive recruiting' as the mechanism through which Chambers and Daley "executed Defendants' unfair and deceitful plan" that underlies Plaintiffs' Chapter 93A claim. Plaintiffs' Motion at p. 7. Thus, the geographic scope of those recruiting efforts should be a critical component in the Court's analysis of "whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth." *Kuwaiti*, 438 Mass. At 473.

[19] *See* Plaintiffs' Motion at p. 10.

[20] *See* Tr. Tran. Day 7 at 149:10-12 ("Do you recall the next day, on the 28th, you met with Danny DeMarco at a Marriot in Burlington? That's – yeah, Danny and I met at the Burlington Marriott.").

finding that Defendants' tortious activity occurred substantially and primarily in Massachusetts, as it must to support a claim under Chapter 93A.

Furthermore, Plaintiffs' remaining allegations of unfair and deceptive conduct — taking Cynosure's confidential information and trading directly on Cynosure's goodwill[21] — are necessarily geographically intertwined with the alleged raid of Cynosure's sales force. According to Plaintiffs, Defendants "compounded their deceptive recruiting of Cynosure's salesforce by hiring almost all of the former Cynosure employees in directly competing roles in the same exact territories...thereby allowing them [to] use the misappropriated information to destroy Cynosure's goodwill"[22] Defendants did so, Plaintiffs claim, in an attempt to 'lift and shift' the employees, Cynosure's claimed confidential information that was in those employees' possession, and the customer relationships they had built in their respective regions in order to establish "a ready-to-go operation without having to invest in all of the work that it takes a company to develop its own resources."[23]

Indeed, the vast majority of Cynosure information that Plaintiffs reference in Plaintiffs' Motion, which is the same information that was presented to the jury and which Plaintiffs contended were the confidential trade secrets Defendants were alleged to have misappropriated, are customer lists, 'hot leads' spreadsheets, and approved credit list.[24] In each instance, the allegedly confidential information therein pertained exclusively to the customers in the regions where the purportedly raided employees operated which, as shown throughout trial and in the

---

[21] *See* Plaintiffs' Motion at p. 14. Defendants note that Plaintiffs take the last two allegations from Plaintiffs' Amended Complaint — attempting to divert Cynosure's customers and misappropriating Cynosure's marketing channels — and reframe them in Plaintiffs' Motion as "trading directly on Cynosure's goodwill," presumably in an attempt to sidestep the jury's findings that Defendants did not solicit Cynosure's customers. *see* Verdict Form (Dkt. 646) at 1(a)(i)(B) and 1(b)(i)(B). Notably, Plaintiffs' dropped their claim for loss of goodwill at trial and did not seek damages relating thereto.
[22] Plaintiffs' Motion at p. 13.
[23] Tr. Tran. Day 1 at 61:20-22.
[24] *See* Plaintiffs' Motion at pp. 11-12; *see also* Tr. Exs. 271, 288, 372, 423, 682.

excerpt from Plaintiffs' Complaints *supra*, overwhelmingly did not include Massachusetts. In fact, Cynosure did not question a single witness at trial about any Massachusetts customer or any alleged confidential Cynosure information that pertained thereto.[25] Thus, *even if* the Court were to accept Plaintiffs' allegations that the purportedly 'raided' employees used Cynosure's confidential information to facilitate Defendants' attempts to "destroy Cynosure's goodwill" in their respective regions the evidence presented in Plaintiffs' Motion, and that presented to the jury, could only arguably support that finding, if at all, as to customers outside of Massachusetts.[26]

Finally, neither Cynosure's status as a Massachusetts based company that claims to have felt financial injury in Massachusetts, nor Mr. Daley's status as a Massachusetts resident, bring Defendants' alleged conduct under the purview of Chapter 93. First, the critical inquiry is not where alleged harm was felt but rather "whether the center of gravity of circumstances that give rise to the claim is primarily and substantially within the Commonwealth." *Kuwaiti*, 438 Mass. at 473. As many courts have previously held, a place of injury within Massachusetts is not a sufficient basis for finding that conduct occurred 'primarily and substantially' within the Commonwealth. *See e.g. Korpacz v. Women's Prof'l Football League*, 2006 WL 220762, at *5 (D. Mass. Jan. 27, 2006) ("Although plaintiffs themselves reside in Massachusetts and any losses they may have suffered would have been incurred here, defendants' conduct occurred outside of the state."); *Central Mass. Television, Inc. v. Amplicon, Inc.*, 930 F. Supp. 16, 27 (D. Mass. 1996) ("[W]hen

---

[25] Nor do Plaintiffs reference any Massachusetts customers in Plaintiffs' Motion. Instead, the two examples Plaintiffs use to support the proposition that "[e]ven before they resigned, the employees had already begun shifting sales opportunities away from Cynosure and to Reveal Lasers" relate to a customer in New York (Ex. 446) and a customer in Connecticut (Ex. 135). *See* Plaintiffs' Motion at n. 6.

