UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                   )
CYNOSURE, LLC, and LOTUS PARENT,   )
INC.,                              )
                                   )
                Plaintiffs,        )
                                   )   Civil Action
v.                                 )   No. 22-cv-11176-PBS
                                   )
REVEAL LASERS LLC, et al.,         )
                                   )
                Defendants.        )
_____)
```

**MEMORANDUM AND ORDER**

July 21, 2025

Saris, J.

**INTRODUCTION**

Plaintiffs Cynosure, LLC and Lotus Parent, Inc. ("Cynosure") brought this lawsuit after Defendants Robert Daley and Chris Chambers, then-top managers in Cynosure's sales force, resigned to launch a competitive business with Defendants Reveal Lasers Ltd. and Reveal Lasers LLC ("the Reveal entities") and recruited twenty-six other Cynosure employees to join them in the new endeavor. At trial, a jury found Daley, Chambers, and the Reveal entities ("Defendants") liable on a number of common-law claims and awarded compensatory damages to Cynosure. In this post-trial motion, Defendants seek clarification of the amount of the jury's compensatory damages award against them.

After hearing, the Court **ALLOWS** Defendants' motion for

1

clarification of the jury verdict (Dkt. 667).

## BACKGROUND

In September 2024, the Court convened a jury trial to try Cynosure's common-law and trade secrets claims against Defendants. The jury found Daley and Chambers liable for 1) breaching restrictive covenants and the implied covenant of good faith and fair dealing in employment agreements with Cynosure; 2) breaching their fiduciary duties of loyalty; 3) tortiously interfering with Cynosure's restrictive covenants with its employees; and 4) committing civil conspiracy. **[Dkt. 646 at 1-5, 7, 9]**. The jury also found the Reveal entities liable for civil conspiracy and tortious interference with contract with regard to Cynosure's employees and Reveal Lasers Ltd. liable for aiding and abetting Daley's and Chambers' breaches of fiduciary duty. **[Id. at 5, 7, 9]**.

The jury awarded the following compensatory damages for these claims against the Reveal entities, Daley, and Chambers:

7. What sum of money would fairly and reasonably compensate Cynosure for the lost profits it suffered as a result of Reveal Lasers LLC's and/or Reveal Lasers Ltd.'s unlawful conduct?

    $ _15,000,000_
    (words) _Fifteen million dollars_

2

10. What sum of money would fairly and reasonably compensate Cynosure for the lost profits it suffered as a result of Robert Daley's unlawful conduct?

$ __5,000,000__

(words) __Five million dollars__ —

12. What sum of money would fairly and reasonably compensate Cynosure for the lost profits it suffered as a result of Christopher Chambers' unlawful conduct?

$ __5,000,000__

(words) __Five million dollars__ —

Dkt. 646 at 10-11. These questions on the verdict form reflected the following jury instructions about how to award damages for each defendant:

> If you find that Cynosure has proven lost profits, you must determine how much of these profits is attributable to any unlawful conduct by Reveal Lasers LLC and/or Reveal Lasers Ltd. . . . You must also determine what lost profits are attributable to any unlawful conduct committed by Mr. Daley and to any unlawful conduct committed by Mr. Chambers.

Tr. 18-44:16-45:2.[1]

### DISCUSSION

The parties now dispute the total amount of compensatory damages the jury awarded to Cynosure. Defendants argue that the $5 million awards against each of Daley and Chambers are a subset of the $15 million award against the Reveal entities. In other words,

---

[1] Citations to the trial transcripts include the trial day (e.g., "Tr. 18" for the eighteenth day) and the page and line numbers.

Defendants interpret the verdict as awarding a total of $15 million, with the Reveal entities liable for the entire $15 million and each of Daley and Chambers liable for a separate $5 million jointly and severally with the Reveal entities. In Cynosure's view, the jury awarded a total of $25 million in compensatory damages and allocated that total into three buckets, $15 million against the Reveal entities and $5 million each against Daley and Chambers.