[26] Again, the exhibits Plaintiffs cite in their Motion to support Defendants' alleged unfair conduct in furtherance of eroding Cynosure's goodwill make no mention of Massachusetts customers nor contain any language that would imply they were intended to be used to sell to Massachusetts customers. *See* Plaintiffs' Motion at p. 13-14; *see also* Ex. 477A, Ex. 497A. In fact, the language in Exhibit 477A implies it could not be used in Massachusetts as it specifically identifies the "territory of North Carolina, Tennessee, Kentucky, Ohio and Indiana." *See* Ex. 477A at 6:11-12. Furthermore, there is nothing in the record to indicate that either Ex. 477A or Ex. 497A were ever distributed or used on *any* potential customers. In fact, Chambers explicitly testified that he never utilized the purported sales pitches referenced in those exhibits. *See* Tr. Tran. Day 11 at 74:22-78:11.

'place of injury' is the only factor weighing in favor of a claimant, the admonition of Massachusetts courts that liability under chapter 93A is not to be imposed lightly is particularly relevant."). "Indeed, if the courts were to apply a 'place of injury' test, 'practically no case involving a Massachusetts plaintiff would be exempt from Chapter 93A status, no matter how negligible the defendants' business activity in this [s]tate.'" *Spring Inv'r Servs., Inc. v. Carrington Capital Mgt., LLC*, No. CIV.A. 10-10166-FDS, 2013 WL 1703890, at \*13 (D. Mass. Apr. 18, 2013) (quoting *Makino, U.S.A., Inc. v. Metlife Capital Credit Corp.*, 25 Mass.App.Ct. 302, 310 (Mass. App. Ct. 1988)).

Second, the fact that Mr. Daley is a Massachusetts resident does not alter the analysis. Only the defendants' unfair and deceptive acts are relevant; other contacts with Massachusetts, such as a defendant residing there, "do not play a part in this assessment." *Armstrong* 2022 WL 17981392, at \*24; *See also Neural Magic*, 659 F. Supp. 3d at 183 ("[e]ven as alleged, this wrongful [conduct] is not directed at Massachusetts. That [plaintiff] is a Massachusetts company and [defendant], its former employee, signed his employment contract in Massachusetts does not satisfy the 'primarily and substantially' in Massachusetts requirement."). Plaintiffs' allegations that Mr. Daley was communicating with Reveal Lasers, Ltd.'s then CEO Eyal Buchbinder in Israel prior to the alleged 'recruiting trips' do not place the center of gravity of the circumstances underlying Plaintiffs' claims in Massachusetts. There has been no evidence that any of Mr. Daley's communications with Mr. Buchbinder actually occurred while Mr. Daley was at his home,[27] nor that any of the alleged conversations related to tortious activity that either individual intended to be, or were, carried out within Massachusetts. Instead, Plaintiffs assert that whatever alleged plan Mr. Daley and Mr.

---

[27] Several witnesses, including Mr. Daley, testified in this case that their jobs at Cynosure subjected them to significant travel obligations that kept them away from their residence for days and sometimes weeks at a time. *See e.g.* Tr. Tran. Day 9 at 25:17-23, 32:17-33:2, 93:12-22 (Bob Daley); Tr. Tran. Day 11 at 18:10-19 (Chris Chambers).

Buchbinder supposedly orchestrated was "executed…by aggressive recruiting" around the country and abroad, as set forth earlier in this section. Merely contemplating acts in Massachusetts that are then carried out elsewhere does not provide a basis for the application of Chapter 93A. *See e.g. Value Partners S.A. v. Bain & Co.*, 245 F. Supp. 2d 269, 280 (D. Mass. 2003) (holding that actions and transactions at heart of Plaintiffs' claims did not occur primarily and substantially in Massachusetts because "[a]lthough Bain officials were located in Massachusetts, it is not clear that their acts were confined to the site where the decisions were made."); *Camp Creek Hosp. Inns., Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1410 (11th Cir. 1998) (affirming summary judgment disposing of Plaintiff's Chapter 93A claim because "although [defendant's] contemplation of these acts may have taken place in Massachusetts, the acts themselves took place outside the Commonwealth" and thus the allegedly deceptive and unfair conduct was not substantially and primarily in Massachusetts.)