As an initial matter, the Court rejects Cynosure's assertion that Defendants have waived their argument about the amount of the compensatory damages award by failing to object before the Court discharged the jury. As Cynosure notes, a party waives a claim that a jury verdict is inconsistent if it fails to raise the issue after the verdict is read and before the jury is discharged. See, e.g., Burnett v. Ocean Props., Ltd., 987 F.3d 57, 72-73 (1st Cir. 2021); Trainor v. HEI Hosp., LLC, 699 F.3d 19, 34 (1st Cir. 2012). But Defendants do not argue the verdict is inconsistent. Rather, they ask the Court to interpret the verdict in a certain manner.

Cynosure also argues that Defendants waived their argument under the invited error doctrine by asking for separate damages questions for different defendants on the verdict form. This doctrine generally prohibits a party from "ask[ing] a trial court to follow a certain procedure" and then "complain[ing] only later on appeal that the trial court did as requested." United States v. Serrano-Delgado, 29 F.4th 16, 29 (1st Cir. 2022). It is true that

4

the verdict resulted from the Court's adoption of Defendants' request to ask separate damages questions for different defendants. However, Defendants are not arguing that the Court erred by drafting the verdict form in this way. Again, their position is that the Court should interpret the verdict in a certain manner when it enters final judgment.

Turning to the parties' substantive dispute, jury "verdicts must be construed in light of the totality of the surrounding circumstances, including the court's instructions." Putnam Res. v. Pateman, 958 F.2d 448, 455 (1st Cir. 1992). In addition to the instructions, courts consider the language of the verdict form, the evidence presented at trial, and the parties' arguments to the jury. See Sharp v. Hylas Yachts, LLC, 872 F.3d 31, 47-49 (1st Cir. 2017); Uncle Henry's Inc. v. Plaut Consulting Co., 399 F.3d 33, 48-49 (1st Cir. 2005).

The parties present different interpretations of the verdict. As Cynosure stresses, the verdict form was written with separate damages questions for different defendants, and the jury was instructed to determine lost profits attributable to the Reveal entities and to "also" determine lost profits attributable to each of Daley and Chambers. Tr. 18-44:25. But as Defendants highlight, Cynosure asked the jury in its rebuttal closing argument to write $74 million -- the total damages it was seeking -- "in th[e] first line" on the damages section of the verdict form, which asked about

lost profits caused by the Reveal entities. Tr. 17-255:23-24. Cynosure then told the jury that this amount "encompasse[d] all of [Cynosure's] damages" and that "[t]he remainder are just subsets." Tr. 17-256:1-2. Defendants also point out that Cynosure's damages expert and its closing argument both proposed a lump sum for lost profits without distinguishing among the defendants or causes of action. See Tr. 14-17:1-7, 42:8-43:14, 61:21-62:5, 86:11-88:8; Tr. 17-213:18-19, 255:24-256:4.

Moreover, based on the instruction to the jury that "[a] corporate entity is legally responsible for any acts committed by its employees within the scope of their employment," Tr. 18-20:7-8, Defendants argue that the jury likely found the Reveal entities liable for Daley's and Chambers' conduct, such that any damages caused by the two individuals were a subset of those caused by the Reveal entities. In response to this argument, Cynosure notes that the jury found Daley and Chambers liable for certain causes of actions -- namely, breach of contract and breach of their fiduciary duties -- that could have been based on their conduct from before they became agents of the Reveal entities.

Based on the evidence and the parties' arguments to the jury, the Court concludes that the jury awarded a total of $15 million in compensatory damages. First, as Defendants contend, Cynosure indicated to the jury during its rebuttal closing argument that it should treat the question on the verdict form about lost profits

6

caused by the Reveal entities as encompassing all its damages and that the other questions about compensatory damages were subsets of that total amount.