In sum, this case is not, and has never been, about Defendants' allegedly unfair and deceptive conduct occurring in Massachusetts. Plaintiffs did not assert that it was in their Complaint, Amended Complaint, or Plaintiffs' Motion. Plaintiffs did not argue or present any evidence that it was to the Court or the jury. Plaintiffs have no basis to, and cannot, do so now. Accordingly, Plaintiffs' Chapter 93A claim must fail as a matter of law and Defendants respectfully request that the Court deny Plaintiffs' Motion in its entirety.

**B.    The Jury's Findings Do Not Establish Liability under Chapter 93A.**

In addition to the fact that Cynosure relies on tortious activity that did admittedly not occur substantially and primarily in Massachusetts, which forecloses Plaintiffs' Chapter 93A claim as a matter of law, Plaintiffs' contention that the jury's finding of liability on their tort claims[28]

---

[28] Including tortious interference, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, misappropriation of trade secrets, and conspiracy necessarily.

necessarily and "conclusively [shows] that Defendants engaged in the type of conduct that violates Chapter 93A" is equally unavailing. Plaintiffs' Motion at p. 5. Undoubtedly, Plaintiffs' repeated improper and prejudicial conduct at trial influenced the jury's liability determination and thus cannot be conclusively relied upon by the Court in evaluating Plaintiffs' Chapter 93A claim.[29]

Nevertheless, assuming *arguendo* that the jury's findings can be credited, they are still not sufficient to conclusively establish Chapter 93A liability, in part, because they relate to allegations of conduct that occurred while Daley and Chambers were employed by Cynosure and thus arose from an employment relationship that was private in nature and falls outside the bounds of Chapter 93A. *See e.g. Manning v. Zuckerman*, 388 Mass. 8, 13-14, 444 N.E.2d 1262 (1983) (finding that a dispute between a former employee and employer did not state a claim under Chapter 93A because it arose out of the parties' employment relationship and not from an arm's length commercial transaction.); *see also Guest-Tek Interactive Ent., Inc. v. Pullen*, 665 F.Supp.2d 42, 47 (D. Mass. 2009) (holding that breaches of common law and statutory duties did not fall under Chapter 93A because "although the dispute between [defendant] and [plaintiff] did not originate from the breach of a private employment contract or non-compete agreement, the primary relationship between the parties was one of employee and employer.").

While "the inapplicability of [Chapter 93A] to disputes arising from an employment relationship does not mean that an employee never can be liable to its employer under [Chapter 93A]," the circumstances that would allow for application of Chapter 93A in the employee/employer relationship context are inapplicable here. *Governo L. Firm LLC v. Bergeron*, 487 Mass. 188, 195, 166 N.E.3d 416, 425 (2021). Indeed, the cases where Chapter 93A liability

---

[29] *See e.g.* Defendants' Motion to Dismiss, Motion to Strike, and Motion for Sanctions (Dkt. 607) (describing Plaintiffs' highly prejudicial and improper impeachment of Mr. Daley.); Tr. Tran. Day 16 at 190:14-194:3 (Plaintiffs' egregious public disclosure of improperly obtained and previously undisclosed confidential information relating to third-party business negotiations intended to influence the jury's evaluation of witness credibility.).

was found in that context have been limited to the employee's conduct that occurred post-employment or "independent of the former employment relationship." *See e.g. The Descartes Sys. Grp. V. Celarix, Inc.*, No. CIV. A. 00-05042, 2001 WL 721493, at \*2 (Mass. Super. June 20, 2001) (applying Chapter 93A to claims where evidence showed employee improperly acquired trade secrets *after* employment had ended); *see also Governo*, 487 Mass. at 426 (holding that trial court's instruction that jury should disregard everything defendants did while employed because it would be 'irrelevant' to Chapter 93A analysis was improper because "the jury could have found that defendants' *subsequent* [post-employment] use of the converted materials was an unfair and deceptive act.") (emphasis added). Here, unlike in *Celarix* and *Governo*, Plaintiffs' entire theory[30] of deceptive and unfair conduct is that Defendants were conspiring, raiding Cynosure's sales force, and misappropriating Cynosure's trade secrets *while employed by Cynosure* and, as repeatedly emphasized to the jury through its counsel's favorite tag line, "on Cynosure's time and Cynosure's dime."[31]