More importantly, given Cynosure's arguments to the jury and the nature of the unlawful conduct, it is highly unlikely the jury found Daley and Chambers each liable for $5 million that it did not also attribute to the Reveal entities. While Cynosure argued at trial that the lump sum it was seeking in damages encompassed compensation for all aspects of Defendants' unlawful conduct, the heart of its case was the raid of its sales force. That conduct was what Cynosure emphasized throughout the trial and what Cynosure proved caused it financial injury. As Cynosure notes, Daley's and Chambers' efforts to recruit other Cynosure employees began before they became agents of the Reveal entities. But the jury found that the Reveal entities conspired with Daley and Chambers and that Reveal Lasers Ltd. aided and abetted their breaches of fiduciary duty. Given Cynosure's emphasis throughout the trial on the raid of its sales force, the jury likely based its finding of liability on these claims against the Reveal entities on their involvement in Daley's and Chambers' recruitment efforts. The jury would therefore have attributed any harm caused by Daley and Chambers to the Reveal entities as well. Relatedly, even if Daley and Chambers acted independently from the Reveal entities, those acts did not cause damages until <u>after</u> Daley and Chambers joined Reveal LLC.

7

Put differently, the conduct of all Defendants combined to cause Cynosure an aggregate financial injury. Cynosure offered the jury no method of finding Daley or Chambers, but not the Reveal entities, responsible for some portion of that aggregate injury.

Finally, in light of the testimony of the parties' damages experts, it is more logical that the jury intended to award a total of $15 million in compensatory damages rather than $25 million. Cynosure's damages expert offered two figures for the lost profits suffered by Cynosure as a result of Defendants' unlawful conduct: around $64 million for the two-year period from May 2022 to April 2024 and around $16 million for only the period from May 2022 to November 9, 2022 (the date the Court issued its first preliminary injunction). See Tr. 14-61:21-62:5. While Defendants' damages expert mainly opined that Cynosure had not proven any damages with sufficient certainty, he also offered alternative estimates of lost profits, including about $20 million for the two-year period from May 2022 to April 2024. See Tr. 17-75:17-76:14. It is unlikely that, as Cynosure argues, the jury determined Cynosure suffered a total of $25 million in lost profits by either extrapolating from the $16 million estimate given by Cynosure's expert to a later cut-off date or by adding to Defendants' expert's $20 million estimate. Neither party offered the jury any clear basis for making that calculation. It is more likely the jury found a total of $15 million in lost profits by essentially adopting the $16 million

8

estimate given by Cynosure's expert.

Accordingly, the Court interprets the verdict as awarding Cynosure a total of $15 million in compensatory damages. The Court also concludes that the $5 million awards against Daley and Chambers, which are subsets of the $15 million total award, are joint and several with the Reveal entities. When multiple tortfeasors "contribute to the . . . injury of another by their several acts, which operate concurrently, so that in effect the damages suffered are rendered inseparable, they are jointly and severally liable." O'Connor v. Raymark Indus., Inc., 518 N.E.2d 510, 513 (Mass. 1988) (quoting Chase v. Roy, 294 N.E.2d 336, 340 (Mass. 1973)). The jury found all four Defendants liable under tort for the raid of Cynosure's sales force, namely for tortious interference with contract, breach of fiduciary duty, aiding and abetting the same, and civil conspiracy. As discussed above, the unlawful conduct of all four Defendants concurrently caused Cynosure the same aggregate financial injury. Thus, as a matter of law, Daley and Chambers are jointly and severally liable with the Reveal entities for the $5 million awards entered against them. See Mitchell v. Hastings & Koch Enters., Inc., 647 N.E.2d 78, 84 (Mass. App. Ct. 1995) (construing a jury verdict to impose joint

and several liability as a matter of law).[2]

### ORDER

For the foregoing reasons, Defendants' motion for clarification of the jury verdict (Dkt. 667) is **ALLOWED**. The Court interprets the jury verdict as awarding Cynosure a total of $15 million in compensatory damages, $5 million of which Robert Daley is liable for jointly and severally with Reveal Lasers LLC and Reveal Lasers Ltd. and a separate $5 million of which Christopher Chambers is liable for jointly and severally with Reveal Lasers LLC and Reveal Lasers Ltd.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge

---

[2] Cynosure does not ask the Court to make Daley and Chambers jointly and severally liable for the entire $15 million verdict against the Reveal entities.