Furthermore, to the extent Plaintiffs argue that Defendants' alleged recruiting of then-Cynosure employees continued after Daley and Chambers resigned, that purported conduct only underlies Plaintiffs' tortious interference claim that was premised on the idea that Defendants interfered with then current Cynosure employees' employment contracts with Cynosure.[32] Massachusetts courts have ruled directly on the question of whether tortious interference with

---

[30] While Plaintiffs did make *some* post-employment allegations against Defendants, such as contractual interference with Cynosure's contract with Sinopharm and Defendants post-Cynosure-employment use of the allegedly misappropriated confidential information to solicit Cynosure customers, the jury correctly rejected those claims; *See* Verdict Form (Dkt. 646) at 2(a); *see also* Amended Complaint at ¶¶ 188-191.

[31] *See e.g.* Plaintiffs' Motion at p. 1 ("The evidence at trial established that Daley and Chambers, at the direct of and with assistance from Reveal Lasers, carefully and dishonestly plotted to poach Cynosure's salesforce by seeding discontent among their *direct reports*, spreading lies about the planned termination of key sales personnel, and orchestrating a whisper campaign about their new startup…all while falsely portraying to Cynosure that they were rallying the troops.") (emphasis added). In fact, these same allegations underlie each of the Plaintiffs' common-law claims on which they prevailed at trial including breach of fiduciary duty (a duty which arose, if at all, by virtue of their employment) and the aiding and abetting thereof.

employment agreements can be actionable under Chapter 93A and have held that, as a matter of law, it cannot. *See e.g. TalentBurst, Inc. v. Collabera, Inc.*, 567 F.Supp.2d 261, 270 (D. Mass. 2008). This is because "[i]t is firmly established that disputes between employers and employees fall outside the scope of [Chapter 93A] § 11" because "employment agreements between an employee and his employer do not constitute either 'trade' or 'commerce.'" *Informix, Inc. v. Rennell*, 41 Mass. App. Ct. 161, 162 (1996). "[D]isputes arising from an employment relationship between an employee and the organization that employs him…are not covered by the c. 93A remedies afforded in commercial transactions…Contract disputes between an employer and an employee…are principally 'private in nature' and do not occur in the ordinary 'conduct of any trade or business' as contemplated by the statute." *Id.* (quoting *Manning* 388 Mass. at 14.). Thus, "[g]iven 'the actual willful breach of a non-compete by an employee is not actionable under chapter 93A because the claim arose from the employment relationship, then the conduct of a third party to induce such a breach must also not be actionable because this claim, too, arose from the employment relationship.'" *TalentBurst, Inc.*, 567 F.Supp. at 270 (quoting *Intertek Testing Servs. NA, Inc. v. Curtis-Strauss LLC*, 2000 WL 1473126, at *11 (Mass. Super. 2000)).

Additionally, while the jury's findings of liability on Plaintiffs' misappropriation of trade secrets claims are irrelevant because they relate to alleged misappropriation while Chambers and Daley were employed by Cynosure, the jury's finding of no harm resulting from that misappropriation provides an independent basis to dispose of the alleged applicability of Plaintiffs' misappropriation claim to act as a basis for Chapter 93A liability. Because the jury found that Cynosure failed to prove that any misappropriation caused any harm to Cynosure none of the compensatory damages the jury awarded were in any way related to the alleged misappropriation, as confirmed by the jury's answer of "N/A" when presented with the question of what amount of

compensatory damages awarded were attributable to misappropriation of trade secrets.[33]

The explicit jury finding that the allegedly unfair and deceptive misappropriation of trade secrets had no relationship to any harm Cynosure claimed at trial prevents Plaintiffs from arguing Defendants used those trade secrets post-employment to harm Cynosure and also prevents Plaintiffs from recovering under Chapter 93A for the same allegations of misappropriation. Undeniably, Chapter 93A requires any alleged deceptive or unfair act to cause a loss of money or property in order for recovery of damages under Section 11 to be proper. *See* Mass. Gen. L. c. 93A, § 11 ("Any person who engages in the conduct of any trade or commerce **and who suffers any loss of money or property**…may, as hereinafter provided, bring an action…") (emphasis added); *see also Massachusetts Farm Bur. Fed'n Inc. v. Blue Cross of Massachusetts, Inc.*, 403 Mass. 722, 730 (1989) ("In the absence of a causal relationship between the alleged unfair acts and the claimed loss, **there can be no recovery**.") (emphasis added).

Plaintiffs Motion ignores longstanding precedent, and the language of the statute itself. Even worse, granting Plaintiffs' Motion would improperly expand the scope of Chapter 93A to cover allegedly deceptive and unfair acts that occurred within the context of Chambers' and Daley's employment with Cynosure and for acts that the jury found caused Cynosure no harm. A result of this unprecedented nature thwarts the entire purpose of the state statute and the protection it intends to provide and Plaintiffs' Motion must be denied.

**C.    Cynosure is Not Entitled to a Duplicative Award of Compensatory or Punitive Damages and the Award it Seeks is Not Proportional.**

Although Chapter 93A allows compensatory damages, and multiple damages for particularly egregious conduct, such damages are foreclosed when they would amount to cumulative damages for the same injury. *See Borne v. Haverhill Golf & Country Club, Inc.*, 58

---

[33] *Id.* at 9 (Reveal), and 11 (Daley).

Mass. App. Ct. 306, 327 (2003), *rev. denied,* 440 Mass. 1101 (2003). Here, Plaintiffs acknowledge that "Cynosure's Chapter 93A claim...is predicated on the same wrongful actions and conspiratorial conduct as its common law claims."[34] But the jury already determined "what sum of money would fairly and reasonably compensate Cynosure for the last profits it suffered" as a result of the exact "same wrongful actions and conspiratorial conduct" that Cynosure now seeks to be compensated for under Chapter 93A.[35]

Consistent with their inability to apportion damages at trial, Plaintiffs can not specify a single injury suffered as a result of the alleged Chapter 93A violations that was not redressed by the jury's award of damages.[36] The law does not support Cynosure recovering duplicative compensatory damages for its Chapter 93A claim when the jury already awarded compensatory damages for common law claims associated with identical injuries arising from identical conduct. See *Borne*, 58 Mass. App. Ct. at 327; *see also Calimlim v. Foreign Car Ctr., Inc.*, 392 Mass. 228, 235-36 (1984). ("Where injury is incurred because of conduct which comprises the elements of any common law, statutory, or regulatory cause of action, and which is also a violation of the Consumer Protection Act, recovery of cumulative damages under multiple counts may not be allowed.")

Furthermore, where a plaintiff has incurred no separate damages from a Chapter 93A violation and its actual damages are duplicative of its common-law claims, as is the case here, a court may only award double or treble damages if the defendants' act was 'willful or knowing." See *Newly Wed Foods, Inc. V. Superior Nut Co.,* No. CIV.A. 05-0454E, 2010 WL 1178404 at *6

---

[34] Plaintiffs' Motion at 17.
[35] *Id*; Verdict Form (Dkt. 646) at 7, 10, and 12.
[36] *See* Plaintiffs' Motion at p. 17 ("the Court should award the *same* compensatory damages against Defendants on Cynosure's Chapter 93A claim, which is predicated on the same wrongful actions and conspiratorial conduct as its common law claims.") (emphasis added).

(Mass. Super. Feb. 18, 2010). "[T]he standard prescribed by 'willful,' as well as the standard prescribed by 'knowing,' is a state-of-mind standard that requires the fact finder to determine not whether a defendant…should have had that state of mind, but whether in fact the defendant (or its agents) did have that state of mind." *Computer Sys. Eng'g, Inc. v. Qantel Corp.*, 571 F. Supp. 1365, 1374 (D. Mass. 1983) *aff'd* 740 F.2d 59 (1st Cir. 1984). The Massachusetts Supreme Judicial Court has held that a party's actions are knowing or willful if the defendant acts with the *intention* or with the *conscious objective* of committing unfair or deceptive acts. *See e.g. Datacomm Interface, Inc. v. Computerworld, Inc. et al.*, 396 Mass. 760, 780 (1986); *Heller v. Silverbranch Constr. Corp.*, 376 Mass. 621, 624 (1978). "Even though evidence that an ordinarily prudent person would have known, and that the defendant should have known, may be received as circumstantial evidence that the defendant did know, the question the fact finder must answer is whether in fact the defendant did know [they were committing unfair or deceptive acts]." *Qantel Corp.*, 571 F. Supp. At 1374.

The case law does not support a finding of willful or knowing violations in this case nor does Plaintiff establish entitlement to one in its Motion. The First Circuit has highlighted that most of the cases where willful and knowing violations are found "tend to cluster around findings of: (a) coercion or extortion…(b) fraud and similar forms of misrepresentation…or (c) abusive litigation." *Incase Inc. v. Timex Corp.*, 488 F.3d 46, 58 (1st Cir. 2007) (citing cases). Plaintiffs do not point to any such findings by the jury because there were none. Instead, in the only instance where the jury was explicitly asked to indicate their findings as to whether certain tortious conduct was performed 'willful[ly] and malicious[ly]' they found that it was not. [37] As Plaintiffs repeatedly urge, "there is no basis for the Court to depart from the jury's findings" and, in this rare instance,

---

[37] *See* Verdict Form (Dkt. 646) at 5(c).

Defendants agree.[38]

Nevertheless, in an attempt to sidestep the jury's explicit finding, Plaintiffs focus on purportedly implicit findings that they allege the jury must have made in reaching the liability determinations on Plaintiffs' tort claims.[39] As discussed in Section II(B) *supra*, the jury's stated findings with respect to Plaintiffs' claims cannot serve to form the basis for Chapter 93A violations and certainly their alleged implicit findings cannot either. The only independent evidence Plaintiffs offer of any supposedly willful or knowing conduct on the part of Defendants is alleged awareness of the existence of restrictive covenants in certain contracts, a general request for indemnity from their new employer, and Plaintiffs' mischaracterization of the record relating to Defendants' activities surrounding the Reveal NDAs.[40] Plaintiffs provide no evidence that Daley and Chambers had actual awareness any of the foregoing acts were unfair or deceptive nor that they had the intention to commit unfair or deceptive acts. Indeed, this purported evidence hardly rises to the coercion or extortion, fraud, or abusive litigation that the First Circuit explained are the typical circumstances in which findings of willful and knowing behavior that could support a multiple damages award under Chapter 93A are made. *See Incase* 488 F.3d at 58.

Absent any evidence, even if the Court finds that Defendants' alleged acts underlying Plaintiffs' Chapter 93A claim were done willfully and knowingly, multiple damages are still not warranted because such damages are punitive and the jury already had the opportunity make such

---

[38] Plaintiffs' Motion at 15.

[39] *See* Plaintiffs' Motion at 15.

[40] Specifically, Plaintiffs claim that there is 'ample evidence' that Daley and Chambers destroyed all the Reveal NDAs…and then doctored contracts during this time period to falsify the dates of their employment." Plaintiffs' Motion at 17. The evidence Plaintiffs rely on shows that this assertion is patently untrue. Instead, multiple witnesses testified that they did not know the location of the NDAs nor remember why certain dates were written on documents. *See e.g.* Tr. Tran. Day 7 at 83:4-19, 131:2-12, 142:23-143:20, 144:15-145:7, 147:22-25, (Bob Daley); Tr. Tran. Day 8 at 35:5-39:1 (Cory Murrell); Tr. Tran. Day 13 at 23:12-23 (Jason Kalso); Tr. Tran. Day 16 at 80:13-20 (Brogan Chambers).

findings.[41] *See Value Partners S.A.*, 245 F. Supp. 2d at 277 ("The double or treble damages available under chapter 93A are punitive in nature."). Thus, an additional award of punitive damages would be duplicative. *See e.g. Evans v. Lorillard Tobacco Co.*, No. 2004-2840-B, 2011 WL 7860228, at *29 (Mass. Super. Sept. 6, 2011), aff'd in part, rev'd in part, 465 Mass. 411, 990 N.E.2d 997 (2013) ("The multiple damages factor, even if appropriate, has been satisfied by the punitive damages that were awarded in connection with the jury's verdict. A further award of damages would be duplicative."); *see also Borne*, 58 Mass. App. Ct. at 327 ("The multiple damages factor in c. 93A claims has been satisfied by the punitive damages that were awarded in connection with the discrimination claims...the judge was right to dismiss the c. 93A claims as duplicative.").

Finally, Plaintiffs' request that the Court impose additional punitive damages in the form of multiple damages to "find Defendants jointly and severally liable for amounts between $50,000,000 to $75,000,000" highlights the egregious and shocking nature of Plaintiffs' Motion.[42] Indeed, just a few months ago in this district, Judge Margaret Guzman, analyzing similar claims under Chapter 93A as those at issue here, imposed multiple (double) damages that resulted in *total* damages of $3,000,000 against one corporate defendant and $3,600,000 against another. *See KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC*, No. CV 21-10572-MRG, 2024 WL 1558167, at *18 (D. Mass. Apr. 10, 2024). In reaching its decision to award $1.5 million and $1.8 million in punitive damages against the respective entities, the Court explained:

> these total damages amounts will undoubtedly serve the twin goals of 93A: namely punishment and deterrence. These **large sums** will send a clear signal to the marketplace that egregious acts of trade secret misappropriation on the one hand and tortious interference with contractual relationships on the other will result in **significant,** real world consequences. In addition to ensuring that the total damages awards are

---

[41] *See* Verdict Form (Dkt. 646) at 17.
[42] Plaintiffs' Motion at 19.

sufficiently punitive, **the Court must also make sure that the total damages awarded are proportional to the wrongdoing at issue.**"

*Id*. (emphasis added). There is no reasonable argument that the imposition of punitive damages between $25,000,000 and $50,000,000, for a total damages award of between $50,000,000 and $75,000,000, is in any way proportional to the facts and circumstances in this case.[43] Nor is it clear what message the Court would be signaling to the marketplace if it imposed such an overwhelmingly significant punishment against two individuals and a start-up company. The undersigned counsel has been unable to find *a single instance* where Chapter 93A was weaponized to punish defendants, particularly individual defendants, to such an outrageous degree. Even if the Court finds Chapter 93A applicable, certainly the Defendants' alleged actions with respect to Cynosure are not the single most unfair and deceptive acts ever perpetrated in the history of the Commonwealth of Massachusetts.

## CONCLUSION

For these reasons, Defendants request that the Court deny Plaintiffs' Motion in its entirety. To the extent the Court is inclined to grant any portion of Plaintiffs' Motion, Defendants request that in so doing the Court issue findings of facts and conclusions of law, including findings on (i) whether Defendants' alleged conduct occurred primarily and substantially in Massachusetts and (ii) whether Defendants' acts were willful and knowing.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Defendants request oral argument.

---

[43] Defendants further contest Plaintiffs' right to attorneys' fees. Attorneys' fees can only be awarded if Plaintiffs prevail on the Chapter 93A claim which, as shown herein, they cannot. To the extent the Court disagrees and finds that Plaintiffs are entitled to their attorneys' fees, Defendants reserve all rights to challenge any requested or proposed award via separate briefing.

Dated: November 22, 2024                    Respectfully Submitted,

                                            DEFENDANTS,

                                            By their attorneys,

                                            /s/ A. Madison Dini
                                            Gerald B. Hrycyszyn, BBO# 675201
                                            Michael A. Albert, BBO# 558566
                                            Wolf, Greenfield & Sacks, P.C.
                                            600 Atlantic Avenue
                                            Boston, MA 02210
                                            Telephone: (617) 646-8000
                                            Facsimile: (617) 646-8646
                                            ghrycyszyn@wolfgreenfield.com
                                            michael.albert@wolfgreenfield.com

                                            A. Madison Dini (admitted *pro hac vice*)
                                            MICHELMAN & ROBINSON, LLP
                                            717 Texas Avenue, Suite 3100
                                            Houston, Texas 77002
                                            Telephone: (713) 422-2121
                                            Facsimile: (713) 383-6151
                                            mdini@mrllp.com

                                            Enrico S. Trevisani (admitted *pro hac vice*)
                                            MICHELMAN & ROBINSON, LLP
                                            300 Crescent Ct., Suite 1700
                                            Dallas, Texas 75201
                                            Telephone: (214) 273-4050
                                            Facsimile: (214) 853-4113
                                            etrevisani@mrllp.com

                                            Ashley N. Moore (admitted *pro hac vice*)
                                            GREENBERG TRAURIG, LLP
                                            2200 Ross Avenue, Suite 5200
                                            Dallas, Texas 75201
                                            Telephone: (214) 665-3600
                                            Facsimile: (214) 665-3601
                                            Ashley.Moore@gtlaw.com

## **CERTIFICATE OF SERVICE**

I, A. Madison Dini, hereby certify that on November 22, 2024, a copy of the foregoing document was served on counsel for all appearing parties via the ECF filing system.


*/s/ A. Madison Dini*
A. Madison Dini